

# Consultant Training Manual

**March 2016**



FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688425

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688426

# Table of Contents

1.   Woodbridge Group of Companies – Who we are and what we do!   1

2.   Secondary Market Annuities   4

3.   First Position Commercial Mortgages   18

4.   Property Examples   27

5.   Other Woodbridge Real Estate Products   31

6.   Woodbridge Consultant Phone Script   33

7.   Emailing Advisor & Private Lender Packages   37

8.   Mailing Advisor & Private Lender Packages   39

9.   Advisor Username & Password Request for www.WoodbridgeWealth.com   40

10.   SugarCRM   42

11.   Corporate Website & Advisor Back Office - www.WoodbridgeWealth.com   50

12.   Lender Information Form (LIF) - Receipt Email to Advisor or Private Lender   60

13.   PN Request (Promissory Note)   61

14.   Drafted Promissory Note & Loan Agreement   62

15.   Promissory Note & Loan Agreement Emailed to Advisor & Private Lender   62

16.   FedEx Tracking Number Emails   63

17.   Funds and Documents Receipt Emails   63

18.   Release and Released Reservations   65

19.   Cancelation Process & Refund at End of Term   67

20.   Setting Proper Expectations for Advisors and Private Lenders   73

21.   Contracts – Summaries, Promissory Notes, Loan Agreements and Exhibits (FPCM, Construction & Mezzanine)   76

22.   Contracts – Secondary Market Annuities:  Offer Sheet & Master Assignment and Assumption Agreement   115

23.   Pass-It-On Referral Program and Application   127

24.   Lead Assessment Sheet   130

25.   ShoreTel Communicator – Logging In, Breaks, Lunch, Meetings & Logging Out   131

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688428

Woodbridge Group of Companies – Who we are and what we do!

1.  **Organizational Chart**



FOIA – CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688429

FOIA – CONFIDENTIAL TREATMENT REQUESTED

## Woodbridge Group of Companies – Who we are and what we do! (Continued)

### Our History

1. Woodbridge Wealth is a wealth building company that offers multiple financial products under one roof.

2. Mr. Shapiro started developing and flipping commercial properties in the 80's in New York.

3. In 1993, Mr. Shapiro started Woodbridge Structured Funding, LLC – a pioneer in the Structured Finance industry, specifically in the Secondary Market Annuities space.

4. Woodbridge Wealth and its predecessor entities have over 24 years of experience providing alternative wealth-building products to thousands of clients nationwide.

5. Woodbridge's Management Team has over 35 years of experience in commercial real estate, commercial & residential development and in offering commercial mortgages.

6. Woodbridge has successfully completed OVER $1 Billion in Financial Transactions.

7. All of our clients have received their profits, settlement payments, monthly interest payments and the return of their principal as promised.

8. Complaints online, CAN BE EASILY EXPLAINED (Rip-Off Report, BBB).

9. We are a wholesaler of wealth building products to Fiduciaries:

   - Insurance Agents
   - Financial Advisors
   - Attorneys
   - Financial Planners
   - Real Estate Brokers/Agents
   - Investment Firms
   - Field Marketing Organizations (FMO)
   - Independent Marketing Organizations (IMO)
   - Broker General Agents (BGA)
   - Broker Dealers (OBA)*

10. No license is required to offer our financial products.

    a. We work with Fiduciaries because they have Books of Business.

11. Better Business Bureau (BBB) – Woodbridge Wealth has an A+ rating at the Better Business Bureau which you can find at www.bbb.com.

### Business Offices

| OFFICE | LOCATION |
|--------|----------|
| Woodbridge Group of Companies, LLC - Corporate Headquarters | Sherman Oaks, California |
| Woodbridge Wealth - Real Estate & SMA Products, Customer Relations | Sherman Oaks, California |
| Woodbridge Structured Funding, LLC - Secondary Market Annuities | Sherman Oaks, California |
| Woodbridge Group of Companies, LLC - Human Resources | Boca Raton, Florida |
| Woodbridge Group of Companies, LLC - Branch Office - Administrative | Daytona Beach, Florida |
| Woodbridge Group of Companies, LLC - Branch Office | Freehold, New Jersey |
| Woodbridge Group of Companies, LLC - Branch Office - Legal | Tolland, Connecticut |
| Woodbridge Realty of Colorado, LLC - Realty Company | Carbondale, Colorado |
| Riverdale Funding, LLC - Underwriting | Johnson City, Tennessee |
| American Note Company | Johnson City, Tennessee |
| Mercer Vine - Realty Company | Los Angeles, California |

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688431

## Woodbridge Group of Companies – Who we are and what we do! (Continued)

### Our Management Team

#### *Robert Shapiro, President & CEO*

Robert H. Shapiro has been active in the real estate and mortgage business since 1978, and has bought and sold hundreds of properties. Mr. Shapiro is a licensed real estate broker in New York. Companies under his leadership have originated thousands of mortgages totaling hundreds of millions of dollars. Mr. Shapiro has decades of experience in buying, owning and selling properties such as shopping centers, apartment buildings, co-ops and condominiums. Mr. Shapiro has owned construction companies, facilitated condominium conversions, and built hundreds of houses. Mr. Shapiro has been profiled on the front page of the Wall Street Journal, as well as featured in articles in the New York Times, Forbes, New York Post, Barron's New York Daily News, New York Magazine, Crain's and Manhattan, Inc.

#### *Richard Salvato, Executive Vice President*

Richard Salvato has brought a wealth of experience to Woodbridge. Mr. Salvato has worked on and off with Robert Shapiro for over 17 years. Mr. Salvato has acquired and sold many properties. He oversees new business development, account planning and client interaction. In his role as Executive Vice President, his skills, talent, and professional experience will help drive efficient operations and impact bottom line results. Throughout his over 20 years in the real estate and financial industries, Mr. Salvato has held several leadership positions including CEO and Director of Acquisitions. Mr. Salvato has appeared on both a CNN 'Business Unusual' segment and CNBC's 'Power Lunch' program.

#### *Joe Hughis, Chief Compliance Officer and Mortgage Originator*

Joe Hughis previously owned and operated a very successful mortgage business. Mr. Hughis has over 20 years of experience in the mortgage field and has worked with Robert Shapiro since 1989. Mr. Hughis has taken thousands of mortgage applications and reviewed thousands of appraisals. His wealth of expertise in the mortgage business and industry consists of, among other things, reading and deciphering title reports, clearing titles, reviewing appraisals, working with attorneys, and staying in compliance with the various state banking departments.

#### *David Golden, Vice President and General Counsel*

David Golden brings over two decades of legal expertise, specializing in complex commercial finance transactions. In connection with his corporate governance and securities practice, Mr. Golden has advised and guided a broad range of prominent institutional, corporate, and sophisticated private investors and investment companies in achieving their business objectives in matters concerning venture capital investments; corporate mergers and acquisitions; public and private equity issuances, placements and exchanges; and corporate trust transactions. At Woodbridge, Mr. Golden leverages his legal and transactional acumen in the structuring, refinement, and implementation of Woodbridge's unique and innovative financial products.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688432

## Secondary Market Annuities

1. Secondary Market Annuities are different than your typical annuity, meaning that an individual (Annuitant) already owns a payment stream from the annuity and they are looking to be paid a lump-sum in order to relinquish that payment stream to an investor.

2. Woodbridge Structured Funding was the first company to sell non-collateralized structured settlements.

3. Three types of Secondary Market Annuities

   a. Structured Settlements

   b. Lottery Prize-Based Annuities

   c. Pre-Owned Annuities

### Structured Settlements

**What is a Structured Settlement?**

A Structured Settlement is an annuity awarded to a plaintiff/victim from a personal injury, wrongful death or medical malpractice lawsuit, which is paid out to a plaintiff/victim over a set period of time. The defendant (Insurance Company) often purchases an annuity through a highly rated insurance company based on the agreed upon structured settlement.

**Structured Settlements Features & Benefits**

1. Irrevocable, court ratified, approved and court ordered annuity transfers created as a result of a lawsuit from:

   a. Personal Injury

   b. Wrongful Death

   c. Medical Malpractice

2. Structured Settlements are sold by the original Annuitant to Woodbridge at a discount, in exchange for a lump sum payment.  Woodbridge in turn, offers the annuity's payment stream at a fixed rate of return to astute investors.

3. Buyers of structured settlements payment streams receive guaranteed payment of steady cash flow in lump sum amounts, deferred, immediate monthly income or Life Contingent.

4. These products are regulated by all 50 State Insurance Commissions.

5. Guaranteed, backed and paid out by insurance companies that are "A" rated or better. (Allstate, Prudential, NYC Life, Travelers, John Hancock and Met Life)

6. They offer yields of 4% to 7% to investors.

7. Woodbridge underwrites the file to make sure that there is a viable payment stream for investors to purchase.

8. During the due diligence and verification phase, the investor needs to place a 10% percent deposit.

9. Once it is determined that there are no encumbrances on the settlement and a court date is in place, the balance of funds owed is required.

10. When the settlement is approved by a court of law, a "Closing Book" will be provided with all the information on the settlement to the Investor for review and to sign off. Once everything has been completed the Investor will start earning their interest and/or receive their payments right away.

11. 25% to 30% of all available Structured Settlement offers could be canceled.  It is to a Judge's discretion whether or not to approve the sale of the Structured Settlement.

### Lottery-Prize Based Annuity

**What is a Lottery-Prize Based Annuity?**

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688433

A lottery annuity is a pre-determined amount of regular payments received by a lottery winner usually paid on a monthly or annual basis over a period of several years.  Some lottery games in the US offer lifetime annuities that are paid out as long as the winner is alive.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688434

## Secondary Market Annuities (Continued)

### Pre-Owned Annuity

**What is a Pre-Owned Annuity?**

A Pre-Owned Annuity is a contract between an individual and an insurance company that is designed to meet both short and long-term investment goals.  The individual makes a large lump-sum payment or a series of smaller payments to the insurance company.  In return, the insurer agrees to make periodic payments to the individual.

### Commission-Based Fiduciaries:

1. By marking down the rate they can build in their compensation anywhere from 3% to 14% in commissions.

### Fee-Based Fiduciaries:

1. Can pass on the entire 4% to 7% rate to your clients.

### Life Contingent Secondary Market Annuity:

When a Life Contingent Insurance policy has been put in place; it is to protect the investment amount and payments to the Investor, who is also the Assignee on the insurance policy. The reason this is done is because the payments are not guaranteed to the Annuitant or their heirs upon death. If the Annuitant were to pass away before or during the scheduled term of payments, the Life Insurance policy would then kick in to cover the investment amount.

1. If Annuitant passes away before the payment term begins, the life insurance policy would pay out the entire investment dollars and a portion of the interest remaining in the term. This would be a lump sum payment.
2. If Annuitant passes away during the payment term, the life insurance policy would pay out the entire investment dollars and a portion of the interest remaining in the term.
3. In both cases the Investor is listed on the insurance policy as an Assignee. In the unfortunate event of the passing away of the Annuitant the Investor/Assignee would need to provide the amortization table to the insurance company to be issued the investment/payments due.

Here is a scenario regarding using the life insurance when it is a "Life Contingent" type settlement - in other words – "What happens if when the Annuitant before or in the middle of the payoff time?

**Hartford Life Insurance Company "A" rating (LIFE CONTINGENT)**
**Backed by 185K American General Policy (958774)**

Two hundred and forty (240) monthly payments as follows:
$1,400.00 from February 13th, 2033 through January 13th, 2053

Total Payout: $336,000.00

Wholesale Rate: 7.25%

$53,296.06 to yield 7.25%
$56,528.30 to yield 7.00%
$63,651.03 to yield 6.50%

Date Priced: 08/15/2015
(If final closing occurs after this date, final purchase price may increase)

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688435

## Secondary Market Annuities (Continued)

**Client's Follow Up/Example Questions:**

1. If the Annuitant dies any time after the projected court approved date of 8/15/16 and up to the first installment payment on February 13th, 2033, the Investor would receive the full retune of their principal of $63,651.03 plus any interest gained at 6.50%, from the insurance policy the Investor is listed on as the Assignee.

   a. The Assignee gets paid first, any balance of money goes to the beneficiaries of the deceased.

2. Are there others also listed as Assignees on the insurance policy?

   a. The Investor/Assignee is the only Assignee on the policy, there may be a beneficiary, but they only receive funds that over and above and monies that are remaining after the Assignee receives all of their funds.

3. An amortization schedule provided at the court hearing and is certified by the judge and included as certified paperwork so if/when the Annuitant dies there is no question about what is payable at any given point in time?

   a. The Life insurance policy, the assignment form and final amortization schedule is in the closing book which will detail all of the info on the seller all documents form buyer, acknowledgement documents for insurance company.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688437

## Secondary Market Annuities (Continued)



FOIA – CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688438

## Secondary Market Annuities (Continued)



### Higher yields at lower risk?
### That's what every investor
### wants, isn't it?

And that elusive goal could be much more attainable than you might think.

With yields of 4% to 7%, investing in structured settlements, annuities and lottery winnings can be a far more effective wealth-builder than treasury bills, CDs, or even zigzagging stocks. Even better, they are guaranteed – by such stable and high-credit-rated insurance companies as Allstate, Prudential, New York Life, Genworth Financial, Travelers Insurance, and USAA Life.

Woodbridge Structured Funding together with its predecessor companies pioneered this rewarding investment area back in 1993. We are an industry leader. And our hard-earned reputation for reliability and service excellence is second to none. Our goal is to provide our valued clients with a steady stream of superior structured funding investment opportunities. To date, we have purchased nearly one billion dollars of lottery and jackpot winnings, structured settlements and annuity payments. We believe that the more you know about structured funding investments, the more seriously you'll want to consider them – so here's what you need to know:

### What is a structured settlement?



Structured settlements are annuities designed to make sure that plaintiffs, especially those who have suffered life-altering injuries, will receive a steady stream of future income. Lottery and/or casino jackpot winners are also typically paid via annuities.

Many such annuity owners often reach a point where they need more cash in hand to meet a financial need (e.g. reducing debt, buying a home or financing college). They may then seek to sell some or all of their future payments to companies like ours. Woodbridge, in turn, offers these fixed-rate annuities to investors seeking above-average returns.

### Why invest in annuities?

- Peace of mind – steady and secure returns
- Higher yields (4% to 7%) – 300-400 basis points higher than comparable treasury bills
- Highly creditworthy payers – highly rated insurance companies

### Why invest via Woodbridge?

- Unsurpassed experience and reliability – more than $1 billion in structured payments bought since 1993
- Zero defaults!
- Legal representation in all 50 states to facilitate and expedite transactions
- Proven ability to discover attractive investment opportunities

Want to learn more?
Please visit website www.settlementbuying101.com for a simple and informative video illustrating how Structured Settlements work.

### What are the risks?

Buyers must determine whether these annuities meet their financial objectives. The quality and safety of these cash flows are directly related to the financial health of the insurance company that issued the original structured settlement.

### How can I be kept apprised of specific investment opportunities?

Contact Woodbridge to request our daily email list of structured settlement transaction opportunities. And please visit our website www.settlementinvesting.com to learn more. You may unsubscribe to this list at any time, and no sales representative will call.



### Is there a minimum required investment?

No. There are no minimum requirements to invest in Structured Settlement and Lottery Annuities.



FOIA – CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688439

## Secondary Market Annuities (Continued)

### About Structured Settlement Payment Streams (INVESTOR)

**What is a Structured Settlement?**
A structured settlement is an agreement between a personal injury claimant and defendant to resolve injury claims and provide compensation to the claimant or designee for a specified period of time, through one or more periodic payments. Typically, the defendant, its liability insurer, or an assignee accepting that payment responsibility purchases an annuity from an insurance company to fund that payment obligation. Periodic payments can be paid monthly, quarterly, annually, periodically, in some combination, or along a unique agreed schedule, however the settling parties agree.

**How can investors benefit by purchasing structured settlement payments through Woodbridge?**
Purchasing structured settlement payments through Woodbridge means investors can purchase payments (1) that are defined by date and amount, (2) that are paid through the related annuity, and (3) that are paid pursuant to a court order – not a mere agreement – to the investor's designee as specifically set forth in that court order. By knowing the date and amount of the payments being purchased before completing the purchase, investors can structure a transaction providing an annualized fixed pre-tax rate of return attractive to the investor, between 4% and 7% (depending on applicable payment dates and amounts).

**How else do structured settlement payment streams address the desire for safety?**
The annuities through which the payments are made have been paid up in full for the life of the payment stream and are issued by insurers that are household names and that have some of the highest financial strength ratings assigned by The A.M. Best Rating Agencies.*

- AEGON
- AIG
- Allstate
- Canada Life
- Colonial Penn
- Connecticut General
- Erie Insurance
- Farmers Insurance
- Fireman's Fund Insurance
- Genworth Financial
- Hartford Life
- Liberty Mutual
- MetLife
- Mutual Of Omaha
- Nationwide
- New York Life
- Pacific Life
- Prudential Insurance
- State Farm Insurance
- Transamerica Life
- Travelers Insurance
- USAA Life



**Prudential Insurance Company of America***
Seventy two (72) monthly payments of $2,017.58 each
Payable April 24, 2024 through March 24, 2030

| | |
|---|---|
| Total Payout: | $145,265.76 |
| Purchase Price: | $80,872.81 |
| Annualized Yield: | 5.00% |

Want to learn more? Visit www.WoodbridgeWealth.com for a simple and informative video providing more information about structured settlement payment purchases.
To learn more about another product that we believe you will find offers attractive yields, call an authorized Woodbridge representative toll-free, to **(888) 401-2464**.

**Two Financial Opportunities with Safety and Yield in Mind**

Woodbridge Structured Funding, LLC and its affiliate, Woodbridge Wealth offer several products that can be of interest and benefit to investors who are looking to increase their returns in today's low interest rate environment. Each of these products is designed to balance investors' desire for safety with their desire for attractive yields that many other financial products do not offer.

Investors can now achieve greater diversification and balance their portfolios with these opportunities that we believe you'll find provide lower risk while delivering attractive profits to long-term and short-term investors alike.

Woodbridge can provide investors with updates on a daily or weekly basis that outline available opportunities.

**Get Started Today.**
Call an authorized Woodbridge representative to learn how you can start enhancing your satisfaction and diversifying

your portfolio with lower - risk,

higher - yield products offered

by Woodbridge and its affiliates.

Working with Woodbridge and its affiliates begins with one phone call, toll-free, to **(888) 401-2464**.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688440

*Note: No insurance or securities license is required to transfer payment rights from Structured Settlements.*

*\*We are not affiliated with Prudential Insurance Company of America or The A. M. Best Rating Agencies.*

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688441

## Secondary Market Annuities (Continued)

### ABOUT STRUCTURED SETTLEMENT PAYMENT STREAMS (ADVISOR)

**What is a Structured Settlement?**

A structured settlement is an agreement between a personal injury claimant and defendant to resolve injury claims and provide compensation to the claimant or designee for a specified period of time, through one or more periodic payments. Typically, the defendant, its liability insurer, or an assignee accepting that payment responsibility purchases an annuity from an insurance company to fund that payment obligation. Periodic payments can be paid monthly, quarterly, annually, periodically, in some combination, or along a unique agreed schedule, however the settling parties agree.

**How can my clients benefit by purchasing structured settlement payments through Woodbridge?**

Purchasing structured settlement payments through Woodbridge means your client purchases payments (1) that are defined by date and amount, (2) that are paid through the related annuity, and (3) that are paid pursuant to a court order – not a mere agreement – to your client or your client's designee as specifically set forth in that court order. By knowing the date and amount of the payments being purchased before completing the purchase, you and your clients can structure a transaction providing an annualized fixed pre-tax rate of return attractive to your client, between 4% and 7% (depending on applicable payment dates and amounts).

**How else do structured settlement payment streams address the desire for safety?**

The annuities through which the payments are made have been paid up in full for the life of the payment stream and are issued by insurers that are household names and that have some of the highest financial strength ratings assigned by The A.M. Best Rating Agencies.*

**As a financial planner, is the process to transact in these payment streams difficult?**

The process is simple and efficient. Structured settlement payment transactions do not involve the sale of either a security or an insurance product, so no specific license is required to transact in these. Simple, ordinary rules of conduct that apply to most any business activity (good faith, fair dealing, etc.) apply. If you are affiliated with a broker-dealer, your broker-dealer will view these as Outside Business Activity (OBA), which may require you to take certain steps, complete certain paperwork, etc.

**As a non-fee based planner, how am I compensated when I place a client in this product?**

When you place a structured settlement payment stream with a client through Woodbridge, you set your own compensation, earning the difference between the wholesale price provided to you by Woodbridge and the retail price you set with your client. This allows you to earn compensation that you should find attractive while your clients can enjoy an annualized fixed pre-tax rate of return of between 4% and 7% (depending on applicable payment dates and amounts).

The following example illustrates this:



**Prudential Insurance Company of America***
Seventy two (72) monthly payments of $2,017.58 each
Payable April 24, 2024 through March 24, 2030

| | |
|---|---|
| Total Payout: | $145,265.76 |
| Purchase Price: | $80,872.81 |
| Annualized Yield: | 5.00% |
| Wholesale Rate: | 5.75% |
| Commission: | $6,578.59 |

Want to learn more? Visit www.WoodbridgeWealth.com for a simple and informative video providing more information about structured settlement payment purchases. To learn more another product that we believe you and your clients will find offers attractive yields, call an authorized Woodbridge representative toll-free, to **(888) 401-2464**.

*Note: No insurance or securities license is required to transfer payment rights from Structured Settlements.*
*We are not affiliated with Prudential Insurance Company of America or A.M. Best Rating Agencies.*

**Two Financial Opportunities with Safety and Yield in Mind**

Woodbridge Structured Funding, LLC and its affiliate, Woodbridge Wealth offer several products that can be of interest and benefit to your clients who are looking to increase their returns in today's low interest rate environment. Each of these products is designed to balance your clients' desire for safety with their desire for attractive yields that many other financial products do not offer.

You can now help your clients achieve greater diversification and balance their portfolios with these opportunities that we believe you'll find provide lower risk while delivering attractive profits to long-term and short-term clients alike. Moreover, these vehicles offer those benefits and features while offering you an attractive commission structure.

Woodbridge can provide you with updates on a daily or weekly basis that outline available opportunities that you can present to your clients.

**Get Started Today.**
Call us to learn how you can start enhancing client satisfaction and loyalty by providing these products and opportunities to your clients through Woodbridge and its affiliates.

When you speak with an authorized Woodbridge representative, you can obtain password information that will allow you to view our website designed uniquely for financial professionals like you, located at **www.WSFresources.com**.

Working with Woodbridge and its affiliates begins with one phone call, toll-free, to **(888) 401-2464**.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688442

FOIA   CONFIDENTIAL TREATMENT REQUESTED

## Secondary Market Annuities (Continued)

**Periodic Payment Sheet**



Call us at 866-880-2282 and ask to speak with a Woodbridge consultant

### Purchasing Periodic Payments: Advantages

Regardless of whether you purchase one or a series of periodic payments, you can realize predictable, scheduled returns. These rates of return are higher than most other instruments currently offered in the financial marketplace.

They also offer the added advantage of avoiding risk and volatility observed in other transactions.

Working with Woodbridge means experience you can trust:

Our principals and predecessor companies have more than 20 years of experience factoring periodic payment streams.

- Woodbridge purchases payment streams structured settlements, lottery winnings, investment annuities, sweepstakes, and casino prize payments.
- Detailed due diligence, processing, under-writing, and funding review lasts approximately 120 days per transaction in many instances.
- Payments are typically directed by court order and are paid by highly-rated insurers or state agencies that acknowledge payment transfers.
- Annualized returns range from 4% to 7% (depending on payment terms, conditions, and schedule).

Working with Woodbridge also means choice: Between 75 and 100 opportunities are available most months, which we share daily with our valued network of financial service professionals.

- We accept offers on a first-come, first-served basis, emphasizing fairness.
- Opportunities range from immediate income and short-term receivables, to medium-term flows and long-term future payments.

### Purchasing Periodic Payments: Details

When you buy structured settlement annuity payments, you're not purchasing the annuity itself. Instead, you're purchasing the right to receive the payments.

If it seems unusual that you don't become the owner of the annuity itself, you should know that the annuity contract's ownership does not change because the entity that owns it (typically an insurance company) receives certain tax benefits that could be lost if the ownership changes. Not even the original payee ever owns the annuity. But, the payment rights are specifically made payable to you, by court-ordered direction, and both the annuity issuer and annuity owner are required to comply with the payment direction in the court order that specifies that you are to receive the payments that you purchase.

You may also be wondering, "Why a court order?" Besides providing added comfort and verification that you are recognized as the owner and recipient of the payments that you contract to purchase, structured settlement payment transfers in most U.S. states are subject to state laws that require that a court review and approve the transaction before it can be completed. The court order demonstrates that applicable state law requirements have been satisfied.

When it comes to the returns available through the products that Woodbridge offers, the corresponding annualized rates of return are not set by an independent market nor are they indexed. Instead, those rates represent the effective annual rate of return reflecting how the purchase price you pay yields the payments (by date and amount) that you purchase, and are both fixed and specified on a transaction-specific basis in your agreements with us.

### Purchasing Periodic Payments: Protections

Structured settlement annuity payments are paid through annuities issued by some of the nation's largest, most highly-rated insurers, based on their claims paying and/or financial strength ratings assigned by A.M. Best, Moody's, or S&P.

More important, perhaps, is the fact that those insurers are also highly regulated by the state insurance regulatory authority of each and every state in which they do business, which means the following applies to those insurers:

- They are required to file detailed financial statements annually to maintain licensure.
- They are subject to periodic financial condition, operations review, and statutory and regulatory compliance audits.
- They are obligated to set aside reserves to satisfy future commitments that structured settlement-based annuity payments represent.
- State laws nationwide strictly mandate and regulate how they can invest capital that must be maintained on account.

Should an insurer's continuing operations or solvency become jeopardized for any reason, state insurance commissioners are authorized by applicable law to take immediate action to protect the interest of policyholders and payees, and to require orderly liquidation in worst-case situations, in which case structured settlement annuities are among the class of payment obligations that receive priority payment status.

Contact your Woodbridge Structured Funding consultant today toll free at 866-880-2282, to learn more about acquiring structured settlement or other periodic payment rights.

[1/12.14]

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688444

## Secondary Market Annuities (Continued)

**FAQs about Structured Settlement Payment Purchases.**

1. **Q: Does Woodbridge require a minimum purchase?**
   A: No, Woodbridge does not require any minimum purchase.

2. **Q: What happens if the original payee dies before all purchased payments are issued?**
   A: As long as the payments are not life-contingent (which is clearly specified when applicable prior to any offer to purchase being accepted), the death of the original payee does not affect the buyer's right to continue to receive the purchased payments.

3. **Q: What if I am interested in purchasing life-contingent payments?**
   A: Life-contingent structured settlement payments can be purchased through Woodbridge when available.  Life-contingent payment stream purchases tend to involve a higher annualized pre-tax rate of return than guaranteed payment streams and are usually, but not always, backed by a life insurance policy to address the risk associated with payment cessation due to the death of the measuring life.

4. **Q: How formal is the transaction through which the payee sells the payments?**
   A: Quite formal.  First, the transaction occurs by written agreement, including state-mandated disclosures to the extent applicable.  Second, nearly all U.S. states have enacted statutes that require notice to all interested parties as defined by applicable law, court review of the proposed transaction, and judicial determination that the proposed sale complies with applicable law and is in the best interest of the seller.

5. **Q: Why should I consider purchasing structured settlement payments?**
   A: The two reasons that we believe are most compelling are (a) the payments are issued through paid-up annuities issued by insurers that are household names and that have some of the highest financial strength ratings assigned by The A.M. Best Rating Agencies, (b) payment direction to your or your designee is set forth in a court order

6. **Q: What can buyers expect when it comes to pre-tax returns on their purchases?**
   A: Effective pre-tax rates of return, on an annualized basis, tend to be in the range of between 4% and 7%, depending on the dates and amounts of payments purchased.  We describe returns as being on an annualized basis because yields and payment dates and amounts are fixed (e.g., non-variable).  Purchasers buy specific future payments scheduled to be issued on specific dates at a discount of their stated face value.

7. **Q: Through what vehicles can I purchase structured settlement payments through Woodbridge?**
   A: You have a wide array of choices available to you when you work with Woodbridge, often able to make your purchase individually, jointly, through an IRA, or through a trust, corporation, limited liability company, partnership, pension, or 401(k) account, just to name a few possibilities.

8. **Q: How are structured settlement payments taxed?**
   A: While we do not provide tax or financial advice or guidance, it is our understanding that interest (i.e., yield, profit, etc.) that you receive through such a purchase is treated as ordinary income for tax purposes, so we recommend that you review your tax objectives with your independent financial advisor before making a purchase through us.

9. **Q: Is it possible to divest myself of future structured settlement payments after I buy those?**
   A: While the purchase is illiquid, there is a secondary market for structured settlement payments through which a buyer may be able to sell remaining future payments should the want or need to do so arise.

10. **Q: Now that I understand this better, I would like to take the next step.  What do I do?**
    A: If you would like more information or are ready to begin the purchase process, simply contact a Woodbridge representative, toll-free, at to (888+) 401-2464 or submit a request online by visiting

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688445

us at www.WoodbridgeWealth.com, and we will provide you with additional information and documentation.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688446

## Secondary Market Annuities (Continued)

### Comparison Sheet

#### MetLife Immediate Annuity

Compound Period:  Monthly Effective

Annual Rate:  3.250 %

Periodic Rate:  0.26688 %

Daily Rate:  0.00877 %

#### Cash Flow Data

|   | Event | Date | Amount | Number | Period | End Date |
|---|-------|------|--------|--------|--------|----------|
| 1 | Purchase | 02/08/2013 | 495,000.00 | 1 | | |
| 2 | Payment | 03/08/2013 | 2,795.72 | 240 | Monthly | 02/08/2033 |

|  |  |
|--|--|
| Total Invest | 495,000.00 |
| Total Return | 670,972.80 |
| Broker Comp | 29,700.00 |

---

### Woodbridge Offer

#### MetLife Structured Settlement Annuity Income

Compound Period:  Monthly

Effective Annual Rate:  5.500 %

Periodic Rate:  0.44717 %

Daily Rate:  0.01470 %

#### CASH FLOW DATA

|   | Event | Date | Amount | Number | Period | End Date |
|---|-------|------|--------|--------|--------|----------|
| 1 | Purchase | 02/08/2013 | 473,523.27 | 1 | | |
| 2 | Payment | 03/08/2013 | 2,000.00 | 60 | Monthly | 02/08/2018 |
| 3 | Payment | 03/08/2018 | 2,500.00 | 180 | Monthly | 02/08/2033 |
| 4 | Payment | 03/08/2033 | 3,000.00 | 60 | Monthly | 02/08/2038 |
| 5 | Payment | 03/08/2038 | 300,000.00 | 1 | | |

|  |  |
|--|--|
| Total Invest | 473,523.27 |
| Total Return | 1,050,000.0 |
| Broker Comp | 53,376.75 |

No insurance or securities license is required to sell Secondary Market Annuities or Structured Settlements.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688447

## Secondary Market Annuities (Continued)

### Special Offers – Fast Track

**Berkshire Hathaway Life Insurance Company "A++" rating (531125)**

One hundred and fifteen (115) monthly payments as follows:
$1,000.00 from January 15th, 2027 thru July 15th, 2036

Total Payout: $115,000.00

Wholesale Rate: 5.25%

$48,990.81 to yield 5.25%
$50,950.25 to yield 5.00%
$55,129.99 to yield 4.50%

*Date Priced: 12/01/2014*
*(If final closing occurs after this date, final purchase price may increase)*

**Metropolitan Life Insurance Company "A+" rating (956076-1)**

Two hundred and fifty (250) monthly payments as follows:
$1,789.57 from January 15th, 2018 till October 15th, 2038 increasing by 3% annually each October

Total Payout: $613,784.58

Wholesale Rate: 6.25%

$271,892.99 to yield 6.25%
$279,941.76 to yield 6.00%
$296,999.37 to yield 5.50%

*Date Priced: 12/15/2014*
*(If final closing occurs after this date, final purchase price may increase)*

**Prudential Life Insurance Company "A+" rating (LIFE CONTINGENT) Backed by 145K American General Policy (592590)**

One hundred and twenty (120) monthly payments as follows:
$1,675.71 from September 18th, 2025 until August 18th, 2035

Total Payout: $201,085.20

Wholesale Rate: 7.25%

$68,307.29 to yield 7.25%
$70,765.16 to yield 7.00%
$75,978.44 to yield 6.50%

*Date Priced: 12/15/2014*
*(If final closing occurs after this date, final purchase price may increase)*

### Immediate Payments

**American General Life Insurance Company "A" rating (903963)**

Fifty eight (58) monthly payments as follows:
$75.00 from February 1st, 2015 till November 1st, 2019

Four (4) lump sum payments as follows:
$2,800.00 due on February 20th, 2016
$20,000.00 due on February 20th, 2021
$25,000.00 due on February 20th, 2026
$58,000.00 due on February 20th, 2031

Total Payout: $110,150.00

Wholesale Rate: 5.75%

$57,849.59 to yield 5.75%
$59,354.99 to yield 5.50%
$62,523.18 to yield 5.00%

*Date Priced: 02/01/2015*
*(If final closing occurs after this date, final purchase price may increase)*

**Mass Mutual Life Insurance Company "A" rating (953303)**

Two (2) annual payments as follows:
$20,000.00 from November 9th, 2014 till November 9th, 2015

Two (2) lump sum payments as follows:
$84,279.86 due on November 9th, 2019
$114,448.88 due on November 9th, 2024

Total Payout: $238,728.74

Wholesale Rate: 5.25%

$172,867.79 to yield 5.25%
$175,344.78 to yield 5.00%
$180,466.02 to yield 4.50%

*Date Priced: 11/09/2014*
*(If final closing occurs after this date, final purchase price may increase)*

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688448

## Secondary Market Annuities (Continued)

### Lump Sum Payments

**Metropolitan Life Insurance Company "A+" rating (959353)**

One (1) lump sum payment as follows:
$150,000.00 due on October 27th, 2024

Total Payout: $150,000.00

Wholesale Rate: 5.50%

$89,453.70 to yield 5.50%
$91,526.32 to yield 5.25%
$95,832.41 to yield 4.75%

*Date Priced: 03/01/2015*
*(If final closing occurs after this date, final purchase price may increase)*

**Hartford Life Insurance Company "A" rating (955615) – COURT APPROVED**

Four (4) lump sum payments as follows:
$2,250.00 due on August 1st, 2016
$2,250 due on December 1st, 2016
$2,250.00 due on August 1st, 2017
$11,000.00 due on September 7th, 2020

Total Payout: $17,750.00

Wholesale Rate: 4.50%

$14,848.68 to yield 4.50%
$14,991.13 to yield 4.25%
$15,282.07 to yield 3.75%

*Date Priced: 03/01/2015*
*(If final closing occurs after this date, final purchase price may increase)*

### Deferred Payments

**Berkshire Hathaway Life Insurance Company "A++" rating (531125)**

One hundred and fifteen (115) monthly payments as follows:
$1,000.00 from January 15th, 2027 thru July 15th, 2036

Total Payout: $115,000.00

Wholesale Rate: 5.25%

$48,990.81 to yield 5.25%
$50,950.25 to yield 5.00%
$55,129.99 to yield 4.50%

*Date Priced: 12/01/2014*
*(If final closing occurs after this date, final purchase price may increase)*

**Metropolitan Life Insurance Company "A+" rating (956076-1)**

Two hundred and fifty (250) monthly payments as follows:
$1,789.57 from January 15th, 2018 till October 15th, 2038 increasing by 3% annually each October

Total Payout: $613,784.58

Wholesale Rate: 6.25%

$271,892.99 to yield 6.25%
$279,941.76 to yield 6.00%
$296,999.37 to yield 5.50%

*Date Priced: 12/15/2014*
*(If final closing occurs after this date, final purchase price may increase)*

**Prudential Life Insurance Company "A+" rating (LIFE CONTINGENT) Backed by 145K American General Policy (592590)**

One hundred and twenty (120) monthly payments as follows:
$1,675.71 from September 18th, 2025 until August 18th, 2035

Total Payout: $201,085.20

Wholesale Rate: 7.25%

$68,307.29 to yield 7.25%
$70,765.16 to yield 7.00%
$75,978.44 to yield 6.50%

*Date Priced: 12/15/2014*
*(If final closing occurs after this date, final purchase price may increase)*

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688449

## Secondary Market Annuities (Continued)

### Annual Payments

**American General Life Insurance Company "A" rating (957122)**

Five (5) annual payments as follows:
$26,000.00 due on December 1st, 2015
$28,000.00 due on December 1st, 2018
$30,000.00 due on December 1st, 2021
$32,000.00 due on December 1st, 2024
$34,000.00 due on December 1st, 2027

Total Payout: $150,000.00

Wholesale Rate: 5.50%

$105,156.47 to yield 5.50%
$106,708.76 to yield 5.25%
$109,927.10 to yield 4.75%

*Date Priced: 03/15/2015*
*(If final closing occurs after this date, final purchase price may increase)*


### Life Contingent – Payments Insured

**Transamerica Life Insurance Company "A" rating (LIFE CONTINGENT) Backed by 215k American General Life Policy (603048)**

Two hundred and eighty eight (288) monthly payments as follows:
$1,500.00 from January 20th, 2021 till December 20th, 2044

Total Payout: $432,000.00

Wholesale Rate: 7.25%

$139,806.00 to yield 7.25%
$144,650.94 to yield 7.00%
$154,995.38 to yield 6.50%

*Date Priced: 04/01/2015*
*(If final closing occurs after this date, final purchase price may increase)*

*About Woodbridge*
*Since 1993, Woodbridge Structured Funding and our predecessor companies has been a pioneer in the area of structured funding investments. We are an industry leader, our hard-earned reputation for reliability and service excellence is second to none. Our goal is to provide our clients with a steady stream of superior structured funding investment opportunities. We have purchased over one billion dollars of structured settlement, lottery, jackpot winnings and other annuity payments.*

*Confidentiality Notice: This e-mail message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.  If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.  Please be further advised that the unauthorized interception or retrieval of e-mail may be a criminal violation of the Electronic Communications Privacy Act.*

*\* Interest, payment, and price figures utilized in court documents and closing documents are calculated using Tvalue TM Amortization Software, the industry standard, using an Effective Interest Rate with a Monthly Compounding formula as term and condition. Where there is any variation from the listing sheet, the contract entered into by Purchaser will prevail, information is subject to the final documents, is subject to change, and is not guaranteed.*

*\*\* Ratings are AM Best*

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688450

## First Position Commercial Mortgages (FPCMs)

### Woodbridge – The Lender

Woodbridge funds short term 1-year Commercial Bridge Loans to commercial property owners. These loans are based on the value of the property (Equity based lending). Each property holds an excellent loan-to-value (LTV) ratio of 70% or less. Each bridge loan is secured by the subject property itself, among other things, Woodbridge holds a first position mortgage lien, or deed of trust on the real property owned by the borrower.

When making lending decisions, Woodbridge conducts a rigorous underwriting and due diligence process on each property.

### Due Diligence the Woodbridge way.

1. **Appraisal**. An appraisal is conducted by MAI & SRA licensed, certified and bonded appraiser to confirm market value and sale price.
2. **Broker Price Opinions** (BPO) are also performed to confirm and further establish the market value and sale price.
3. **Free & Clear**. We confirm that the property is free of all prior liens.
4. **Property Insurance**. Each property is fully insured for the duration of the loan, based on location nationwide. (e.g. fire, earthquake, flood, hurricane insurance, etc.) Woodbridge is added as Additionally Insured.
5. **Title Insurance**.  A complete title search is performed. Closing, gap, and title coverage will be obtained and maintained.
6. If requested, Woodbridge will provide copies of the Title Policy and/or Appraisal.

### Woodbridge - The Borrower

Once the underwriting and due diligence has been completed and the bridge loan funded, Woodbridge then sells off up to 90% of its first lien position to Private Lenders. This allows the Private Lenders to extend a private loan to Woodbridge so they can lend alongside us on a specific loan. Woodbridge then holds a Subordinate Lien position on the bridge loan, at no less than 10%. This exchange creates the First Position Commercial Mortgage opportunity.

### First Position Commercial Mortgages

Picture a unique lending opportunity with higher yields that is simple, safer and secured. That is exactly what First Position Commercial Mortgages (FPCM) can achieve.

A First Position Commercial Mortgage is a private loan to Woodbridge that is secured by commercial real estate. Private lenders select a commercial mortgage in Woodbridge's inventory to serve as collateral for their private loan. Lenders are recorded on title and acquire a first lien position on the mortgage, and Woodbridge pays each lender immediate monthly interest payments at a fixed annual yield, with a return of principal at the end of the one-year term.

1. Exclusively commercial loans
2. Short term of 1 year
3. Low loan-to-value (LTV) ratios of 60% or less
4. Fixed annual yields
5. Immediate monthly interest payments
6. Secured by commercial real estate
7. Recorded first lien position
8. Performance and stability
9. Woodbridge is your partner (Subordinate Lien position)
10. Contractual Obligation (Promissory Note & Loan Agreement)

FOIA    CONFIDENTIAL TREATMENT REQUESTED                                                    WOODBRIDGE SEC_02688451

## First Position Commercial Mortgages (FPCMs) (Continued)

**What does it mean to be First Position in a Woodbridge Commercial Mortgage?**

1. Having a first position means that you have the first lien position on the property that secures the mortgage and are recorded on title.
2. The first lien has priority over any other liens or claims on a property in the event of default.
3. Woodbridge pays off any existing lienholders when it enters into a transaction with a borrower, so there are no additional liens on the property.

**Why Partner with Woodbridge?**

We are so confident in these notes that Woodbridge partners with Private Lenders by lending our own funds and holding a subordinate lien position behind their first lien position. Woodbridge contractually obligates itself by Promissory Notes and Loan Agreements to pay the monthly interest payments and return the principal at the end of the term, regardless of any default by the commercial borrower/property owner of its obligations to Woodbridge and the underlying loan.

**Mitigating the Risk for Clients**

Each loan is evidenced by a Promissory Note and Loan Agreement.

1. Promissory Note: This document is Woodbridge's contractual promise to repay its lender according to the agreed terms and conditions set forth in both the Promissory Note and Loan Agreement. The Promissory Note forms the basis of a lender's right to payment from Woodbridge according to its terms.
2. Loan Agreement: The Loan Agreement creates and attaches a security interest in the lender-selected collateral in favor of that lender.
3. Assignment and Collateral Assignment: These documents are a pledged conveyance by Woodbridge of all of its rights, title, and interest as holder and owner of the selected commercial note and mortgage loan instruments and proceeds.

**Types of Properties**

The properties are classified as commercial real estate, including:

1. Multi-Family Apartment Buildings
2. Office Buildings
3. Retail Buildings
4. Mixed-Use Buildings and Developments
5. Industrial Buildings
6. Restaurants
7. Commerciale Land
8. Single-Family Residences
   a. The properties qualify for a Commercial Mortgage because they are held as investment properties, owned by a corporation and non-owner occupied.

**The First Position Commercial Mortgage product offers a 9% wholesale rate.**

1. **Fee Based**:  Fee based Advisors can offer the entire 9% to their clients.
2. **Commission Based:**  By marking down the wholesale rate to as low as 5% Advisors will earn 4% in commission annually.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688452

## First Position Commercial Mortgages (FPCMs) (Continued)

**The First Position Commercial Mortgage product offers a 9% wholesale rate. (continued)**

3. Currently we are seeing about 90% of the lenders who partnered with us last year, renewing their loan.  Many of our fiduciaries are seeing residual income from this product.
4. Retail Minimum:  $50,000
5. Wholesale Minimum:  $25,000
6. Fixed Annual Yields: 5% Retail / 9% Wholesale
7. No fees or commissions charged to private lenders.

### Experience in the Real Estate Market

Because of our Management Team's 35 years of experience with commercial loans, first mortgages, and real estate acquisitions, Woodbridge maintains a highly successful lending model built on years of handling large-scale commercial mortgages.

The experience and due diligence practices of Woodbridge's Management Team gives the Company a competitive advantage that separates us from our competitors. Woodbridge is committed to providing the highest level of customer service, ensuring that our clients are informed throughout the process.

Woodbridge's Management Team has extensive experience in real estate investments, development, management, and finance matters. The Company's executives have a wealth of knowledge and relationships in the real estate market that will assist them in these matters. The Company will leverage this knowledge, their relationships and careful research to assemble a selective and diverse portfolio of investments with attractive returns.

### Research and Operations

Woodbridge's executives work year round to identify ideal properties, mortgages and real estate investments. Woodbridge utilizes both innovative and traditional research strategies. Most importantly, the Company takes full advantage of its many varied long-term relationships with real estate and mortgage lenders and brokers all over the country to identify properties, mortgages and real estate investments, carefully reviewing all relevant appraisals. Woodbridge works hand-in-hand with its affiliate companies, including Riverdale Funding, LLC, which conduct business with Woodbridge and its affiliates by sourcing for the Company first mortgages and other real estate investments.

Woodbridge has offices in Florida, California, New Jersey, Connecticut, Tennessee and Colorado, legal teams in all fifty states, and, through its affiliates, has at its disposal seven full time attorneys. Woodbridge is continually automating its processes and updating its resources.

### Reasons Woodbridge does not believe that FPCMs are securities.

1. Woodbridge solicits loans (to borrow funds) for the purpose of making a specific loan to a commercial borrower, not for funding Woodbridge's general operations.
2. Each note is tailored to the Lender.
3. The product (a contractual agreement) is not subject to common trading.
4. Each note is structured to reflect the particularized circumstances of the Lender's specific arrangement, including the underlying property and the interest rate received.
5. The note given to the Lender specifically prohibits assignment or transfer.
6. The Woodbridge loan documents contain express representations from the Lender that the Lender has no right to any profit above or beyond the monthly interest payments set forth in the note between the Lender and Woodbridge.
7. The loans are secured with an assignment of a first-priority mortgage as collateral.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

FOIA    CONFIDENTIAL TREATMENT REQUESTED

**First Position Commercial Mortgages (Continued)**

**FPCM Brochure**



FOIA – CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688455

## First Position Commercial Mortgages (Continued)

**FPCM Brochure (Continued)**

### THE ADVANTAGES of FPCMs

As a private lender, you are recorded on title and acquire a first lien position on these notes. Lenders are paid immediate monthly payments at a fixed annual yield of five percent (5%) for 1 year.

We are so confident in these notes that Woodbridge partners with you by lending our own funds and holding a second lien position behind your first lien position. Woodbridge contractually obligates itself by Promissory Notes and Loan Agreements to pay the monthly interest payments and return the principal at the end of the term.



**FPCM PROPERTY EXAMPLE**

Northborough Drive—Houston, TX

| | |
|---|---|
| APPRAISED VALUE | $4,000,000 |
| FIRST LIEN POSITION | $1,350,000 |
| SECOND LIEN** | $150,000 |
| LOAN-TO-VALUE | 34% |
| TERM | 12 MONTHS |
| LENDER PRICE | $50,000 |
| INTEREST RATE | 5% |
| MONTHLY INTEREST | $208.33 |

**Woodbridge holds the second lien position on all properties.

### How does Woodbridge PROTECT PRIVATE LENDERS?

**ASSESSMENT ▶** Woodbridge thoroughly evaluates each property by conducting a comprehensive appraisal to confirm market value, and a title search is performed to make sure that lenders receive a first lien position.

**BACKING ▶** As your partner and the second position lien holder, Woodbridge is obligated to make interest payments to lenders, regardless of the status of the underlying loan.

**COLLATERAL ▶** With loan-to-value ratios of 60% or less, the property's equity is your collateral.

### Short term, dynamic growth in a SECURED PRODUCT

• Short term of 1 year
• Fixed annual yields of 5%
• Immediate monthly payments
• Secured by commercial real estate
• Recorded first lien position
• Woodbridge is your partner

### Woodbridge offers lenders PEACE OF MIND

• Our management team has over 35 years of unsurpassed experience and reliability
• Proven ability to find attractive financial opportunities
• Performance and stability

### Choose the opportunity that is RIGHT FOR YOU

As a private lender, Woodbridge will provide you with available lending opportunities on a daily basis. These feature an array of properties nationwide that may range from $50,000 to $5,000,000. Select the one that works best for you and helps you achieve your financial goals.

### Get started now.
### 800-506-1641
WoodbridgeWealth.com

22 | P a g e

FOIA – CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688456

## First Position Commercial Mortgages (Continued)

### FPCM Advisor One Pager



WOODBRIDGE WEALTH

# First Position Commercial Mortgages

A First Position Commercial Mortgage is a private third-party loan to Woodbridge that is secured by commercial real estate. Private lenders select a commercial mortgage in Woodbridge's inventory to serve as collateral for their private loan. They are recorded on title and acquire a first lien position on the mortgage, and Woodbridge pays each lender immediate monthly interest payments at a fixed annual yield, generally between 5% and 7% for one year, with a return of principal at the end of the one year term.

**Woodbridge is an expert at evaluating commercial mortgages and offers the following:**

► **EVALUATION** At Woodbridge we thoroughly evaluate each property before allowing the lender's hard-earned dollars, and our own, to be loaned to the prospective borrower. We base the loan on the value of the real estate and each property holds a low loan-to-value (LTV) ratio, so the property will always be worth considerably more than the amount of the loan at closing. We conduct a comprehensive appraisal to confirm market value, and a title search is performed to make sure that lenders receive a first lien position.  Woodbridge provides private lenders with available lending opportunities on properties nationwide.

► **CONTINUITY** If a commercial borrower defaults or does not make payments, Woodbridge remains contractually obligated and shall continue to pay each lender's monthly interest payments and return their principal at the end of the term.

► **COLLATERAL** With loan-to-value ratios of 60% or less, the property's equity is a lender's collateral.

► **BEST OF ALL** Woodbridge partners with your clients. We participate by lending confidently alongside lenders and hold a second lien position in all commercial mortgages, a testament to the confidence we have in our lending standards

**What you need to know as a financial professional?**
FPCMs do not involve the sale of either an insurance product or a security, so no license is required to sell them. Your broker-dealer will view these as Outside Business Activity (OBA).

When you offer an FPCM to a client, you set your own compensation, earning the difference between wholesale pricing and the price you set with your client. The following example illustrates this.



Northborough Drive
Houston, Texas

# FPCM Property Example

| | |
|---|---|
| First Lien Position: | $1,350,000 |
| Second Lien**: | $150,000 |
| Appraised Value: | $4,000,000 |
| Loan-to-Value: | 34% |
| Term: | 12 months |
| Lender Price: | $50,000 |
| Interest Rate: | 6% |
| Monthly Interest Payment: | $250 |
| Commission: | $1,500 |

**Woodbridge holds the second lien position on all properties

**Call Woodbridge to learn how you can start building client satisfaction and loyalty with lower-risk, higher-yield products. Call us now at (888) 401-2464 or visit www.WoodbridgeWealth.com.**

14140 Ventura Blvd., Suite 302, Sherman Oaks, CA 91423  ▪  Toll-free: (866) 815-4431  |  Fax: (866) 389-6768
www.WoodbridgeWealth.com

23 | P a g e

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688457

## First Position Commercial Mortgages (Continued)

**FPCM Lender One Pager**



WOODBRIDGE WEALTH

# First Position Commercial Mortgages

A First Position Commercial Mortgage is a private third-party loan to Woodbridge that is secured by commercial real estate. Private lenders select a commercial mortgage in Woodbridge's inventory to serve as collateral for their private loan. They are recorded on title and acquire a first lien position on the mortgage, and Woodbridge pays each lender immediate monthly interest payments at a fixed annual yield, with a return of principal at the end of the one year term.

**Woodbridge is an expert at evaluating commercial mortgages and offers the following:**

►**EVALUATION** At Woodbridge we thoroughly evaluate each property before allowing lender's hard-earned dollars, and our own, to be loaned to the prospective borrower. We base the loan on the value of the real estate and each property holds a low loan-to-value (LTV) ratio, so the property will always be worth considerably more than the amount of the loan at closing. We conduct a comprehensive appraisal to confirm market value, and a title search is performed to make sure that lenders receive a first lien position.  Woodbridge provides private lenders with available lending opportunities on properties nationwide.

►**CONTINUITY** If a commercial borrower defaults or does not make payments, Woodbridge remains contractually obligated and shall continue to pay your monthly interest payments and return your principal at the end of the term.

►**COLLATERAL** With loan-to-value ratios of 60% or less, the property's equity is a lender's collateral.

►**BEST OF ALL** Woodbridge is your partner. We participate by lending confidently alongside lenders and hold a second lien position in all commercial mortgages, a testament to the confidence we have in our lending standards.



Northborough Drive
Houston, Texas

## FPCM Property Example

| | |
|---|---|
| First Lien Position: | $1,350,000 |
| Second Lien**: | $150,000 |
| Appraised Value: | $4,000,000 |
| Loan-to-Value: | 34% |
| Term: | 12 months |
| Lender Price: | $50,000 |
| Interest Rate: | 5% |
| Monthly Interest Payment: | $208.33 |

**Woodbridge holds the second lien position on all properties.

**Contact us to learn how you can start building your portfolio with lower-risk, higher-yield products offered by Woodbridge.**

**Call us now at (888) 401-2464 or visit www.WoodbridgeWealth.com**

14140 Ventura Blvd., Suite 302, Sherman Oaks, CA 91423  •  Toll-free (866) 865-4451  |  Fax (866) 309-6768
www.WoodbridgeWealth.com

24 | P a g e

FOIA    CONFIDENTIAL TREATMENT REQUESTED

## First Position Commercial Mortgages (Continued)

### FPCM Frequently Asked Questions (FAQ)



WOODBRIDGE WEALTH

# First Position Commercial Mortgages FAQs

**1. What is a First Position Commercial Mortgage?**
A First Position Commercial Mortgage is a private third-party loan to Woodbridge that is secured by commercial real estate. Private lenders select a commercial mortgage in Woodbridge's inventory to serve as collateral for their private loan. They are recorded on title and acquire a first lien position on the mortgage, and Woodbridge pays each lender immediate monthly interest payments at a fixed annual yield, with a return of principal at the end of the one year term.

**2. Why are they called First Position Commercial Mortgages?**
The phrase "First Position Commercial Mortgage" describes the collateral pledged by Woodbridge as security for the loan you are making. As a private lender, you select a particular commercial mortgage from Woodbridge's inventory to serve as collateral for your loan to Woodbridge. A First Position Commercial Mortgage loan is not a mortgage investment pool and it is not a direct investment in real estate. They may also be referred to as First Trust Deed Loans or Senior Interest Position Mortgages.

**3. What is a first position in a commercial mortgage?**
As a commercial mortgage lender, Woodbridge executes only first mortgage transactions with commercial borrowers ensuring we hold the first lien on the property. If you have a first position, that means you have priority over any other liens or claims on a property if the property owner defaults.

**4. With interest rates so low, why do borrowers come to Woodbridge?**
Unfortunately, banks are not lending the way they used to. In today's lending environment, real estate developers and commercial borrowers are seeking out alternative financing that they can receive in 2 to 3 weeks, which Woodbridge provides. We offer short-term bridge loans to commercial property owners based on the value of their property. The borrowers qualify for our mortgages because they are secured by the high value commercial assets.

**5. What types of property are used as collateral in these transactions?**
Generally, Woodbridge secures these mortgages with commercial real estate, such as multi-unit apartments, office buildings, retail centers or mixed-use developments; though we will sometimes accept as collateral non-owner occupied, single-family homes that are held as investment properties and owned by a corporation or limited liability company.

**6. What are some of the terms of the mortgage given to the borrower?**
Our commercial mortgage lending policies dictate that we lend for a maximum loan term of two years and up to only 70 percent of the value of the real estate. That means the properties that secure the mortgages are worth considerably more than the loans themselves at closing.

**7. What type of due diligence does Woodbridge perform on these properties?**
Woodbridge performs a title search to make sure we have an insured first lien position and thoroughly evaluates each property by conducting a comprehensive appraisal to confirm market value.

**8. Are the properties insured?**
Woodbridge obtains insurance coverage on the encumbered property. This mitigates the risk of loss to the property's value due to damage, destruction, natural disasters (earthquake, flood, tornado, hurricane, mudslide), and the like.

**9. What is a lender's collateral?**
With loan-to-value ratios of 60% or less, the property's equity is your collateral.

**10. What is the paperwork required to get started?**
When you lend on a First Position Commercial Mortgage, you enter into a Promissory Note and Loan Agreement that set the terms under which Woodbridge repays you.

14140 Ventura Blvd, Suite 302, Sherman Oaks, CA 91423 • Toll-free: (866) 313-4431 | Fax: (866) 599-8768
www.WoodbridgeWealth.com

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688459

## First Position Commercial Mortgages (Continued)

**FPCM Frequently Asked Questions (FAQ) (Continued)**



# First Position Commercial Mortgages FAQs

**11. How am I better protected from downside risk?**
Your loan is secured by a hard asset collateral—the property itself. Additionally, Woodbridge participates by lending confidently alongside lenders and holds a second lien position on all commercial mortgages.

**12. How does Woodbridge establish that the property has no additional liens?**
Woodbridge pays off any existing lienholders when it enters into a transaction with a borrower so there are no additional liens on the property. Additionally, Woodbridge obtains a title policy for each property.

**13. How do I verify that I hold a first lien position in the mortgage?**
Upon request, Woodbridge will provide you with a copy of the title policy which indicates there are no other liens or claims above you.

**14. Will my name appear on the land records of the property?**
Yes. Woodbridge executes and delivers the first lien position documents in your name and files the documentation on the land records in the relevant jurisdiction.

**15. Does the borrower make payments to me?**
No. Woodbridge is contractually obligated to make your monthly interest payments and return the principal at the end of the term, regardless of the status of the underlying loan.

**16. What happens if the borrower does not make payments or defaults?**
First Position Commercial Mortgage loans are private transactions that are separate and distinct from the pledged collateral. As such, Woodbridge's obligations to you are neither contingent upon nor subject to the performance or repayment status of the underlying commercial mortgage. If a commercial borrower does not make its payments to Woodbridge or defaults, Woodbridge remains obligated and shall continue to

pay your monthly interest payments and return your principal at the end of the term according to the terms of your Promissory Note and Loan Agreement.

**17. How am I taxed on a First Position Commercial Mortgage?**
You should consult a tax advisor or accountant for tax-related questions specific to your situation; however, the IRS typically taxes payments on first lien position interest holdings as ordinary income. Woodbridge will provide a Form 1099 for all lenders.

## How do I get started?

If you'd like to get started on purchasing one of our available First Position Commercial Mortgages:

▶ Call a Woodbridge Consultant at (866) 941-8631, or

▶ Go to www.WoodbridgeWealth.com.

   1) Click on "Available Offers" and view inventory

   2) Click the RESERVE button next to any of the available properties in the "Offers Ready for Closing" or "Offers Preparing for Closing" sections. Each are available for purchase.

14140 Ventura Blvd, Suite 302, Sherman Oaks, CA 91423 • Toll-free: (866) 815-4431 | Fax: (866) 399-6788
www.WoodbridgeWealth.com

26 | P a g e

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688460



# Property example #1



### Water Bottling Plant—Kiamesha, New York

| | |
|---|---|
| Appraised Value: | $2,000,000.00 |
| First Lien Position: | $800,000.00 |
| Second Lien Position: (retained by Woodbridge)* | $100,000.00 |
| Minimum Purchase: | $50,000.00 |
| Term: | 12 months |
| Loan to Value Ratio (LTV): | 40% |
| Lender Price: | $50,000.00 |
| Interest Rate: | 5% |
| Monthly Interest: | $208.33 |

*Woodbridge holds the second lien position on all properties.

FOIA – CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688461



# Property example #2



**Retail bldg. (Bowling Alley)—Union City, GA**

| | |
|---|---|
| Appraised Value: | $2,210,000.00 |
| First Lien Position: | $750,000.00 |
| Second Lien Position: (retained by Woodbridge)* | $100,000.00 |
| Minimum Purchase: | $50,000.00 |
| Term: | 12 months |
| Loan to Value Ratio (LTV): | 34% |
| Lender Price: | $75,000.00 |
| Interest Rate: | 5% |
| Monthly Interest: | $312.50 |

*Woodbridge holds the second lien position on all properties.

FOIA – CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688462



# Property example #3



### Single Family—Beverly Hills, California

| | |
|---|---|
| Appraised Value: | $3,100,000.00 |
| First Lien Position: | $1,910,000.00 |
| Second Lien Position: (retained by Woodbridge)* | $190,000.00 |
| Minimum Purchase: | $50,000.00 |
| Term: | 12 months |
| Loan to Value Ratio (LTV): | 62% |
| Lender Price: | $100,000.00 |
| Interest Rate: | 5% |
| Monthly Interest: | $416.66 |

*Woodbridge holds the second lien position on all properties.

FOIA – CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688463



## Property example #4



**Land Lot—Kihei, Hawaii**

| | |
|---|---|
| Appraised Value: | $14,000,000.00 |
| First Lien Position: | $3,400,000.00 |
| Second Lien Position: (retained by Woodbridge)* | $400,000.00 |
| Minimum Purchase: | $50,000.00 |
| Term: | 12 months |
| Loan to Value Ratio (LTV): | 24% |
| Lender Price: | $200,000.00 |
| Interest Rate: | 5% |
| Monthly Interest: | $833.33 |

*Woodbridge holds the second lien position on all properties.

FOIA – CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688464

FOIA – CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688465

## Other Woodbridge Real Estate Products

### First Position Commercial Mortgage – Non-Performing Notes

The "First Position Commercial Mortgage – Non-Performing Notes" are for a twelve (12) month term. The product offers a wholesale rate of twelve percent (12%) and can be marked down to a maximum of six percent (6%) annualized interest, paid monthly to lenders. Lenders are secured by the commercial real estate and are recorded on title as the first position lien holder, with no other prior liens on the property. Woodbridge holds a subordinate lien position behind lenders' first lien position and contractually obligates itself by Promissory Note and Loan Agreement to pay the monthly interest payments and return the principal at the end of the term.

### Construction Loans

The "Construction Loans" are for twelve (12), eighteen (18) and twenty-four (24) month terms. The product offers a wholesale rate of eleven percent (11%) and can be marked down to a maximum of five and a half percent (5.5%) annualized interest, paid monthly to lenders. Lenders will also receive the return of their principal at the end of the term. These positions will be secured by either a first or second lien position in the property.

### Mezzanine Loans

The "Mezzanine Loans" are for twelve (12), eighteen (18) and twenty-four (24) month terms. The product offers a wholesale rate of twelve percent (12%) and can be marked down to a maximum of five and a half percent (5.5%) annualized interest, paid monthly to lenders, plus an additional two percent (2%) accrued interest paid to the lender at the end of the term or upon sale. Lenders will also receive the return of principal at the end of the term or upon sale. These positions are secured by a pledge of the entire and controlling membership interest of the limited liability company that owns the property.

#### Previous Mezzanine Loan Structure:

*The product offers a wholesale rate of twelve percent (12%) and can be marked down to a maximum of six percent (6%) annualized interest, paid monthly to lenders, plus an additional twelve percent (12%) pro rata share of cumulative profits if the property sells.*

### Woodbridge Commercial Bridge Loan Fund 1, LLC [Regulation "D" – 506 (c)]

Woodbridge Commercial Bridge Loan Fund 1, LLC is available to accredited investors that are interested in potentially generating a return of 6% annually, through this one-year investment opportunity.  The investment can be held for one to five years, with the investor deciding each year whether to continue in the security. If the investment is held for the full-term, the investor is eligible to receive an additional 1% accrued incentive, for an aggregate payout of 7% annually over five years.

### The Offering

1. $50 Million of Units
2. $100,000 minimum purchase per Unit.  The Company may accept smaller subscriptions ($50K half units) in its sole discretion.
3. Total Unit Offering of 500 Units.
4. Accredited Investors only.
5. 12-month to 60-month term with investor deciding each year whether to continue in the security.
6. 6% preferred dividend per annum, paid monthly.
7. Plus an additional 1% accrued preferred dividend (for an aggregate payout of 7% annually) after five consecutive years from the date of purchase of each respective Unit.

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688466

## Other Woodbridge Real Estate Products (Continued)

**The Offering (continued)**

8. The 1 year Woodbridge Commercial Bridge Loan Fund 1, LLC will provide Senior Position loans at a maximum of 50% loan-to-value, and is the sole Senior Position lender secured by a given commercial mortgage.

9. Investors are investing in the Company/Entity that is recorded on title in the 1st lien position.

10. We do not pay commissions on the Bridge Loan Fund except to a licensed Broker Dealer as clarified in the Offering Memorandum. For Investor referrals, Woodbridge has a marketing and advertising budget that goes towards the marketing efforts of FPCMs.

**Woodbridge Mortgage Investment Fund 3A, LLC [Regulation "D" – 506 (b)]**

Private offering to purchase units in a $100 million Mortgage Fund that issues mortgages on commercial properties (Retail, Multi-Family, Office Buildings, Restaurants & SFR that are held as investment properties and non-owner occupied).

**The Offering**

1. $100 Million of Units.

2. $100,000 minimum purchase per Unit. The Company may accept smaller subscriptions ($50K half units) in its sole discretion.

3. Total Unit Offering of 1,000 Units.

4. Accredited Investors only.

5. Monies used by the Fund are secured by the hard assets.

6. As a Commercial Mortgage lender, the WMIF is the entity that is recorded on title in the 1st lien position.

7. 5 year term.

8. 10% annualized preferred dividend, paid monthly.

9. Plus an additional two (2%) percent annualized preferred dividend per year, that is accrued and paid out as a balloon payment at the end of the five (5) year term.

10. Plus a 50% a pro rata share in the cumulative profits at the end of the 5 year term, that is split between Woodbridge and all Members of the Fund.

11. We do not pay commissions on the Mortgage Fund except to a licensed Broker Dealer as clarified in the Offering Memorandum. For Investor referrals, Woodbridge has a marketing and advertising budget towards the marketing efforts of FPCMs.

**Securities are speculative and involve a high degree of risk. Prospective investors are urged to read the Confidential Offering Memorandum, available upon request, including without limitation the section entitled "Risk Factors." This message does not constitute an offer to sell or a solicitation of an offer to buy securities.**

**All Securities Instruments must be sent with the proper disclaimers in print and emails.**

Other Woodbridge Mortgage Investment Funds:

1. **Woodbridge Mortgage Investment Fund 1, LLC [Regulation "D" – 506 (b)]**
   $10-million-dollar raise. This Fund is now closed.

2. **Woodbridge Mortgage Investment Fund 2, LLC [Regulation "D" – 506 (b)]**
   $25-million-dollar raise. This Fund is now closed.

3. **Woodbridge Mortgage Investment Fund 3, LLC [Regulation "D" – 506 (b)]**
   $50-million-dollar raise. This Fund is now closed.

FOIA    CONFIDENTIAL TREATMENT REQUESTED                    WOODBRIDGE SEC_02688467

## Woodbridge Consultant Phone Script

Hi, is _____ available?  Hi, my name is _____ and I am calling from Woodbridge Wealth, we specialize in offering wealth building alternatives.  How are you doing today?

By any chance, do you have a market for a service that offers a secured fixed interest rate of 5% to 7%, paid monthly, with a short term of only 12 months and the return of principal at the end of the term?

| | |
|---|---|
| **_If No_  - FPCM:** | **_If Yes - FPCM_:** |
| _That's okay, what about a longer term insurance backed product that offers 4% to as high 7%?_ |  _and the prospect seems to be open to the conversation_ |
| | **Are you affiliated with a Broker Dealer or Captive to an Insurance Company?** |
| **_If Yes – Broker Dealer:_** | **_If Yes – Insurance Company:_** |
| _"Are you allowed to do Outside Business Activity?"_ | _"Are you allowed to Sell-Away?"_ |

**_If Not Interested:_**  _Thank you for your time._

**Woodbridge – Who we are and what we do!**

Before I get into our opportunities we hold on our platform, let me introduce you to our company. Woodbridge Wealth is committed to delivering simpler, safer, and secured lending opportunities for clients to achieve the peace of mind they deserve. In today's uncertain environment, clients are looking for safer lending opportunities that deliver meaningful, measurable results. Woodbridge Wealth provides opportunities, so clients can be confident in good markets and bad. Our tools and services put our clients in control.

1. Woodbridge, including its predecessor and affiliate companies has been in business over **24 years**.

2. Woodbridge and its affiliates have completed over **1 billion dollars'** worth of financial transactions through all of the vehicles we have created.

3. Our Management Team has **over 35 years of Commercial Real Estate Development, Sales and large scale Commercial Mortgage experience**.

4. Every client who has worked with Woodbridge has **received their interest payments and principal returned, as promised**.  We succeed when your client succeeds. It's that simple.

How familiar are you with Commercial Real Estate?

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688468

## Woodbridge Consultant Phone Script (Continued)

**FPCM Pitch**

The service I want to speak to you about is called a **First Position Commercial Mortgage.** It's a short term 12-month lending opportunity that is secured by Commercial Real Estate, so clients can be more confident in good markets and bad.  Clients can lend and receive immediate monthly interest payments at a fixed rate and their principal is secured and returned at the end of the term.  That's our commitment.

Woodbridge funds short term 1-year Commercial Bridge Loans to property owners. These loans are based on the value of the property itself.  Typically, the property will have low Loan-to-Values (LTV) ratios that range from 50% to 65%, but do not exceed 70%, mitigating clients' risk.  The property's equity is our client's collateral.

Do you understand how Loan-to-Value works?

*Its the ratio of a loan to the value of an asset purchased. Also the ratio of the first mortgage lien as a percentage of the total appraised value of real property.*

**Clients are secured in three (3) ways:**

1. Clients will be recorded on title as the First Position Lien Holder and is secured by the commercial property.

2. With a Management Team that has a 35-year proven track record of success, we're committed to delivering the meaningful, measurable results your clients deserve. We partner with your clients and loan our own capital right alongside theirs'. Woodbridge holds a 10% Subordinate Lien position behind your client's First Position Lien.

3. We also pay your client's immediate monthly interest payments and return of their principal, regardless of any default by the property owner.  Woodbridge contractually obligates itself by Promissory Note and Loan Agreement to pay the monthly interest and return the principal at the end of the 12-month term. (18 or 24 month terms may also be available)

**Exclusively Commercial Loans on:**

    **a. Multi-Family Apartments**    **b. Mixed-Use Developments**    **c. Commercial Land**

    **d. Office Buildings**    **e. Industrial Buildings**    **f. Retail Centers**

    *g.* **Single Family Homes**
      *(non-owner occupied, held as investment property and owned by a corporation).*

**Due Diligence**

Each commercial property goes through a **rigorous underwriting and due diligence** process in which:

1. We confirm there are no existing liens on the property. All liens paid off.

2. Insurance is paid up front and in full for the duration of the loan. (location based - Fire, Flood, Earthquake, Hurricane, Tornado)

3. Title searches performed and Title Insurance is in place. (free & clear title)

4. A comprehensive appraisal is conducted by a licensed, certified and bonded appraiser to confirm market value.

5. A Broker Price Opinion (BPO) may also be performed to confirm market value and sale price.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

## Woodbridge Consultant Phone Script (Continued)

**The product offers a 9% wholesale rate.**  Are you fee based or commission based?

1. **Fee Based**:  That means you can offer the entire 9% wholesale rate to your clients.
2. **Commission Based:**  By marking down the wholesale rate to as low as 5% you will earn 4% in commission annually.  Currently we are seeing many lenders renewing their loan each year.  Causing many of our fiduciaries to see residual income from this product.
3. Retail Minimum:  $50,000
4. Wholesale Minimum:  $25,000
5. Fixed Annual Yields: 5% Retail / 9% Wholesale
6. No fees or commissions charged to private lenders.

**Follow up questions:**

- Was any of the information I went over unclear?
- Do you see value in this product?
- Do you have any questions?
- Do you have any clients that you think will benefit from a product of this nature?
- Do you have any clients that you could reposition into this vehicle within the next 30 days?

**In Closing - FPCMs**

If possible, I would like to send you some additional information regarding our First Position Commercial Mortgages, what email would you like me to send that to?

I urge you to do your due diligence on not only our products but also our company.  I think that you will see that we have a reputation that supersedes itself.  Please let me know if there is anything I can do or provide that will help expedite this process.  My contact information will be in the signature of the email I will be sending you, please do not hesitate to call or email me at any time.

I do want to mention that we are a full service company.  With that said, we do have a product that offers 4% - 7% with income that ranges from immediate monthly income to long term differed income, backed by "A" rated insurance companies.  Do you think you have a market for this type of vehicle?

***If Yes:***  See "SS" Pitch

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688470

## Woodbridge Consultant Phone Script (Continued)

**Woodbridge as Lender**

1. Short term Commercial Bridge Loan (Commercial Hard Money Loan) to commercial property owner.

2. Equity Based or Asset Based Loans (based on the value of the property).

3. 12 or 24 month terms (generally 12 month terms).

4. Maximum 70% Loan-to-Value ratio (LTV), mitigating clients' risk.

5. LTV generally ranges between 50%-60%

6. Secured by 1st/Senior lien position on the mortgage, recorded on title.

7. Commercial borrower makes monthly interest payments to Woodbridge.

8. Interest Rates: charged to Commercial Borrowers range from 11% - 15%.

9. Origination Fees: charged to Commercial Borrowers range from 2% - 6%.

10. If the Commercial Borrower defaults on their payment, the default interest rate jumps to as high as 24%.

11. Woodbridge collaterally assigns 90% of its 1st/Senior lien position to private lenders allowing them to lend alongside us.

12. Woodbridge holds a subordinate lien position on all properties, of no less than 10%.

**Structured Settlement (SS) Pitch:**
Our Longer term product is insurance backed Secondary Market Annuity, otherwise known as Structured Settlement transfers. They are annuities that are created from personal injury, wrongful death and medical malpractice lawsuits. The annuitant no longer wants the payment stream they are receiving and would like a lump sum pay out to transfer the rights of that payment stream to an investor. Woodbridge negotiates with these annuitants a discounted purchase price and lines up an investor to purchase the income. These annuities offer payment streams of steady cash flow in form of lump sums, deferred or immediate monthly income.

**This product is highly secured by:**

1. These are approved irrevocable court assignments.

2. They are regulated by all 50 State Insurance Commissioners.

3. They are guaranteed by "A" rated insurance companies.

Structured Settlements yield fixed rates of 4% to 7% to your clients.

Are you fee based or commission based?

1. **Fee Based:** Great that means you can pass the entire wholesale rate on to your client.

2. **Commission Based:** By marking down the wholesale rate, you can build your compensation into the purchase price. Typically, these investments offer anywhere from 4% to as high as 12% in commissions to the advisor.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

## Woodbridge Consultant Phone Script (Continued)

**Follow up questions:**

- Was any of the information I went over unclear?
- Do you have any questions?
- Do you see value in this product?
- Do you have any clients that you think will benefit from an investment of this nature?
- Do you have any clients that you could reposition into this vehicle within the next 30 days?

### In Closing – Structured Settlements

If possible, I would like to send you some additional information regarding our Structure Settlement transfers, what email would you like me to send that to?

I urge you to do your due diligence on not only our products but also our company.  I think that you will see that we have a reputation that supersedes itself.  Please let me know if there is anything I can do or provide that will help expedite this process.  My contact information will be in the signature of the email I will be sending you, please do not hesitate to call or email me at any time.

**Tools to utilize for client due diligence:**

- **References** – we have the best references, because 95% of our products are completed through a fiduciary like yourself, not only can you vet Woodbridge but you can also vet one of our clients who have placed tens of millions of client portfolio funds with our company.
- **Redacted Packages** – Both of these opportunities are somewhat transparent.  Upon request, I can send you a fully redacted package for FPCMs or a completed closing book or SS.
- **Marketing Materials** – We have a ton of marketing materials that you can utilize to do due diligence or to start offering our products to your clientele.
- **BBB** – We have an A+ rating at the Better Business Bureau which you can find at **www.bbb.com**. (Woodbridge Wealth and/or Woodbridge Structured Funding)

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688472

## Emailing Advisor & Private Lender Packages

1. Send **"Welcome to Woodbridge Wealth"** email with attachments from the **"Private Lender Perspective."**
   a. FPCM Lender One Pager, FPCM FAQs, Property Examples
      i. (Optional – Anatomy of an FPCM, Sample Promissory Note & Loan Agreement)



Welcome to Woodbridge Wealth.

Dear CLIENT NAME,

I'm proud to welcome you to Woodbridge Wealth!

As a new valued client of our **First-Position Commercial Mortgages**, you'll enjoy:

- Funds that are secured by a high-value, hard asset, such as a mixed-use commercial property, investment property, apartment building or office building.
- Immediate monthly interest payments at a fixed annual yield of five percent (5%) for 1 year.
- A low loan-to-value ratio of 60% or less, the property's equity is your collateral.
- Rigorous due diligence on our part when making lending decisions, ensuring that the property is free of liens; and all appraisals are conducted by licensed, certified and bonded appraisers to ensure the value is in line with true market value.
- A short, one year commitment so you can expect the property to maintain its value.
- Holding a senior interest, first-position lien on the property.
- Best of all Woodbridge Wealth is your partner. We lend our money along with yours and hold a second-lien position – that's how confident we are in these properties.

Again, welcome to our Woodbridge Wealth family, we're thrilled to have you as a valued partner.

If you're interested in different offerings, or learning more about our product, please review the attachments or visit our **First Position Commercial Mortgage FAQ** page.

Feel free to contact me at any time with any questions you may have!

Sincerely,

39 | P a g e

## Emailing Advisor & Private Lender Packages (continued)

2. Send **"Welcome to Woodbridge Wealth"** email with attachments from the **"Advisor Perspective."**
   a. Advisor One pager
   b. FPCM Lender One Pager, FPCM FAQs, Property Examples
      i. (Optional – Anatomy of an FPCM, Sample Promissory Note & Loan Agreement)



## Welcome to Woodbridge Wealth.

Dear BROKER NAME,

I'm proud to welcome you to Woodbridge Wealth!

As a new valued partner of our <u>First-Position Commercial Mortgages</u>, your clients will enjoy:

- Funds that are secured by a high-value, hard asset, such as a mixed-use commercial property, investment property, apartment building or office building.
- Immediate monthly interest payments at a fixed annual yield of five percent (5%) for 1 year.
- A low loan-to-value ratio of 60% or less, the property's equity is your client's collateral.
- Rigorous due diligence on our part when making lending decisions, ensuring that the property is free of liens; and all appraisals are conducted by licensed, certified and bonded appraisers to ensure the value is in line with true market value.
- A short, one year commitment so your clients can expect the property to maintain its value.
- Holding a senior interest, first-position lien on the property.
- Best of all Woodbridge Wealth is your client's partner. We lend our money along with your client's and hold a second-lien position – that's how confident we are in these properties.

Again, welcome to our Woodbridge Wealth family, we're thrilled to have you as a valued partner.

If you're interested in different offerings, or learning more about our product, please review the attachments or visit our <u>First Position Commercial Mortgage FAQ</u> page.

Feel free to contact me at any time with any questions you may have!

Sincerely,

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688474

## Emailing Advisor & Private Lender Packages (continued)

3. Send **"Welcome to Woodbridge Wealth – Woodbridge Commercial Bridge Loan Fund 1, LLC"** email attaching the Woodbridge Commercial Bridge Loan Fund 1, LLC Offering Memorandum.

 Welcome to Woodbridge Wealth.

Dear CLIENT NAME,

I'm proud to welcome you to Woodbridge Wealth!

As a new valued client of **Woodbridge Commercial Bridge Loan Fund 1, LLC**, you'll enjoy:

- A fund that earns 6% annual preferred return, payable monthly, for one year.
- The ability to hold your investment for one to five years, deciding each year whether to continue in the security.
- An additional 1% accrued preferred dividend after five years from the date of purchase of each respective Unit.
- An exclusive offering, only available to accredited investors.

Again, welcome to our Woodbridge Wealth family, we're thrilled to have you as a valued partner.

If you're interested in different offerings, or learning more about this product, please review the attachments or visit our **Commercial Bridge Loan Fund FAQ page**.

Feel free to contact me at any time with any questions you may have!

Sincerely,

## Mailing Advisor & Private Lender Packages

1. Sending hard copies of marketing materials by FedEx.

   a. Send request to **"IP Request IPRequest@woodbridgeinvestments.com"**

      i. For each item you would like included in the package, enter the number for each category and the totals.

      ii. **"Notes"** – add any special instructions and/or the mailing address of the Advisor or Private Lender the package will be mailed to.

| | Financial Planner | Client | How Many (Total) |
|---|---|---|---|
| FPCM Packet | | | |
| FPCM Brochure | | | |
| SS Packet | | | |
| SS Brochure | | | |
| Pen | | | |
| Business Card | | | |
| Money Bag | | | |
| Notes | | | |

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688475

## Advisor Username & Password Request for www.WoodbridgeWealth.com

1. To request a Username & Password for an Advisor, send an email to our IT Department at **"IT Support  ITsupport@woodbridgeinvestments.com."**

2. Subject – **"Username & Password for Woodbridge Wealth Website"**

3. Include the Advisor's First name, Last name and email address.

   a. After you send the Username & Password request you will receive an automatic acknowledgment email from the Help Desk helpdesk@woodbridgeinvestments.com.

4. Inform your Advisor that this request will take up to 24 hours to be met.



5. Within 24 hours you should receive a return email from our IT Department once the Username & Password has been created for the Advisor.



FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688476

## Advisor Username & Password Request for www.WoodbridgeWealth.com

6.  When you receive the Username & Password from our IT Department forward that information to the Advisor so that they can log into the website to view inventory and make property reservations.



FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688477

## SugarCRM

1. Go to **"http://sugar/index.php?module=Users&action=Login,"** enter your username and password then click **"Log In."**

   a. Sugar is the CRM system that we use to input Advisor, Private Lender, Structured Settlement Client lead and Investor information - Name, Address, Phone Number, Email etc., for the purposes of communicating, tracking, entering notes, searching and researching.



2. **"You are ready to use Sugar"** dialogue box may open, then click **"Finish."**





3. **"Your Locale"** dialogue box will open, make sure the Time Zone is correct then click **"Next."**

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688478

**Your Locale**

*Specify your time zone and how you would like dates, currencies and names to appear in Sugar.*

| | |
|---|---|
| Time Zone: | America/Los Angeles (GMT-8:00) |
| Date Format: | 12/23/2010 |

Time Format: 11:00pm

| | |
|---|---|
| Currency: | US Dollar : $ |
| Currency Significant Digits: | 2 |

Example: $123,456,789.00

| | |
|---|---|
| Decimal Symbol: | |

1000s separator:

Name Display Format: Dr. David Livingstone

< Back



FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688479

## SugarCRM (continue)

4.  **"Your Information"** dialogue box will open, then enter your information and click **"Next."**



5.  **"Welcome to Sugar"** dialogue box will open, then click **"Next."**



6.  "Search Overview" page will open, then click **"More"** to view the drop down list. Then click **"Show More."**

FOIA   CONFIDENTIAL TREATMENT REQUESTED

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688481

## SugarCRM (continue)

7. To enter Investor or Private Lender details hover over **"Investors"** from the drop down list.

8. To enter Advisor details hover over **"Financial Planners"** from the drop down list.

9. To enter Financial Organization (FMO) details hover over **"Financial Organization"** from the drop down list.

  

10. Click on **"Create Investors"** from the drop down list to input Investor or Private Lender information.

11. Click on **"Create Financial Planner"** from the drop down list to input Advisor information.

12. Click on **"Create Financial Organization"** from the drop down list to input Financial Organization and Advisor information.



FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688482

## SugarCRM (continue)

13. Alternate way to input Advisor information, click on **"+"** symbol on the upper right hand corner of the web page, then click on **"Create Financial Planner"** from the drop down list.



14. To search for an Advisors click on **"Financial Planners"** from the drop down menu.



15. **"Search Financial Planners"** window opens, enter Advisor's name then click **"Search"** to find record. Click **"Clear"** to clear all fields.



FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688483

## SugarCRM (continue)

16.  To Search Investors or Private Lenders click on "Investors" from the drop down menu.

   a.  Enter Investor or Private Lender name then click "Search" to find record.
       Click "Clear" to clear all fields.



17.  On the "Overview Tab" – Enter all Advisor information you have then click "Save" or go to the "Sales" tab.



   a.  For "Prospect Type" choose "Financial Planner."

   b.  For Advisor "Status" choose "Active."





FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688484

## SugarCRM (continue)

18. On the **"Sales Tab"** - ENTER all telemarketing details then click **"Save."**



| | |
|---|---|
| a. **"Lead Description"** choose "Financial Planner." | b. **"Lead Source"** choose where the lead originated from. |





| | |
|---|---|
| c. **"Call Disposition"** choose how the call was dispositioned. | d. **"Received WB/SS Info"** choose a selection. |





| | |
|---|---|
| e. **"Program to Send"** choose which information you provided. | f. **"Sales Status"** choose the appropriate status. |





49 | P a g e

WOODBRIDGE SEC_02688485

## SugarCRM (continue)

19. Entering **Activities**, **Notes/History**, and **FP Investors**.

    b.  This module shows up under the Advisor contact information when you save the contact.



20.  "Activities" - click on **"Create Task"** to open dialogue box. Enter details then click **"Save."**



FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688486

## SugarCRM (continue)

21. "Note / History" - click on **"Create Note or Attachment"** to open dialogue box.

   a. Enter details then click **"Save."**



22. "FP Investor" - click **"Create"** to open the dialogue box.

   b. Enter Client details then click **"Save."** This will connect the Client to the Advisor.

   c. **"Category of Investors"** - chose **"FP Investor"** when connecting the Investor or Private Lender to
      an Advisor.



.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

## Corporate Website & Advisor Back Office - www.WoodbridgeWealth.com

1.  On the Home Page click "Log In" to enter Username and Password.



2.  Enter your Username and Password, click "Login."



3.  Hover over "First Position Commercial Mortgage" in the header then click on "Opportunities Available" to view available inventory.



FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688488

## Corporate Website & Advisor Back Office - www.WoodbridgeWealth.com

**Available First Position Commercial Mortgage inventory page (Wholesale)**

# First Position Opportunites Available (Members Only)

Click on the offerings below to review specific opportunities in First Position Commercial Mortgages (FPCM).

### How To Place a Secure Online Reservation

**Step 1:** Click the RESERVE button next to the offer you wish to purchase to access the Lender Information Form (LIF). Submit this form, and choose how you want the documents sent to you. If you would like additional information on a selected property before reserving, click the REQUEST INFO button, and Woodbridge can provide photos, appraisals, and insurance information to help you evaluate the offer (if available).

**Step 2:** After submitting the LIF, Woodbridge will send you an email confirming receipt of your reservation. Review the details in the confirmation email, and if any changes are necessary, contact us immediately. We will send you the documents within 48 hours of receiving your reservation.

**Step 3:** Send back the signed documents with full funds. Woodbridge must receive the signed documents and funds within five business days of the date we draft agreements (10 business days for IRAs), or the documents will EXPIRE.

**Step 4:** Woodbridge will send your first interest distribution around the first of the following month.

IMPORTANT: Not all offers in the "Offers Preparing for Closing" category will obtain final approval and, therefore, will not close. If you reserve an offer that does not close, Woodbridge will transfer your funds to a new property that you choose, or you may request a full refund.

### Offers Ready For Closing

The lending offers below are ready for closing and available for funding. Upon receipt of your funds, the first interest distribution will be issued around the 1st of the following month.



No offers available for viewing. Please check back soon!

### Offers Preparing For Closing

The offers below are in due diligence and in preparation for closing, you may place these offers on "Reserve" and fund. Upon receipt of your funds, the first interest distribution will be issued around the 1st of the following month. These offers can be CANCELLED at any time throughout our due diligence and verification process. Should the offer be cancelled and not close, Woodbridge will give lenders the option of transferring to a new property - without any disruptions to their interest earnings - or a full refund, if requested.



#### SAINT CLOUD ROAD - BEL-AIR, CA

vacant lot

**Request Info**

**Reserve**

| | | |
|---|---|---|
| Position Available: $25,000.00 | Term: 12 months | Total First Position: $11,040,000.00 |
| Available Monthly Income: $187.50 | Rate: 9% | Woodbridge Second Position: $1,840,000.00 |
| Minimum Purchase: $25,000.00 | Property Value: $18,400,000.00 | LTV: 60% |

### Recently Sold Out

The offers below have been recently sold out and are not available.

#### ASPEN GLEN SWEETGRASS D22 RENEWAL ◆ CARBONDALE, CO

sfr investment - owned by WMIF affiliate

**Sold Out**

| Property Value: $1,050,000.00 | Total First-Lien Position: $630,000.00 | Woodbridge Second-Lien Position: $105,000.00 |
|---|---|---|

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688489

## Corporate Website & Advisor Back Office - www.WoodbridgeWealth.com

**Digital - Lender Information Form (LIF) for making reservations on properties.**

1. Blank Form - No property selected, enter Advisor and Private Lender information only.



FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688490

## Corporate Website & Advisor Back Office - www.WoodbridgeWealth.com

**Printed - Lender Information Form (LIF) for making reservations on properties.**

1. Blank Form - No property selected, enter Advisor and Private Lender information only.



## WOODBRIDGE
MORTGAGE INVESTMENT FUND 1, LLC

### First Position Commercial Mortgage (FPCM) Lender Information Document (LID)

| Property | Name | | City | | State |
|---|---|---|---|---|---|

**Amount You Would Like To Reserve (confirmed by advisor)** $ _____ **Rate** _____

**Source of Funds** Qualified ○ Non-Qualified ○   **Are funds available immediately?** Yes ◉ No ○

**Primary Lender Information (Complete as you want it to be reflected in title documents)**

**Must Select One** ◉ Individual ○ Joint ○ IRA Account ○ Trust Account ○ LLC or Corp.

| | Area code and # |
|---|---|
| Name: | Telephone #: |

| Mailing address: | | |
|---|---|---|
| | Street | City | State |

Street address (if different from mailing):

| | Street | City | State |
|---|---|---|

| | MM DD YYYY |
|---|---|
| SSN or TIN: | Date of birth: |

| | DL# | State |
|---|---|---|
| U.S. Citizen: Yes ○ No ○ | Driver's License#/State: |

| | Name(s) | Title(s) |
|---|---|---|
| Controlling person(s) [trustee, officer, etc.]: | | |

**Joint Lender Information, if applicable (Complete as you want it to be reflected in title documents)**

| | Area code and # |
|---|---|
| Name: | Telephone #: |

| Mailing address: | | |
|---|---|---|
| | Street | City | State |

Street address (if different from mailing):

| | Street | City | State |
|---|---|---|

| | MM DD YYYY |
|---|---|
| SSN or TIN: | Date of birth: |

| | DL# | State |
|---|---|---|
| U.S. Citizen: Yes ○ No ○ | Driver's License#/State: |

| | Name(s) | Title(s) |
|---|---|---|
| Controlling person(s) [trustee, officer, etc.]: | | |

**Representations and Signatures (Complete section A if you are represented by an advisor, otherwise complete section B)**

A. The undersigned acknowledge(s) that the reservation is only valid when full funds are received no later than 5 business days from the loan documents being issued -10 business days for IRA's.

| | Title | | MM DD YYYY |
|---|---|---|---|
| Controlling person: X | | Date: | |

| | Title | | MM DD YYYY |
|---|---|---|---|
| Joint signatory (if applicable): X | | Date: | |

Advisor's Acknowledgement: Based on information available to me, I believe the proposed transaction is suitable for this purchaser.

| | | Area code and # |
|---|---|---|
| Agent Name: | Agent Telephone #: | |

Agent's WMIF Advisor's Name: **Donovan C. Knowles**

| | | MM DD YYYY |
|---|---|---|
| Agent: X | | Date: |

B. I agree to participate in this FPCM offer without recommendation from my (our) advisor or the company. I (we) acknowledge that the reservation is only valid when full funds are received no later than 5 business days from the loan document being issued - 10 business days for IRA's. I (we) believe this product meets my (our) financial needs and objectives.

| | Title | | MM DD YYYY |
|---|---|---|---|
| Controlling person: X | | Date: | |

| | Title | | MM DD YYYY |
|---|---|---|---|
| Joint signatory (if applicable): X | | Date: | |

*Woodbridge Mortgage Investment Fund 1, LLC and its affiliates recognize the importance of protecting your non-public personal information. Because your privacy is our concern, we have developed our Privacy Policy to inform you about our privacy practices.*

Corporate Headquarters 123 NW 13th Street, Suite 307 Boca Raton, FL 33432 | California Branch Office 14225 Ventura Blvd., Suite 100 Sherman Oaks, CA 91423

Tel: 1-866-615-4431 | Fax: 1-866-390-6768

(2-28-14)

FOIA   CONFIDENTIAL TREATMENT REQUESTED                    WOODBRIDGE SEC_02688491

## Corporate Website & Advisor Back Office - www.WoodbridgeWealth.com

**Reserving a Position on the Available Inventory Page.**

1. Click on the **"Reserve"** button to start the reservation process.

2. **"Request Info"** button opens a dialogue box for Advisor or Private Lender to request more information on that particular property. This send an email to Dayne and Processing Department.

**Offers Ready For Closing**

The lending offers below are ready for closing and available for funding. Upon receipt of your funds, the first interest distribution will be issued around the 1st of the following month.



### ASPEN GLEN RMF-8 - CARBONDALE, CO

Land

| | | |
|---|---|---|
| Position Available: $85,200.00 | Term: 12 | Total First Position: $500,000.00 |
| Available Monthly Income: $355.00 | Rate: 5% | Woodbridge Second Position: $100,000.00 |
| Minimum Purchase: $50,000.00 | Property Value: $1,000,000.00 | LTV: 50% |

**Request Info**

**Reserve**



### LAGO VISTA TWO - BEVERLY HILLS, CA

sfr investment. Owned by WMIF affiliate

| | | |
|---|---|---|
| Position Available: $593,065.57 | Term: 12 months | Total First Position: $4,020,000.00 |
| Available Monthly Income: $2,471.11 | Rate: 5% | Woodbridge Second Position: $372,500.00 |
| Minimum Purchase: $50,000.00 | Property Value: $6,275,000.00 | LTV: 64% |

**Request Info**

**Reserve**



### LAUREL WAY - BEVERLY HILLS, CA

sfr investment. Owned by WMIF affiliate

| | | |
|---|---|---|
| Position Available: $747,474.05 | Term: 12 months | Total First Position: $4,900,000.00 |
| Available Monthly Income: $3,114.48 | Rate: 5% | Woodbridge Second Position: $486,500.00 |
| Minimum Purchase: $50,000.00 | Property Value: $7,695,000.00 | LTV: 64% |

**Request Info**

**Reserve**

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688492

# Corporate Website & Advisor Back Office - www.WoodbridgeWealth.com

## Reserving a Position on the Available Inventory Page. (continued)

### Offers Preparing For Closing

The offers below are in due diligence and in preparation for closing, you may place these offers on "Reserve" and fund. Upon receipt of your funds, the first interest distribution will be issued around the 1st of the following month. These offers can be CANCELLED at any time throughout our due diligence and verification process. Should the offer be cancelled and not close, Woodbridge will give lenders the option of transferring to a new property - without any disruptions to their interest earnings - or a full refund, if requested.



### LONG BEACH ROAD - OCEANSIDE, NY

Commercial/Mix Use

**Request Info**

**Reserve**

| Position Available:<br>$395,500.00 | Term:<br>12 | Total First Position:<br>$570,000.00 |
|---|---|---|
| Available Monthly Income:<br>$1,647.92 | Rate:<br>5% | Woodbridge Second Position:<br>$130,000.00 |
| Minimum Purchase:<br>$50,000.00 | Property Value:<br>$1,300,000.00 | LTV:44% |



### TOLEDANO STREET - NEW ORLEANS, LA

sfr - investment property



**Request Info**

**Reserve**

| Position Available:<br>$535,700.00 | Term:<br>12 | Total First Position:<br>$800,000.00 |
|---|---|---|
| Available Monthly Income:<br>$2,232.08 | Rate:<br>5% | Woodbridge Second Position:<br>$200,000.00 |
| Minimum Purchase:<br>$50,000.00 | Property Value:<br>$2,000,000.00 | LTV:40% |



### OWLWOOD ESTATES - HOLMBY HILLS, CA

Sfr investment - owned by WMIF affiliate

**Request Info**



**Reserve**

| Position Available:<br>$19,696,141.63 | Term:<br>12 | Total First Position:<br>$54,000,000.00 |
|---|---|---|
| Available Monthly Income:<br>$82,067.26 | Rate:<br>5% | Woodbridge Second Position:<br>$9,000,000.00 |
| Minimum Purchase:<br>$50,000.00 | Property Value:<br>$90,000,000.00 | LTV:60% |

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688493

## Corporate Website & Advisor Back Office - www.WoodbridgeWealth.com

**Lender Information Form (LIF) for Reservations. (property details included)**

1. Enter all Advisor and Private Lender information.



# Lender Information Form (LIF)

This form MUST be completed accurately and without any missing information or errors for it to be accepted. Any LIF submissions with missing or incorrect information will be cancelled and the position will not be held.

Please be sure to complete all applicable fields. Do not hesitate to contact your Woodbridge agent, toll-free, at 866-941-8631 for assistance.

**Woodbridge Wealth**

14140 Ventura Blvd. Suite 302
Sherman Oaks, CA. 91423

1-866-941-8631



### Offer Details

**PROPERTY:** SAINT CLOUD ROAD - BEL-AIR, CA
**POSITION AVAILABLE:** $25,000.00
**AVAILABLE MONTHLY INCOME:** $187.50
**MINIMUM PURCHASE:** $25,000.00
**TERM:** 12 months
**RATE:** 9%
**KICKER:** %
**PROPERTY TYPE:** vacant lot
**LOAN TYPE:** FPCM

### Transaction Information

Type of Transaction

- New
- Renewal
- Transfer
- Reposition

Are you an existing partner to Woodbridge?

Yes  No  ← Advisor

Is this an existing client to Woodbridge?

Yes  No  ← Lender

### Position Information

The amount of the reservation can be up to the "Position Available" amount listed above and on the inventory page.

| Reservation Amount (availability will be confirmed) | |
| --- | --- |
| Rate to lender | 0.70 |
| Are funds available immediately? | Yes ▼ |

If funds are not available immediately, we cannot reserve this position. Please contact your Woodbridge agent to reserve by phone. Thank you.

58 | P a g e

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688494

## Corporate Website & Advisor Back Office - www.WoodbridgeWealth.com

**Lender Information Form (LIF) for Reservations. (Property details included) (continued)**

2. Enter **"Broker"** and **"Primary Lender Information."**



3. Select **"Primary Lender Information" – "Entity Type."**



FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688495

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688496

## Corporate Website & Advisor Back Office - www.WoodbridgeWealth.com

**Lender Information Form (LIF) for Reservations. (property details included) (continued)**

3. For joint titling select "Joint" from the drop down menu to enter joint client information. "Joint Lender Information" section will open below.



FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688497

## Corporate Website & Advisor Back Office - www.WoodbridgeWealth.com

**Lender Information Form (LIF) for Reservations. (Property details included) (continued)**

4. Make sure that the correct form of "Document Distribution" is chosen. This is how the Promissory Note & Loan Agreement will be delivered to either the Advisor, Private Lender or both.



5. Add any instructions or details in the "Special Instructions" section.



6. "Final Review and Acknowledgement" section – after reviewing the LIF for accuracy, select the box to confirm acceptance and accuracy of the information then click the "Submit" button to complete the reservation.



7. "Request for Position Confirmation" - Reservation Confirmation Page

   a. Once the reservation has gone through there will be a confirmation page.



FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688498

## (LIF) Lender Information Form - Receipt Email to Advisor and/or Private Lender

1. The Processors will send the Advisor, Private Lender, Processing Department and Woodbridge Consultant an email notifying everyone that we have received the property reservation and request details.

   a. Woodbridge Consultant must check information for accuracy. **(EXLPIAN)**



Fri 1/15/2016 12:35 PM

**Brandi Eubanks**

FPCM - LIF Receipt - $70,000.00 - Mona Hush - LAUREL WAY TWO - BEVERLY HILLS, CA - ID #20160115095600

To    Scott Lane

Cc    Donovan Knowles;  Investments Processing

Important

Good Afternoon,
This email is to confirm that we have received information for the following FPCM offer below and have submitted for processing:

Transaction ID Number: 20160115095600
Lender:
Reservation Amount: $70,000
Property: LAUREL WAY TWO - BEVERLY HILLS, CA

Please allow for up to 48 hours for documents to be delivered. Should you have any questions, please do not hesitate to contact your agent, Donovan Knowles for further assistance.

**Lender Information Form - ID #**
20160115095600

**Property:**
LAUREL WAY TWO - BEVERLY HILLS, CA

**Type of Transaction:**
New

**Reservation Amount:**
$70,000.00

**Rate To Lender:**
5.00%

**Broker:**

**Email Address:**

**Woodbridge Consultant:**

**Entity Type:**
Individual

**Salutation:.**

**Client/Entity Name:**

**SSN:**

**Client/Entity Address:**

**Client/Entity City:**

**Client/Entity State:**

**Client/Entity Zip:**

**Controlling Person:**

**Document Distribution:**

**Notes / Special Instruction:**

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688499

## PN Request (Promissory Note & Loan Agreement Request)

1. The Processors will send an email to our Legal Department to draft Promissory Note and Loan Agreement.

   a.    Woodbridge Consultant must check information for accuracy. (EXLPIAN)

Fri 1/15/2016 12:36 PM

**Brandi Eubanks**

FPCM - PN REQUEST - $70,000.00 (New Money) Mona Hush - LAUREL WAY TWO - BEVERLY HILLS, CA - ID #20160115095600

To    FPCM PN Requests

Cc    Donovan Knowles

---

**Lender Information Form - ID #**
20160115095600

**Property:**
LAUREL WAY TWO - BEVERLY HILLS, CA

**Type of Transaction:**
New

**Reservation Amount:**
$70,000.00

**Rate To Lender:**
5.00%

**Term:**
12 months

---

**Broker:**


**FP Company:**


**Email Address:**


**Woodbridge Consultant:**

---

**Entity Type:**
Individual

**Salutation:**
Ms.

**Client/Entity Name:**

**SSN:**

**Client/Entity Address:**

**Client/Entity City:**

**Client/Entity State:**

**Client/Entity Zip:**

**Controlling Person:**

**Document Distribution:**

**Notes / Special Instruction:**

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688500

## Drafted Promissory Note & Loan Agreement

1. The Legal Department returns the completed Promissory Note & Loan Agreement to the Processing Department and Woodbridge Consultant within 24 to 48 hours.

   a. Check Promissory Note & Loan Agreement for accuracy. (client name, address, rate and oan amount)



Mon 1/18/2016 8:33 AM

**Pamela Parsons**

Senior Position Package - Hush - $70,000.00 - Laurel Way Two - Beverly Hills, CA - ID #20160115095600

To  Brandi Eubanks; Donovan Knowles; Dayne Roseman; Lianna Balayan; Diana Balayan

Cc  Investments Processing; Accounts Payable; CT Legal FPCM; Elicia Moreno; Kim Pelger; Elizabeth Burns; Marlene Armstrong

You forwarded this message on 1/18/2016 5:04 PM.

Message   PN & LA - Hush - 70k - Laurel Way Two - Beverly Hills, CA.pdf (682 KB)   ◀ Check Document for Accuracy

Brandi, Donovan, Dayne, Lianna and Diana,

Here are the **Hush – Laurel Way Two – Beverly Hills, CA** Senior Position Documents for **$70,000.00** at **5.00%** (FP: Scott Lane) as you requested.

The lender(s) will need to sign Page 3 of the Note and Page 4 of the Loan Agreement (and have all signatures there witnessed). All of the Loan Agreement Pages after Page 4 are exhibits and do not need to be signed.

Thanks,
Pam

## Promissory Note & Loan Agreement Emailed to Advisor & Private Lender

1. The Processing Department sends the completed Promissory Note & Loan Agreement to the Advisor and/or Private Lender and the Woodbridge Consultant.

   a. This email will also contain instructions on where to sign the Promissory Note and Loan Agreement, and who to write the check to. A W-9 Tax form is also included.



- These documents can also be sent by Fed to or Priv der.

Tue 1/19/2016 3:29 PM

**Lianna Balayan**

FW: Senior Position Package - Hush - $70,000.00 - Laurel Way Two - Beverly Hills, CA - ID #20160115095600

To  Scott Lane; Donovan Knowles; Diana Balayan; Investments Processing

Message   PN & LA - Hush - 70k - Laurel Way Two - Beverly Hills, CA.pdf (682 KB)   fw9.pdf (120 KB)

Bing Maps   Action items

Hello Scott,

Attached please find the first position loan documents on behalf of Mona Hush in the Laurel Way Two – Beverly Hills, CA property. Please have her sign as instructed below:

- **Promissory Note** – Please sign on Page 3 above her printed name
- **Loan Agreement** – Please sign on Page 4 above her printed name (2 witnesses required)
- **W9** – Please fill in her information on top and sign at the bottom

Please make the check payable to **Woodbridge Mortgage Investment Fund 3, LLC** and send along with the signed original documents to my attention using the label that will be emailed to you shortly.

If you have any questions, please contact me or Donovan Knowles directly.

65 | P a g e

## FedEx Tracking Number Emails

1. You will receive a **"FedEx Tracking Numbers"** for all return labels that have been provided for packages that are being sent out and for Promissory Notes & Loan Agreements sent to the Advisor and/or Private Lender.



## Funds and Documents Receipt Emails

1. **"Docs & Funds Received Receipt"** - when funds and documents have been received from the Advisor and/or Private Lender the processing department will send a receipt email to Advisor and/or Private Lender and the Woodbridge Consultant.



2. **"Docs Pending with Custodian Notification"** - when the signed Promissory Note and Loan Agreement have been received by Woodbridge from the Advisor and/or Private Lender and submitted to the IRA Custodian, the Processing Department will send a receipt email to Advisor and/or Private Lender and the Woodbridge Consultant.



FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688502

## Funds and Documents Receipt Emails (continued)

3. **"Funds Received and Docs Pending with Custodian Notification"** - when documents are pending return from the IRA Custodian and funds have been received by Woodbridge the Processing Department will send a receipt email to Advisor and/or Private Lender and the Woodbridge Consultant.



4. **"Funds Received Receipt"** - when funds (wire or check) have been received by Woodbridge from the IRA Custodian and we are waiting for the Custodian to sign and return the Promissory Note & Loan Agreement, the Processing Department will send a receipt email to Advisor and/or Private Lender and the Woodbridge Consultant.



FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688503

## "Release" and "Released" Reservations

1. You will receive a "Release" email from the Processing Department when the Private Lender's position in a property is being changed or released.



**Other reasons for a "Release" of a reservation.**

a. Insufficient Funds

b. Lender switching properties

c. Broker will resubmit with different lender

d. Will transfer funds from Atlantic, with new funds request, into new reservation

e. Revising titling to reflect IRA custodian

f. Lender moving into Fund #3A & adding funds

g. Lender has decided not to move forward

h. Property Paid off

i. Lender wishes not to lend at this time.

j. Lender decided to go into the fund

k. Funds not ready, lender requests a release

l. Lender requests release from property

m. Funds will not be received by deadline

n. Lender is changing titling

o. Lender adding wife to reservation, will resubmit with joint lender information

p. Property oversold

FOIA   CONFIDENTIAL TREATMENT REQUESTED

## "Release" and "Released" Reservations (continued)

1. You, the Advisor and/or Private Lender will receive a **"Released"** email from the Processing Department when the Private Lender's reserved position in a property has been released because of not receiving funds, contracts and we did not receive funds and documents in the allotted time period (5 business days for cash or 10 business days for IRA funds).



MICHAEL CAMPBELL
BROOK/WIENIEWITZ

FUNDS DOCS PAST DUE

*"Our new company's shift to focus on your wealth-creation goals."* — Woodbridge Wealth



Lianna Balayan
Processor Supervisor
**phone:** 818.770.3400
**site:** www.WoodbridgeWealth.com
**email:** lbalayan@woodbridgewealth.com
**address:** 14225 Ventura Blvd. Suite 100
Sherman Oaks, CA 91423

**Other reasons for a "Released" reservation.**

a. FUNDS PAST DUE

b. FUNDS AND DOCS PAST DUE

c. FUNDS NOT COMING IN

d. FUNDS NOT AT CUSTODIAN

e. FUNDS NOT AT CUSTODIAN NO EXCEPTIONS

f. FUNDS RETURNED FROM BANK WIRE NOT RECEIVED ON TIME

FOIA   CONFIDENTIAL TREATMENT REQUESTED                                    WOODBRIDGE SEC_02688505

## Cancellation Process & Refund at End of Term

1. Once the Private Lender decides to have their principal refunded the Processing Department will send a **"Release/Cancellation"** email to our Legal Department, the Advisor and/or Private Lender, and the Woodbridge Consultant.

---

Fri 3/11/2016 1:29 PM

**Adriane Moffitt**

FPCM - Release/Cancellation - $24,999.98 - Tiffany G. Crowson - PARK HILL NON-PERFORMING - YONKERS, NY - ID #20150225114341

To    mike@mikebabin.com;    Tiffany Crowson

Cc    Donovan Knowles;    Investments Processing

Bcg   Maas

Good Afternoon Mr. Babin,

This email is being sent to notify you that the following FPCM offer has been cancelled per your request.

Transaction ID Number: 20150225114341
Lender: Tiffany G. Crowson
Amount: $24,999.98
Property: PARK HILL NON-PERFORMING - YONKERS, NY

Should you have any questions, please do not hesitate to contact your agent, Donovan Knowles for further assistance.

---

**Lender Information Form - ID #**

**Property:**

**Type of Transaction:**

**Reservation Amount:**

**Rate To Lender:**

---

**Broker:**

**Email Address:**

**Woodbridge Consultant:**

---

**Entity Type:**

**Salutation:**

**Client/Entity Name:**

**SSN:**

**Client/Entity Address:**

**Client/Entity City:**

**Client/Entity State:**

**Client/Entity Zip:**

FOIA    CONFIDENTIAL TREATMENT REQUESTED                                             WOODBRIDGE SEC_02688506

## Cancellation Process & Refund at End of Term (continued)

1. Our Legal Department will send the property **"Cancellation Package"** once the documents have been created. These documents will be sent to the Private Lender to sign and return. This will release the lender from all rights to the property.

    Note: Lender stops earning interest on the date the refund is requested.

    a. Cancelation Package includes:

        i. **"The Cancellation of Note"** - Cancellation of Promissory Note & Loan Agreement

        ii. **"The Release of Assignment"** - Cancellation of Form of Assignment

        iii. **"Release of Collateral Assignment"** Cancellation of the collateral.

          – *Generally, the document is a Release of Collateral Assignment, except in New York, which requires that the document be a "Reassignment of Mortgage."*

2. Once these documents have been signed and returned the lender will receive the return of the principal along with their last interest payment, depending on whether or not the cancellation documents are received in a timely manner.

3. If the lender does not return the cancellation documents they will not earn any interest in that time nor will their funds be returned to them.



FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688507

## Cancellation Process & Refund at End of Term (continued)

**Cancellation of Note**

---

```
Property ID : Property
Principal   : $100,000.00
Int. Rate   : 5.00%
```

**CANCELLATION OF PROMISSORY NOTE AND LOAN AGREEMENT**

This Cancellation of Promissory Note and Loan Agreement (this "Agreement") is entered into as of this 1st day of January, 2016, by and among **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**, a Delaware limited liability company having an address of 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California, its successors and assigns (herein, "Borrower"), and **LENDER**, an individual with an address of 123 Main Street, Town 12345 (herein, "Lender").

**R E C I T A L S**

WHEREAS, Borrower executed that certain Promissory Note dated July 1, 2015, in the original principal amount of One Hundred Thousand and 00/100 Dollars ($100,000.00) payable to the order of Lender (the "Note");

WHEREAS, in connection with the execution of the Note, Borrower and Lender entered into that certain Loan Agreement dated July 1, 2015;

WHEREAS, Borrower has fully paid, performed, and satisfied its obligation under the Note and the Loan Agreement;

WHEREAS, the parties hereto agree that there are no obligations outstanding among the parties whatsoever relating to the Note and the Loan Agreement; and

NOW, THEREFORE, based on the foregoing under the conditions stated below, the parties hereto desire to cancel the Note and to cancel the Loan Agreement.

**A G R E E M E N T**

The Note and the Loan Agreement are hereby terminated and canceled and is of no further force and effect. Lender hereby agrees promptly to return the original Note to Borrower.

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement as of the date first written above.

LENDER:

BORROWER:

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3, LLC**

_____        By: _____
LENDER                                   Its Authorized Representative

---

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688508

## Cancellation Process & Refund at End of Term (continued)

**Release of Assignment**

---

### RELEASE OF ASSIGNMENT AND COLLATERAL ASSIGNMENT
(Relating to Property Located at *Underlying property address*)

KNOW ALL MEN BY THESE PRESENTS, that LENDER, an individual with an address of 123 Main Street, Town 12345, her successors and assigns ("Lender") DOES HEREBY CERTIFY that the indebtedness and all obligations evidenced by the following identified Promissory Note, Assignment of Note and Mortgage, and Collateral Assignment of Note, Mortgage and Other Loan Documents, have been fully paid, performed, satisfied, and does hereby consent and direct that the same be released and forever discharged:

1. That certain Promissory Note dated July 1, 2015, in the original principal amount of One Hundred Thousand and 00/100 Dollars ($100,000.00) made by WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC, a Delaware limited liability company having an address of 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California ("Woodbridge"), payable to the order of Lender;

2. That certain Assignment of Note and Mortgage effective August 15, 2015, by Woodbridge in favor of Lender (the "Assignment"); and

3. That certain Collateral Assignment of Note, Mortgage and Other Loan Documents effective August 15, 2015, by Woodbridge in favor of Lender, with respect to:

    a. That certain Promissory Note in the original principal amount of One Million and 00/100 Dollars ($1,000,000.00), dated August 15, 2015, made by Commercial Borrower, LLC and payable to the order of Woodbridge Mortgage Investment Fund 3, LLC;

    b. That certain Mortgage by Commercial Borrower, LLC, dated August 15, 2015, to Woodbridge Mortgage Investment Fund 3, LLC, encumbering certain real and personal property described therein.

IN WITNESS WHEREOF, the undersigned have caused this instrument to be executed as of this ___ day of _____, 20__.


_____
LENDER

---

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688509

## Cancellation Process & Refund at End of Term (continued)

**Release of Collateral Assignment** (page 1)

Prepared by, and after recording,
return to:

David E. Golden, Esq.
WOODBRIDGE MORTGAGE
INVESTMENT FUND 3, LLC
54 Hartford Turnpike
Tolland, Connecticut 06084

Property Address:
*Underlying Property Address*

**This space for Recorder's use**

### RELEASE OF COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS

KNOW ALL MEN BY THESE PRESENTS, that **LENDER**, an individual with an address of 123 Main Street, Town 12345, her successors and assigns (the "Collateral Assignee") is the owner and holder of that certain COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS, (the "Collateral Assignment"), dated as of August 15, 2015 made and given by **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**, a Delaware limited liability company having an address of 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (the "Collateral Assignor") in favor of Collateral Assignee with respect to:

1. That certain Promissory Note in the original principal amount of One Million and 00/100 Dollars ($1,000,000.00), dated August 15, 2015, made by Commercial Borrower, LLC and payable to the order of Woodbridge Mortgage Investment Fund 3, LLC;

2. That certain Mortgage by Commercial Borrower, LLC, dated August 15, 2015, to Woodbridge Mortgage Investment Fund 3, LLC, encumbering certain real and personal property described therein.

NOW, in consideration of the sum of **Ten and 00/100 Dollars ($10.00)** and other good and valuable consideration, the adequacy and receipt of which is hereby acknowledged, the Collateral Assignee does hereby grant and release unto the Collateral Assignor, its successors and assigns, any lien or interest that the Collateral Assignee may have under the Collateral Assignment in and to (i) the Note, Mortgage, and Other Loan Documents described therein and (ii) the premises described in **SCHEDULE A** hereto; and does hereby release the Collateral Assignment.

IN WITNESS WHEREOF, the undersigned have caused this Release of Collateral Assignment of Note, Mortgage, and Other Loan Documents to be executed on this _____ day of _____, 20__.

COLLATERAL ASSIGNEE:

COLLATERAL ASSIGNOR:

WOODBRIDGE MORTGAGE
INVESTMENT FUND 3, LLC

_____
LENDER

By: _____
      David E. Golden
      Its Authorized Representative

74 | P a g e

## Cancellation Process & Refund at End of Term (continued)

### Release of Collateral Assignment (page 2)

1. To be Notarized

STATE OF               )
                           )  ss.
COUNTY OF           )

On this _____ day of _____, 20__, before me, the undersigned notary public, personally appeared LENDER to me known and known by me to be the individual that executed the within and foregoing RELEASE OF COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS on his own behalf, and acknowledged said instrument and the execution thereof, to be his free act and deed.

_____
Notary Public
Name:_____
My Commission Expires:_____
(SEAL)

STATE OF CONNECTICUT     )
                                )  ss.
COUNTY OF TOLLAND       )

On this _____ day of _____, 20__, before me, the undersigned notary public, personally appeared David E. Golden, Authorized Representative of WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC, to me known and known by me to be the authorized signatory of said company that executed the within and foregoing RELEASE OF COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS on behalf of said company, and acknowledged said instrument and the execution thereof, to be his free act and deed as such authorized signatory and the free act and deed of said company.

Notary Public  _____

### Release of Collateral Assignment (page 3)

SCHEDULE A

**LEGAL DESCRIPTION**

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688511

## Setting Proper Expectations for Advisors and Private Lenders

**Individual Retirement Account (IRA) / Qualified Document Process (2 to 4 weeks)**

1. When Private Lenders who have funds in a Self-Directed IRA, (also known as Qualified Funds), want to lend on our real estate products; their funds must be placed with an IRA Custodian that has approved the Woodbridge products on "their" IRA platform. This must be done before a property reservation is made.

   a. In addition, make sure the lender has funded their IRA account with enough money to cover the loan to Woodbridge plus any required account minimums, annual fees and miscellaneous costs i.e. set up fees, bank wires, disbursement check fees and account termination fees.

2. If the lender's IRA Custodian has not approved Woodbridge's products on "their" platform, the lender cannot lend to Woodbridge until they transfer funds from their Self-Directed IRA to an approved IRA Custodian. This can take up to 4 weeks.

3. Once the property reservation is made using a Private Lender's Self-Directed IRA/Qualified Funds, our legal department will draft a Promissory Note & Loan Agreement with the proper IRA Custodian Titling and the Custodian's Direction of Investments (DOI) form to the lender for signatures.

   a. Original or wet signatures are required on all signed Promissory Notes, Loan Agreements and Direction of Investments (DOI) form.

   b. The Private Lender and their IRA Custodian must return the signed documents and funds within 10 business days or their reserved position is released.

   c. A FedEx return label is also provided to the lender to return documents within 24 hours.

   d. Woodbridge receives the documents from the lender, then forwards documents to the lender's IRA Custodian for their signature and funding of the loan.

   e. Woodbridge makes the request for funds on the Direction of Investments (DOI) form to be sent by wire transfer.

   f. Wire transfer is sent from IRA Custodian to Woodbridge within 2-3 business days of the receipt of the signed Promissory Note, Loan Agreement and Direction of Investments (DOI) form.

   g. Promissory Note & Loan Agreement are signed by the IRA Custodian and returned to Woodbridge for final signatures.

   h. Once Woodbridge executes the documents they are sent back to the Custodian. Lenders must request copies of Executed Documents from their IRA Custodian.

   i. On qualified funds, all monthly interest payments are paid to the lender's IRA Custodian account.

   j. At the end of the term, upon the lender's request for the return of their principal, once cancellation documents have been signed and returned the principal is returned to the IRA Custodian.

**Promissory Note & Loan Agreement**

1. The Promissory Note must be signed on Page 3 above the Private Lender's name.

2. The Loan Agreement must be signed on Page 4 above the Private Lender's name. (2 witnesses required)

3. 12 month spoken term vs. 15-month contractual term on the Promissory Note. The underlying mortgage can be for 12, 18 or 24 months. (**EXPLAIN**)

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688512

a. If mortgage is 12 months and FPCM is 12 months we need a 3-month buffer, Woodbridge has no incentive to pay the 9% rate after 12 months.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688513

## Setting Proper Expectations for Advisors and Private Lenders (continued)

**Woodbridge Approved IRA Custodians**

**Provident Trust Group, LLC**
8880 W Sunset Rd #250,
Las Vegas, NV 89148
Phone:  (888) 855-9856

**Advanta IRA Services, LLC**
13191 Starkey Road, Suite 9
Largo, FL 33773
Phone:  (800) 425-0653

**IRA Services Trust Company**
1160 Industrial Rd #1,
San Carlos, CA 94070
Phone:  (650) 591-3335

**SunWest Trust**
3240 Juan Tabo Blvd NE,
Albuquerque, NM 87111
Phone:  (505) 237-2225

**New Direction IRA, Inc.**
1070 W. Century Dr.
Ste. 101
Louisville, CO 80027
Phone:  (877) 742-1270

**Midland IRA**
1520 Royal Palm Square Blvd #320,
Fort Myers, FL 33919
Phone:  (239) 333-1032 /
(877) 944-5472

**RealTrust IRA**
1420 Fifth Avenue, Suite 2200
Seattle, WA 98101
Phone:  (877) 384-7393

**Horizon Trust Company**
10600 Menaul Blvd NE
Albuquerque, NM 87112
Phone:  (888) 205-6036

**Mainstar Trust**
(Formerly: First Trust Company of
Onaga)
214 W 9th St.
Onaga, KS 66521
Phone: (785) 889-4213

**Texas Custodians (Used for Reg. D Funds Only**

**TMI Trust Company**
901 Summit Ave
Fort Worth, TX 76102
Phone:  (817) 335-2933

**Liberty Trust Company**
8226 Douglas Ave
Dallas, TX 75225
Phone:  (214) 368-3787

**GoldStar Trust Company**
1401 4th Ave.
Canyon, TX 79015
Phone:  (806) 354-3540

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688514

## Setting Proper Expectations for Advisors and Private Lenders (continued)

**Executed and Final Document Timelines**

1. **Executed Documents (Promissory Note & Loan Agreement)**

   The Executed Documents are the Promissory Note & Loan Agreement signed by Private Lender and Woodbridge. Executed Documents are returned to Private Lender within 60 days of the lender funding their loan to Woodbridge.

**Loan Agreement Exhibits and Timelines**

1. **Note from Woodbridge to Lender (Exhibit "A")**

   **The** Note from Woodbridge to Lender **is the signed Promissory Note by the Lender and Woodbridge.**

2. **Form of Assignment (Exhibit "B")**

   **The** Form of Assignment **assigns the rights to the mortgage proceeds, should Woodbridge default to the Private Lender.**  Lenders generally receive this document within 3 to 6 weeks after the underlying loan closes.

3. **Form of Collateral Assignment (Exhibit "C")**

   **The** Collateral Assignment **assigns the rights to the underlying mortgage on the property should Woodbridge default to the Private Lender.**  This document is completed when Woodbridge receives the Recorded Mortgage on the underlying loan.  The document is then recorded at the County Recorder's Office putting the Private Lenders in the Senior Interest / First Positon Lien on the property.  This process usually takes 2-3 months depending on the County the documents are being recorded in.  Available upon request.

4. **Intercreditor Agreement (Exhibit "D")**

   **The** Intercreditor Agreement **list all of the Private Lenders in a property by name and the amounts they have lent and places all lenders at equal priority.**  Private Lenders must sign and return this document.  Intercreditor Agreements are sent to lenders within 30 to 60 days from the time all positions have been filled.

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688515

## Contracts - First Position Commercial Mortgage – Anatomy/Summary

### SUMMARY

A First Position Commercial Mortgage loan ("FPCM") is not a mortgage investment pool and it is not a direct investment in real estate. An FPCM is a private third-party loan to Woodbridge Mortgage Investment Fund 3, LLC, a Delaware limited liability company, or one of its affiliates (collectively, "WMIF") that is secured by a first position lien on a particular commercial mortgage loan owned and held by WMIF. A private lender selects a particular mortgage loan receivable from WMIF's inventory to serve as collateral for that lender's loan to WMIF. Hence, the term "First Position Commercial Mortgage" describes the collateral being pledged by WMIF as security for the private loan to WMIF.

### BACKGROUND

WMIF is a commercial mortgage lender. WMIF lends money to commercial borrowers in exchange for later repayment of the loan amount plus interest. Each loan is evidenced by a Promissory Note (each a "Commercial Note") entitling WMIF to repayment of the applicable loan debt.

| Referencing position held | That repayment obligation is secured by a first position mortgage lien, or deed of trust, in favor of WMIF on certain real property owned by the borrower (each a "First Mortgage"). |

### ANATOMY OF A SENIOR POSITION LOAN

To facilitate growth of its commercial lending business, WMIF itself borrows funds from private lenders. WMIF's payment obligation to each such private lender is secured by a first position lien on the proceeds of a particular mortgage receivable in WMIF's inventory (each a "Senior Position Loan"). For each Senior Position Loan, a lender selects the particular mortgage receivable to serve as collateral for that particular loan transaction (a "Senior Position Lender").

Each Senior Position Loan is evidenced by a Promissory Note and Loan Agreement specific to that discrete transaction. WMIF's obligations under each Senior Position Loan are secured by: (i) a first position lien on the proceeds of the selected Commercial Note and First Mortgage receivable; and (ii) a pledged conveyance by WMIF of its holder and ownership interest in the subject Commercial Note and First Mortgage loan instruments, in favor of such Senior Position Lender(s).

Each Senior Position Loan is a private transaction that is separate and distinct from the pledged Commercial Note and First Mortgage receivable. As such, WMIF's obligations under each Senior Position Loan are neither contingent upon nor subject to the performance or repayment status of the subject Commercial Note and First Mortgage receivable.

In the event of a default by a commercial borrower of its obligations to WMIF under the Commercial Note and First Mortgage, WMIF is obligated and shall continue to make payment to the Senior Position Lender(s) under each Senior Position Loan according to its respective Promissory Note and Loan Agreement.

In the event of a default by WMIF under a particular Senior Position Loan, the first position lien enables the associated Senior Position Lender(s) the right to receive the subject Commercial Note and First Mortgage proceeds directly from the commercial borrower.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

## Contracts - First Position Commercial Mortgage – Anatomy/Summary

In the event of a default by both: (i) the commercial borrower under the subject Commercial Note and First Mortgage and (ii) WMIF under a particular Senior Position Loan, the pledged conveyance enables the Senior Position Lender(s) the legal right and standing necessary to: (a) enforce the Commercial Note; (b) foreclose the First Mortgage; (c) sell or otherwise dispose of the encumbered real property; and (d) retain the proceeds of such sale or other disposition in order to pay all amounts owed to the Senior Position Lender(s).

### THREE LAYERS OF COLLATERAL

*Promissory Note.* This instrument is WMIF's contractual promise to repay its Senior Position Lender according to the agreed terms and conditions set forth in both the Promissory Note and Loan Agreement. The Promissory Note forms the basis of a Senior Position Lender's right to payment from WMIF according to its terms.

*Loan Agreement.* The Loan Agreement creates and attaches a UCC Article 9 security interest in the lender-selected Commercial Note and First Mortgage proceeds in favor of that Senior Position Lender.

*Assignment and Collateral Assignment.* These documents are a pledged conveyance by WMIF of all of its rights, title, and interest as holder and owner of the selected Commercial Note and First Mortgage loan instruments and proceeds.

### EQUAL CLAIM AMONG SENIOR POSITION LIENHOLDERS

All private lenders having a security interest in a particular Commercial Note and First Mortgage are of equal claim and right to such Commercial Note and First Mortgage (the "Common Collateral") with no priority or preference among them and on a *pro rata* basis determined by and limited to the outstanding indebtedness under the respective Promissory Note and Loan Agreement.

This equal claim and right among Senior Position Lenders as to the Common Collateral is accomplished and memorialized through an "Intercreditor Agreement", executed by all Senior Position Lenders having a security interest in a particular Commercial Note and First Mortgage.

WMIF does not and will not grant a security interest in or otherwise encumber the Common Collateral in favor of any creditor other than the private lenders whose Promissory Note and Loan Agreement are secured by such Common Collateral.

### THE COMMON COLLATERAL

As it pertains to the Common Collateral, WMIF mitigates the risk of loss and depreciation of the real property encumbered by a particular First Mortgage in a multitude of ways:

*Commercial Borrowers.* WMIF lends solely to commercial borrowers. This enables WMIF additional and more expedient means to enforce and/or remedy default under the Commercial Note and First Mortgage (*e.g.*, personal guaranty, assignment of leases and rents, etc.).

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688517

## Contracts - First Position Commercial Mortgage – Anatomy/Summary

***Maximum 70% Commercial Loan to Property Value Ratio.*** WMIF does not and will not lend an amount that is greater than seventy and 00/100 percent (70.00%) of the encumbered real property value. Prior to making a loan, the encumbered property is valued "as is" by a certified professional appraisal and/or a licensed Broker's Price Opinion.

***Maximum Two-Year Term.*** While most of WMIF's commercial mortgage loans each are for a term of around one (1) year, WMIF generally does not lend for a term greater than two (2) years. A maximum loan term of two years minimizes the duration within which a substantial downward fluctuation may occur.

***First Position Mortgage.*** WMIF obtains and maintains a first position mortgage lien against real property owned by the applicable commercial borrower. Each First Mortgage has priority over all other mortgage liens on the encumbered property in the event of a default under the Commercial Note.

***Creation of First Lien Priority.*** In conjunction with each First Mortgage loan, WMIF requires that a title examination is first conducted: (i) to confirm that the commercial borrower signing the Commercial Note and First Mortgage actually does own the property, as sole owner, and (ii) to identify any outstanding mortgages, judgment, liens, or other encumbrances on the property. WMIF requires that all such liens, claims, and encumbrances be paid, released, or otherwise extinguished prior to the closing of the subject loan transaction.

***Preservation of First Lien Priority.*** Throughout the term of the Commercial Note and First Mortgage, the commercial borrower must, among other obligations, maintain the mortgaged property free and clear of all liens, claims, security interests, and encumbrances of any kind which could impair the priority of the First Mortgage. The borrower's failure to do so constitutes a default under the Commercial Note and First Mortgage.

***Title Insurance.*** WMIF obtains and maintains closing, gap, and title insurance coverage for each Commercial Note and First Mortgage. This mitigates risks associated with any defect in or lien or encumbrance on the mortgaged property and title. Title coverage also mitigates the risk of invalidity or unenforceability of the lien, defective attachment, perfection, or lack of first priority lienholder status.

***Property Insurance.*** Upon consummation of the Commercial Note and First Mortgage loan, WMIF obtains insurance coverage (as an additional insured and as the designated lender's loss payee) on the encumbered property itself. This mitigates the risk of loss to the encumbered property's value due to damage, destruction, natural disasters, and the like.

***Subordinated Right to Payment.*** WMIF grants to its Senior Position Lender(s) a first and superior security interest in and to the subject Commercial Note and First Mortgage proceeds. As a junior lienholder, WMIF's right to such proceeds is contingent upon payment and satisfaction of its obligations to each applicable Senior Position Lender according to the respective Promissory Note and Loan Agreement. In the event of a payoff, sale, or other disposition of the Common Collateral, the net proceeds are first applied toward the satisfaction of amounts due and owing from WMIF to the associated Senior Position Lender(s). Only upon full repayment of each applicable Senior Position Loan(s) may such proceeds be applied toward WMIF's junior interest.

### <u>PROMISSORY NOTE</u>

January 15, 2016

82 | P a g e

## Contracts - First Position Commercial Mortgage - Promissory Note

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.00%

$100,000.00                                              Sherman Oaks, California

**FOR VALUE RECEIVED**, the undersigned, **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**, a Delaware limited liability company having an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (hereinafter referred to as the "Borrower") does hereby promise to pay to the order of **LENDER**, an individual having an address of 123 Street, Town, ST 01234 (hereinafter referred to as "Lender"), at such place as the Lender may designate by written notice to Borrower, the principal sum of One Hundred Thousand and 00/100 Dollars ($100,000.00), together with interest on all unpaid balances beginning as of the date hereof, at the fixed rate per annum as set forth in Section 1 hereof.

1. **Interest Rate.** The unpaid balance of the principal sum of One Hundred Thousand and 00/100 Dollars shall bear interest from the date hereof through March 1, 2017, at a fixed rate of interest equal to five and 00/100 percent (5.00%) per annum. After March 1, 2017, the unpaid balance of this Note shall bear interest at a fixed rate equal to nine and 00/100 percent (9.00%) per annum. The rate of interest charged hereunder shall never exceed the maximum amount, if any, allowable by law. Interest shall be charged on the principal balance from time to time outstanding on the basis of the actual number of days elapsed computed on the basis of a 360 day year.

Referencing the 15 month term increase. (Jump rate)

2. **Default Interest Rate.** During the continuance of any Event of Default (as more particularly defined in Paragraph 6 below) under this Note by acceleration or otherwise, interest shall accrue from and after such Event of Default at four (4) percentage points above the interest rate then in effect hereunder (the "Default Interest Rate").

3. **Repayment.** Borrower promises to pay the interest and principal on this Note, as set forth below:

   Monthly payments of interest shall be made commencing on February 1, 2016 and continuing on the same day of each and every month to occur thereafter, both before and after maturity by acceleration or otherwise.

   The entire principal balance plus accrued and unpaid interest thereon, and all other sums and charges due to the Lender hereunder, unless sooner paid, shall be due and payable on June 1, 2017 (the "Maturity Date"). Upon and after the eighth (8") day following Borrower's receipt of written notice from Lender of Borrower's failure to pay the entire principal balance plus accrued and unpaid interest on the Maturity Date as required, any outstanding amounts due under this Note shall bear interest at a fixed rate of twenty-four and 00/100 percent (24.00%) per annum.

4. **Application of Payments.** All payments pursuant to this Note shall be made in legal tender of the United States of America and shall be applied first to the payment of delinquency or late charges, if any; second, to the payment of accrued and unpaid interest on this Note; and third, the balance on account of the principal of this Note.

5. **Application of Payments.** All payments pursuant to this Note shall be made in legal tender of the United States of America and shall be applied first to the payment of delinquency or late charges, if any; second, to the payment of accrued and unpaid interest on this Note; and third, the balance on account of the principal of this Note.

FOIA   CONFIDENTIAL TREATMENT REQUESTED                    WOODBRIDGE SEC_02688519

## Contracts - First Position Commercial Mortgage - Promissory Note

Property ID : Property Name
Principal  : $100,000.00
Int. Rate  : 5.00%

6. **Cure Period and Notice of Default.** Failure of Borrower to pay by its due date any installment of the principal or of interest within thirty (30) days from the date the same becomes due and payable, shall constitute a "Payment Default" under this Note. Borrower shall have a cure period of not less than thirty (30) days after receipt of written notice ("Notice of Default") of any alleged breach or Payment Default under the terms of this Note to cure the same.

7. **Event of Default.** Any alleged breach or Payment Default under this Note that is not fully cured following the expiration of the applicable cure period specified in a given Notice of Default shall constitute an event of default ("Event of Default") under this Note.

8. **Waiver of Rights.**

   a. BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY COURT AND IN ANY SUIT ACTION OR PROCEEDING OR ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE FINANCING TRANSACTIONS OF WHICH THIS NOTE OR THE COLLATERAL ASSIGNMENT DOCUMENTS (AS DEFINED BELOW) ARE A PART AND/OR THE ENFORCEMENT OF ANY OF LENDER'S RIGHTS AND REMEDIES. BORROWER ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER.

   b. Borrower hereby waives diligence, demand, presentment for payment, protest and notice of protest, and notice of any renewals or extensions of this Note, and agrees that the time for payment of this Note may be changed and extended at Lender's sole discretion, without impairing its liability thereon, and further consents to the release of any party liable for this obligation, or the release of all or any part of the collateral given as security for the payment of this Note, without affecting its liability with respect hereto.

9. **Lender's Rights.** Lender's rights hereunder shall be cumulative and not exclusive and may be exercised at the sole discretion of Lender with respect to priority, order and type of collateral or security realized upon or applied toward the indebtedness evidenced hereby until this Note and all accrued and unpaid interest and other sums and charges due hereunder shall have been paid in full. Further, no failure on the part of Lender to exercise any right or remedy hereunder, whether before or after the occurrence of an Event of Default hereunder, shall constitute a waiver thereof, and no waiver of any past default shall constitute waiver of any future default or of any other default.

10. **Prepayment.** The Borrower shall have the right to prepay this Note in whole or in part at any time without penalty.

11. **Binding Effect.** This Note shall bind the successors and assigns of Borrower and shall inure to the benefit of the Lender, its successors and assigns.

12. **Captions and Section Headings.** The captions and section headings used in this Note are for convenience only and shall not be used to interpret, modify or affect in any way the covenants and agreements herein contained.

13. **Severability.** In the event that any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part, or in any respect, or in the event that any one or more of the provisions of this Note shall operate or would prospectively operate, to invalidate this Note, then the remaining provisions of this Note shall remain operative and in full force and effect, shall be valid, legal and enforceable and shall in no way be affected, prejudiced or disturbed thereby.

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688520

## Contracts - First Position Commercial Mortgage - Promissory Note

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.00%

14. **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of Delaware.

15. **No Assignment.** Neither this Note, the Loan Agreement of even date herewith between Borrower and Lender, nor all other instruments executed or to be executed in connection therewith (collectively, the "Collateral Assignment Documents") are assignable by Lender without the Borrower's written consent and any such attempted assignment without such consent shall be null and void.

16. **Commercial Transaction.** Lender and Borrower each acknowledge and stipulate that the Loan is a commercial transaction.

17. **Security.** This Note will be secured _inter_ _alia_ by the Collateral Assignment Documents upon execution thereof.

**WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**


By: _____

_____
Its Authorized Representative


Accepted and Agreed to by Lender:


_____
LENDER

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688521

## Contracts - First Position Commercial Mortgage - Promissory Note

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.00%

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688522

## Contracts - First Position Commercial Mortgage - Loan Agreement

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.00%

### LOAN AGREEMENT

**THIS LOAN AGREEMENT** (this "Agreement") made on this January 15, 2016, by and between **LENDER**, an individual having an address of 123 Street, Town, ST 01234 (hereinafter referred to as the "Lender") and **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**, a Delaware limited liability company, having an office at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 ( "Woodbridge").

### WITNESSETH:

**WHEREAS,** Lender wishes to make a loan (the "Loan") to Woodbridge to fund, in part, a loan to a third-party borrower, as more fully defined below (the "Pledged Loan"); and

**WHEREAS,** Lender advanced to Woodbridge a portion of the funds that, with other funds from Woodbridge, will be used to make the Pledged Loan; and

**WHEREAS,** Lender acknowledges that Woodbridge has executed or intends to execute other notes and loan agreements to fund the Pledged Loan on a pari passu basis with other lenders; and

**WHEREAS,** Woodbridge and Lender have agreed to the foregoing transaction on the terms and conditions and in reliance upon the representations and warranties of Woodbridge and Lender hereinafter set forth:

**NOW**, **THEREFORE,** in consideration of the foregoing and in further consideration of the mutual covenants herein contained, the parties hereto agree as follows:

1.  Lender has agreed to lend Woodbridge the sum of One Hundred Thousand and 00/100 Dollars ($100,000.00).  The foregoing obligation shall be evidenced by Woodbridge's promissory note to Lender, in the original principal amount of One Hundred Thousand and 00/100 Dollars ($100,000.00) in the form of Exhibit A hereto and made a part hereof (as the same may be amended or modified from time to time, the "Note"), with appropriate insertion of dates.

The Note shall bear interest at a rate equal to five and 00/100 percent (5.00%) per annum, subject to such default rates as may be set forth in the Note; provided, however, that the rate of interest charged thereunder shall never exceed the maximum amount, if any, allowable by law. Interest shall be payable as provided in the Note and shall be charged on the daily outstanding principal balance on the basis of the actual days elapsed and on a three hundred sixty (360) day year.

Interest shall be payable as provided in the Note. The entire outstanding principal balance of the Note shall be due and payable in full on June 1, 2017, unless sooner prepaid. Woodbridge may prepay the Note without penalty at any time.

2.  **Security Interest.** Woodbridge hereby grants to the Lender a security interest in all of the Woodbridge's present and future right, title and interest in and to any and all of the following (the "Collateral"):

| Referencing position held | (a) | That certain loan in the principal amount of One Million and 00/100 Dollars ($1,000,000.00) (the "Pledged Loan") extended or to be extended to Commercial Borrower (the "Borrower") secured by a first priority lien on the real property located at Address (the "Premises"); |

(b) The promissory note evidencing the Pledged Loan (the "Underlying Note");

(c) The mortgage or deed of trust securing the Pledged Loan with an interest in the Premises (the "Underlying Mortgage"); and

(d) Title insurance policies and such other instruments or documentation as may be executed and delivered to Woodbridge in conjunction with the Pledged Loan (said Underlying Note, Underlying Mortgage and other associated loan documents collectively hereafter referred to as the "Loan Documents"); and

(e) Upon the consummation of the Pledged Loan, Woodbridge will execute and deliver to Lender collateral

87 | P a g e

## Contracts - First Position Commercial Mortgage - Loan Agreement

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.00%

assignment documents substantially in the form attached hereto as Exhibits B and C.

88 | P a g e

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688524

## Contracts - First Position Commercial Mortgage - Loan Agreement

Property ID : Property Name
Principal : $100,000.00
Int. Rate : 5.00%

> **(f)** Lender acknowledges that they are only providing the financing for a portion of the Pledged Loan and, therefore, Woodbridge retains the right to execute other notes, loan agreements, assignments, and collateral assignments in favor of other lenders as may be necessary to fund the Pledged Loan secured by the Collateral on a _pari passu_ basis with such other lenders. Lender further agrees that it, and any such other lenders, shall execute an Intercreditor Agreement substantially in the form attached hereto as <u>Exhibit D</u> in order to confirm that their interests in the Collateral are of equal priority.

**3.  Representations and Warranties.**

    **(a)** Woodbridge represents and warrants to Lender that Woodbridge has or will have good and marketable title to the Pledged Loan and the Collateral free from any adverse liens, security interests or encumbrances on record as of the date of the Pledged Loan.

    **(b)** The execution and delivery of the Note, this Agreement, and every other agreement, instrument or document executed and delivered to Lender by Woodbridge pursuant to the terms hereof, are valid, legal and binding upon it and enforceable in accordance with their respective terms.

    **(c)** All information furnished or to be furnished by Woodbridge pursuant to the terms hereof will not, at the time the same is furnished, contain any untrue statement of a material fact and will not omit to state a material fact necessary to make the information so furnished, in the light of the circumstances under which such information is furnished, not misleading.

    **(d)** Lender represents and warrants to Woodbridge that: (i) the Loan Documents and the Pledged Loan they evidence constitute a <u>commercial loan transaction</u> and are not for investment purposes; and (ii) Lender has reviewed the Loan Documents and the associated other information on the Borrower of the Pledged Loan, and has had the opportunity to review said documents and information with its own legal counsel, and has had sufficient access to all of said documents and information to allow it to make its own credit decision with respect to the Pledged Loan, and has, in fact, made its own credit decision in making the Loan.

**4.  General Provisions.**

    **(a)** This Agreement is an integrated document and all terms and provisions are embodied herein and shall not be varied by parol;

    **(b)** This Agreement is made, executed and delivered in the State of Delaware and it is the specific desire and intention of the parties that it shall in all respects be construed under the laws of the State of Delaware;

    **(c)** The captions for the paragraphs contained in this Agreement have been inserted for convenience only and form no part of this Agreement and shall not be deemed to affect the meaning or construction of any of the covenants, agreements, conditions or terms hereof;

    **(d)** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided, however, that Lender shall not assign, voluntarily, by operation of law or otherwise, any of its rights hereunder without the prior written consent of Woodbridge and any such attempted assignment without such consent shall be null and void;

    **(e)** No delay or failure of Lender in exercising any right, power or privilege hereunder shall affect such right, power or privilege, nor shall any single or partial exercise preclude any further exercise thereof or the exercise of any other rights, powers or privileges; and

    **(f)** This Agreement, the security interest hereby granted to Lender by Woodbridge and every representation, warranty, covenant, promise and other then herein contained shall survive until the Note has been paid in full.

### [REMAINDER OF PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE TO FOLLOW]

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688525

## Contracts - First Position Commercial Mortgage - Loan Agreement

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.00%

**IN WITNESS WHEREOF,** the parties hereto have hereunto set their hands and seals, the day and year first above written.

Signed, Sealed, and Delivered
in the Presence of:

_____
(Witness)

_____              _____
(Witness)                                                    LENDER

Assignor:

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3, LLC**

_____        By: _____
                                                              Its Authorized Representative

_____

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688526

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.00%

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688527

**Contracts - First Position Commercial Mortgage - Exhibits**

Property ID : Property Name
Principal    : $100,000.00
Int. Rate   : 5.00%

## EXHIBIT LIST

EXHIBIT A     Note from Woodbridge to Lender

EXHIBIT B     Form of Assignment

EXHIBIT C     Form of Collateral Assignment

EXHIBIT D     Form of Intercreditor Agreement

## EXHIBIT A

### Note from Woodbridge to Lender

## EXHIBIT B

### Form of Assignment

### ASSIGNMENT OF PROMISSORY NOTE AND MORTGAGE

THIS ASSIGNMENT OF PROMISSORY NOTE AND MORTGAGE (this "**Assignment**") made as of the ___ day of _____, 20__, by **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**, a Delaware limited liability company with an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (the "**Assignor**"), in favor of _____, having an address of _____ (the "**Assignee**").

**WHEREAS**, Assignee has extended a term loan (the "Loan") in the original principal amount of ___ Hundred Thousand and 00/100 Dollars ($___,000.00) to Assignor (the obligations of Assignor in respect of the Promissory Note evidencing said Loan being hereinafter referred to as the "**Obligations**"); and

**WHEREAS**, it is a condition of Assignee's agreement to extend such Loan that Assignor assign to Assignee its interest in certain documents hereinafter described, and the indebtedness related thereto, as security for the Obligations;

**NOW, THEREFORE**, as security for the Obligations, and as an inducement to Assignee to extend the Loan and in consideration therefor, and in consideration of Ten Dollars ($10.00) to Assignor paid, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby grants, bargains, sells, assigns, conveys, transfers and sets over unto Assignee a security interest in and lien upon, all of Assignor's right, title and interest in, to and under: (a) a certain Mortgage from _____, dated ____, 20__, in favor of Assignor (the "**Assigned Mortgage**"), encumbering certain real and personal property described therein, (b) a certain Promissory Note in the principal amount of ____ Hundred Thousand and 00/100 Dollars ($___,000.00), dated _____, 20__, made by _____ and payable to the order of Assignor (the "**Assigned Note**"), and all proceeds thereof and all other documents securing or guarantying the same (the Assigned Mortgage, the Assigned Note, and all other documents or instruments securing or guarantying the same being hereinafter referred to collectively as the "**Assigned Documents**").

Assignor further covenants and agrees as follows:

1.   The occurrence of an "Event of Default" under the Promissory Note evidencing the Loan, or under the Collateral Assignment dated of even date herewith, beyond the applicable notice and cure period shall constitute an "**Event of Default**" under this Assignment. So long as no Event of Default shall have occurred, Assignor shall be entitled to collect all payments of interest and all scheduled payments of principal (collectively, "**Scheduled Payments**") on the Assigned Documents.

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688528

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.00%

2.   In the event of any payment (other than Scheduled Payments or pre-payments) under the Assigned Note, the obligor under the Assigned Documents ("**Borrower**") is hereby irrevocably authorized and directed to make such payment directly to Assignee or to such person as Assignee shall otherwise direct. Assignor shall immediately pay over to Assignee any such payment received directly from Borrower.

3.   Upon written notice from Assignee that an Event of Default exists, Borrower shall thereafter make, and is hereby irrevocably authorized and directed to make, all payments under the Assigned Documents directly to Assignee or to such person as Assignee shall otherwise direct, to be applied against the Obligations until such Obligations are satisfied. Upon satisfaction of such Obligations, all remaining payments under the Assigned Documents, if any, shall resume to be made and directed to Assignor.

4.   Upon the occurrence of an Event of Default, Assignor will not grant any waivers, indulgences, modifications, extensions or other departures by Borrower from or of the obligations required to be performed by Borrower under the Assigned Documents and any security or other agreement executed in connection therewith, without the prior written consent of Assignee. At Assignee's request, Assignor shall also provide to Assignee such other information regarding the Borrower or the Premises secured by the Assigned Mortgage as Assignor may have in its possession.

5.   This Assignment is executed only as security for the Obligations. The execution and delivery of this Assignment shall not subject Assignee to, or transfer or pass to Assignee, or in any way affect or modify, the liability of Assignor under any or all of the Assigned Documents.

6.   In the exercise of its powers hereunder or under any documents relating to the Obligations, no liability shall be asserted or enforced against Assignee, all such liability being hereby expressly waived and released by Assignor. Assignor hereby agrees to indemnify Assignee, and hold it harmless, from any and all liabilities, losses, or damages which Assignee shall incur by reason of this Assignment or the Assigned Documents and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligations or, undertakings required to be performed by Assignor in connection with the Assigned Documents.

7.   Assignor hereby agrees and acknowledges that neither the acceptance of this Assignment by Assignee nor the exercise of, or failure to exercise, any right, power or remedy in this instrument conferred upon Assignee shall be deemed or construed to obligate Assignee, or its successors or assigns, to pay any sum of money, take any action or incur any liability in connection with any of the Assigned Documents. It is further agreed and understood by Assignor that neither Assignee nor its successors or assigns shall be liable in any way for any costs, expenses or liabilities connected with, or any charges or liabilities resulting from, any of the Assigned Documents.

8.   This Assignment shall be binding upon Assignor and its successors and assigns, and shall inure to the benefit of Assignee and its successors and assigns. Notwithstanding anything contained herein, however, neither the Note nor the other Loan Documents are assignable by Assignee without the Assignor's written consent, and any such attempted assignment without such consent shall be null and void. This Assignment shall be governed by and construed and enforced in accordance with the laws of the State of Delaware.

9.   (a)  Any notice, report, demand, request or other instrument or communication authorized or required under this Assignment to be given to Assignor, Assignee or Borrower shall be deemed given if addressed to the party intended to receive the same, at the address of such party set forth below, (i) when delivered at such address by hand or by overnight delivery service, or (ii) three (3) days after the same is deposited in the United States mail as first class certified mail, return receipt requested, postage paid, whether or not the same is actually received by such party:

| | |
|---|---|
| Assignor: | Woodbridge Mortgage Investment Fund 3, LLC |
| | 14225 Ventura Boulevard |
| | Suite 100 |
| | Sherman Oaks, California 91423 |
| | |
| Assignee: | _____ |
| | _____ |

93 | P a g e

                           WOODBRIDGE SEC_02688529

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal  : $100,000.00
Int. Rate  : 5.00%

_____

(b)  Any party may change the address to which any such notice, report, demand, request or other instrument or communication to such party is to be delivered or mailed, by giving written notice of such change to the other parties, but no such notice of change shall be effective unless and until received by such other parties.

10.  Upon full payment and performance of the Obligations, this Assignment shall terminate and shall be of no further force and effect. Upon such termination, Assignee shall indorse the Assigned Note to the order of Assignor (or otherwise as Assignor may direct), without recourse, warranty or representation, and Assignee shall deliver the Assigned Note to Assignor.

11.  Notwithstanding anything to the contrary set forth in this Assignment, unless and until Assignee shall have exercised its rights under paragraph 3 above, Assignor shall be entitled to foreclose the Assigned Mortgage.  The proceeds of such foreclosure shall be applied to payment of the Obligations before being used for any other purpose.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.00%

**IN WITNESS WHEREOF**, the Assignor has executed this Assignment as of the date first written above.

Assignor:

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3, LLC**

_____        By: _____
                                             _____
                                             Its Authorized Representative

_____

FOIA    CONFIDENTIAL TREATMENT REQUESTED                                    WOODBRIDGE SEC_02688531

**Contracts - First Position Commercial Mortgage - Exhibits**

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.00%

### EXHIBIT C

### Form of Collateral Assignment

**COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS**

THIS COLLATERAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS (this "Assignment"), dated as of this _____ day of _____ 20__, is made and given by **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**, a Delaware limited liability company ("Borrower"), having an address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423, and in favor of _____, having an address of _____, his or her successors and assigns ("Lender").

#### Background:

Lender has agreed to make, and Borrower has agreed to accept, a loan in the original maximum principal amount of _____ Hundred Thousand and 00/100 Dollars ($_____,000.00) (the "Loan") upon the terms and conditions set forth in that certain Promissory Note, dated _____, in the original principal amount of _____ Hundred Thousand and 00/100 Dollars ($_____,000.00) made by Borrower and payable to Lender (as the same may be amended or modified from time to time, the "Note").

Lender understands that Borrower shall utilize the proceeds of the Loan to fund a loan to a third party borrower, such loan to be made pursuant to the "Underlying Documents" more particularly described in Section 2.1.1 below. As a condition to making the Loan, Lender has required Borrower to assign to Lender, as additional security for the Loan, all of Borrower's right, title and interest in and to the promissory notes, security instruments and other loan documents conveyed including without limiting the generality of the foregoing, all rights to receive payments under such collateral.

#### Statement of Agreement

**NOW, THEREFORE,** for valuable consideration, separate and distinct from the consideration given by Lender with respect to the Loan, the receipt and adequacy of which are hereby acknowledged, Borrower agrees as follows:

1. **Recitals.** The Recitals are incorporated herein by this reference.

2. **Assignment.** As security for the performance of all obligations of Borrower to Lender under the Note, the Assignment of Promissory Note and Mortgage, and all other documents now or hereafter evidencing, securing or related to the Loan (collectively, the "Loan Documents"), Borrower hereby assigns and transfers to Lender, on a non-exclusive basis, all of its right, title and interest in and to the following collateral (the "Collateral"):

   2.1.1. All right, title, interest, claims or rights of Borrower now or hereafter in and to the notes, deeds to secure debt, security instruments, guaranties and other loan documents (collectively, the "Underlying Documents") described on **Exhibit "A"** attached hereto and incorporated herein by this reference; and

   2.1.2. Any and all proceeds of a casualty or condemnation, repayment of loans, proceeds of foreclosure sales, and payments of any kind or nature whatsoever, now or hereafter distributable or payable to Borrower by reason of Borrower's ownership of the Underlying Documents; and

   2.1.3. All accounts, contract rights, security entitlements, investment property and general intangibles now or hereafter evidencing, arising from or relating to any of the foregoing; and

   2.1.4. All right of Borrower to collect and enforce payments pursuant to the terms of the Underlying Documents; and

   2.1.5. All documents, writings, leases, books, files, records, computer tapes, programs, ledger books and ledger pages arising from or used in connection with any of the foregoing; and

   2.1.6. All renewals, extensions, additions, substitutions or replacements of any of the foregoing; and

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688532

**Contracts - First Position Commercial Mortgage - Exhibits**

Property ID : Property Name
Principal   : $100,000.00
Int. Rate  : 5.00%

**2.1.7.** All powers, options, rights, privileges and immunities pertaining to any of the foregoing; and

**2.1.8.** All proceeds of any of the foregoing and all cash, security or other property distributed on account of any of the foregoing.

**3.   Representations and Warranties.** Borrower hereby represents and warrants that: (a) Borrower is or will be the true owner of the interests under the Underlying Documents; (b) Borrower has not assigned or granted a security interest in the Collateral to any person or entity that is or will be superior to that of the Lender; and (c) to Borrower's knowledge, (i) Borrower's interest in the Collateral is not and will not be subject to any claims, setoffs, encumbrances or deductions, and (ii) the Loan Documents constitute and will constitute valid and binding obligations of Borrower.

**4.   No Assumption by Lender and Covenants of Borrower.** Neither this Assignment nor any action or actions on the part of Lender after the date hereof shall constitute an assumption by Lender of any obligations under the Underlying Documents, and Borrower shall continue to be liable for all obligations thereunder arising after the date hereof. Borrower agrees to perform punctually any and all obligations it may have under the Underlying Documents, to take such steps as it may deem necessary or appropriate to secure performance by the obligor(s) and guarantor(s) of the Underlying Documents thereon of all of its obligations under the applicable Underlying Documents.

**5.   Benefits Conditionally Retained by Borrower.** Lender hereby grants Borrower the right to continue to receive the benefits of, and exercise the rights under, the Underlying Documents unless an Event of Default (as described in Section 14 below) exists, in which event such rights may be revoked at any time thereafter at the option of Lender.

**6.   Action by Lender Following Event of Default.** Lender shall have the right, but not an obligation, at any time while an Event of Default exists, without notice and without taking possession of the Property or any part thereof, to take in Lender's name or in the name of Borrower such action as Lender may, at any time or from time to time, reasonably determine to be necessary to cure any default under the Underlying Documents or to protect or exercise the rights of Borrower or Lender thereunder, and may otherwise exercise any other rights or remedies Lender has under the Loan Documents. Lender shall incur no liability if any action taken by it or on its behalf pursuant to this Assignment shall prove to be in whole or in part inadequate or invalid; and Borrower hereby agrees to indemnify, defend, and hold Lender free and harmless from and against any loss, costs, liability or reasonable expense (including, without limitation, reasonable attorneys' and accountants' fees and expenses, court costs and investigation expenses) actually incurred by Lender in connection with its actions under this Section 6.

**7.   Power of Attorney.** Borrower hereby irrevocably constitutes and appoints Lender as its true and lawful agent and attorney-in-fact, with full power of substitution, to demand, receive and enforce all rights of Borrower under the Underlying Documents, following the occurrence and during the continuance of an Event of Default, to modify, supplement and terminate the Underlying Documents, to transfer the Underlying Documents to Lender, to give appropriate releases, receipts for or on behalf of Borrower in connection with the Underlying Documents, to file, pursue, receive payment and acquittances for or otherwise compromise each and every claim Borrower has or may have against the obligor(s) and guarantor(s) of the Underlying Documents for payment or otherwise under the Underlying Documents, all in the name, place and stead of Borrower or in Lender's name, with the same force and effect as Borrower could have if this Assignment had not been made. Borrower authorizes any third party to rely exclusively on the certificate of an officer of Lender or its successor for the establishment of an Event of Default and hereby waives and releases any claim Borrower may have against such third party for such reliance. Borrower hereby agrees to deliver to Lender, upon Lender's written demand and after the occurrence and during the continuance of an Event of Default, all instruments and documents as Lender may reasonably require in order to permit Lender's succession to the right, title and interest of Borrower in and to the Underlying Documents as provided herein. Borrower appoints Lender as its attorney-in-fact to execute any and

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688533

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal  : $100,000.00
Int. Rate  : 5.00%

all such documents on Borrower's behalf upon any failure of Borrower to so execute such documents, it is hereby recognized that the power of attorney herein granted is coupled with an interest and is irrevocable.

At Lender's option, Lender may record this Assignment in the recording office. By acceptance of this Assignment, Lender agrees that it shall not exercise the power of attorney granted herein unless there shall have occurred and be continuing an Event of Default.

**8.   Binding Effect.** This Assignment shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns, including without limitation any purchaser upon foreclosure of the lien and security interests created by the Underlying Documents or under a deed in lieu of such foreclosure and any receiver in possession of the Property.

**9.   No Release or Termination.** The taking of this Assignment by Lender shall not affect the release of any other collateral now or hereafter held by Lender as security for the obligations of Borrower under the Loan Documents, nor shall the taking of additional security for any such obligations hereafter effect a release or termination of this Assignment, or any terms or provisions hereof.

**10. No Waiver.** No failure or delay on the part of Lender in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies hereunder are cumulative and may be exercised by Lender either independently of or concurrently with any other right, remedy or power contained herein or in any instrument executed in connection with the Loan Documents.

**11. Captions.** The section titles or captions contained in this Assignment are for convenience only and shall not be deemed to define, limit or otherwise modify the scope or intent of this Assignment.

**12. Variation in Pronouns.** All the terms and words used in this Assignment, regardless of the number and gender in which they are used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context or sense of this Assignment or any paragraph or clause herein may require, the same as if such word had been fully and properly written in the correct number and gender.

**13. Notices.** Any notice, demand, request or other communication which any party hereto may be required or may desire to give hereunder shall be given in the manner required by the Loan Documents.

**14. Event of Default.** The occurrence of an Event of Default under the Note or any of the other Loan Documents beyond the applicable notice and cure period shall constitute an "Event of Default" under this Assignment.

**15. Successors and Assigns.** This Assignment shall be binding upon Borrower and its successors and assigns and shall insure to the benefit of the Lender and Lender's successors; provided, however, and notwithstanding anything contained herein, neither the Note nor the Loan Documents are assignable by Lender, in whole or in part, and any such attempted assignment shall be null and void.

**16. Governing Law.** The parties hereby acknowledge, consent and agree this Assignment and the rights of all parties mentioned herein shall be governed by the laws of the State of Delaware.

### [*REMAINDER OF PAGE LEFT INTENTIONALLY BLANK – SIGNATURE PAGE FOLLOWS*]

**IN WITNESS WHEREOF**, the Borrower, acting by its duly authorized officer, has signed, sealed and delivered this Assignment on the date above written.

BORROWER:

98 | P a g e

FOIA    CONFIDENTIAL TREATMENT REQUESTED

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.00%

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3, LLC**


By:_____
_____
Its Authorized Representative


STATE OF CONNECTICUT   )
                       )    ss.
COUNTY OF TOLLAND       )

On this ___ of _____, 20__, before me, the undersigned notary public, personally appeared _____, Authorized Representative of Woodbridge Mortgage Investment Fund 3, LLC, a Delaware limited liability company, to me known and known by me to be the party executing the foregoing Collateral Assignment of Note, Mortgage and Other Loan Documents instrument on behalf of said limited liability company, in favor of _____, and acknowledged said instrument and the execution thereof, to be his free act and deed as such officer and the free act and deed of said limited liability company.


Notary Public _____
Printed Name:_____
My commission expires _____
(Notary Seal)


EXHIBIT A TO COLLATERAL ASSIGNMENT

1.  That certain Mortgage from _____, dated _____, in favor of Woodbridge Mortgage Investment Fund 3, LLC, encumbering certain real and personal property described therein.

2.  That certain Promissory Note in the original principal amount of _____ Hundred Thousand and 00/100 Dollars ($___,000.00), dated _____, 20__, made by _____ and payable to the order of Woodbridge Mortgage Investment Fund 3, LLC.


## EXHIBIT D

### Form of Intercreditor Agreement

### INTERCREDITOR AGREEMENT (PARI PASSU)

THIS INTERCREDITOR AGREEMENT ("Agreement") is entered into by and between _____, having an address at _____ ("First Party") and _____, having an address at _____ ("Second Party") (First Party and Second Party are sometimes herein referred to collectively as the "Lenders" and individually as a "Lender"), as of the date written below.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688535

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal  : $100,000.00
Int. Rate  : 5.00%

W I T N E S S E T H

**WHEREAS,** the Lenders have agreed collectively to lend $_____ to Woodbridge Mortgage Investment Fund 3, LLC, a Delaware limited liability company ("Woodbridge"), and

**WHEREAS,** in return for the loans by the Lenders, Woodbridge will execute and deliver to each of them promissory notes each in the original principal amount of $_____ (the "Notes"), and

**WHEREAS,** Woodbridge intends to use the funds (the "Loans") provided by Lenders to finance a mortgage loan in the principal amount of $_____ to _____, to be evidenced by a promissory note and secured by a mortgage on property located at _____ (the "Underlying Note" and the "Mortgage" respectively), and

**WHEREAS,** upon closing of the Loans, Woodbridge will deliver to each of the Lenders a collateral assignment of the Underlying Note and Mortgage as security for the Notes (the "Collateral Assignments"); and

**WHEREAS,** the Lenders wish that each of them shall be treated equally with reference to the payment under the respective Notes and/or enforcement of the Collateral Assignments; and

**WHEREAS,** this Agreement shall be effective and bind the parties hereto.

**NOW THEREFORE,** the parties hereto agree as follows:

1.   The above recitals are hereby made a part of this Agreement.

2.   Unless explicitly agreed to the contrary in writing, the Lenders shall have equal rights of enforcement, priorities, duties, and obligations under the Notes, and the Collateral Assignments and any other documentation executed and delivered in connection therewith (the "Loan Documents").

3.   In the event of a default under any of the Notes, the Collateral Assignments or other Loan Documents, all of the Notes shall be in default, and shall be due and payable at the option of the Lenders acting in concert.

4.   If any of the Lender(s) desire to exercise any rights it may have under the Loan Documents, it shall notify the other Lender(s) as soon as practicable.

5.   All notices, consents, waivers, and other communications under this Agreement must be in writing and shall be deemed to have been duly given when (a) delivered by hand (with written confirmation of receipt), (b) sent by fax (with written confirmation of receipt), provided that a copy is mailed by registered mail, return receipt requested, or (c) when received by the addressee, if sent by nationally recognized overnight delivery service (receipt requested), in each case to the appropriate addresses and fax numbers as set forth below (or to such other addresses and fax numbers as a party may designate by notice to the other parties):

LENDERS:

First Party

and

Second Party

6.   Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties in the courts of the State of Delaware, or, if it has or can acquire jurisdiction, in the United States District Court for the District of Delaware, and each of the parties consents to the jurisdiction of such courts (and of the appropriate Appellate Courts) in any such action or proceeding and waives any objection to venue laid therein. Process in any action or proceeding referred to in the preceding sentence may be served on any party anywhere in the world.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688536

## Contracts - First Position Commercial Mortgage - Exhibits

Property ID : Property Name
Principal  : $100,000.00
Int. Rate  : 5.00%

7.   This Agreement supersedes all prior agreements between the parties with respect to its subject matter and constitutes (along with the documents referred to in this Agreement) a complete and exclusive statement of the terms of the Agreement between the parties with respect to its subject matter. This Agreement may not be amended except by a written agreement executed by the party to be charged with the amendment.

8.   If any provision of this Agreement is held invalid or unenforceable by any court or competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

9.   This Agreement will be governed by the laws of the State of Delaware without regard to conflicts of interest principles.

10. This Agreement may be executed in any number of counterparts, each of which taken together shall constitute a single agreement.

      **IN WITNESS WHEREOF**, the parties hereto have executed and delivered this Agreement as of the ____ day of _____, 20__.

LENDER(S):

_____
FIRST PARTY

_____
SECOND PARTY

Acknowledged and Agreed to by:

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3, LLC**

By: _____
_____
Its Authorized Representative

101 | P a g e

## Contracts - Construction Loan – Anatomy/Summary

### SUMMARY

A Woodbridge Construction Loan is not a mortgage investment pool and it is not a direct investment in real estate. A Woodbridge Construction Loan is a private third-party loan to Woodbridge Mortgage Investment Fund 3A, LLC, a Delaware limited liability company, or one of its affiliates (collectively, "**WMIF**") that is secured by the proceeds of a second position commercial mortgage loan owned and held by WMIF.

### BACKGROUND

WMIF is a commercial asset-based lender. WMIF makes real estate construction and development loans to its affiliate companies in exchange for later repayment of the loan plus interest (each, a "**C&D Loan**"). Every C&D Loan is evidenced by a promissory note entitling WMIF to repayment of the applicable loan debt (each a "**Commercial Note**").

| Referencing position held | That C&D Loan repayment obligation is secured by, among other things, a second position mortgage lien, or second deed of trust, in favor of WMIF on certain real property owned by that affiliate (each a "**Second Mortgage**"). |
|---|---|

### ANATOMY OF A CONSTRUCTION LOAN

To facilitate growth of its commercial lending business, WMIF itself borrows funds from private lenders. WMIF's payment obligation to each such private lender is secured by a security interest on the proceeds of a particular C&D Loan receivable in WMIF's inventory (each a "**Second Position Loan**"). For each Second Position Loan, a lender selects the particular construction loan receivable to serve as collateral for that particular loan transaction (a "**Second Position Lender**").

Each Second Position Loan is evidenced by a Promissory Note and Loan Agreement specific to that discrete transaction. WMIF's obligations under each Second Position Loan are secured by: (i) a lien on the proceeds of the selected Commercial Note and Second Mortgage receivable; and (ii) a pledged conveyance by WMIF of its holder and ownership interest in the subject Commercial Note and Second Mortgage loan instruments, in favor of such Second Position Lender(s).

Each Second Position Loan is a private transaction that is separate and distinct from the pledged Commercial Note and Second Mortgage receivable. As such, WMIF's obligations under each Second Position Loan are neither contingent upon nor subject to the performance or repayment status of the subject C&D Loan.

In the event of a default under the pledged Commercial Note and Second Mortgage, WMIF is obligated and shall continue to make payment to the Second Position Lender(s) under each Second Position Loan according to its respective promissory note and loan agreement.

In the event of a default both: (i) under the subject Commercial Note and Second Mortgage and (ii) by WMIF under a particular Second Position Loan, the pledged conveyance enables the Second Position Lender(s) the legal right and standing necessary to: (a) enforce the Commercial Note; (b) foreclose the Second Mortgage; and (c) retain the proceeds of such foreclosure in order to pay all amounts owed to the Second Position Lender(s).

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688538

## Contracts - Construction Loan – Anatomy/Summary

### THREE LAYERS OF COLLATERAL

*Promissory Note.* This instrument is WMIF's contractual promise to repay its Second Position Lender according to the agreed terms and conditions set forth in both the promissory note and loan agreement. The promissory note forms the basis of a Second Position Lender's right to payment from WMIF according to its terms.

*Loan Agreement.* This document creates and attaches a UCC Article 9 security interest in the lender-selected Commercial Note and Second Mortgage proceeds in favor of that Second Position Lender.

*Assignment and Collateral Assignment.* These documents are a pledged conveyance by WMIF of all of its rights, title, and interest as holder and owner of the selected Commercial Note and Second Mortgage loan instruments and proceeds.

### EQUAL CLAIM AMONG SECOND POSITION LIENHOLDERS

All private lenders having a security interest in a particular Commercial Note and Second Mortgage are of equal claim and right to such Commercial Note and Second Mortgage (the "**Common Collateral**") with no priority or preference among them and on a *pro rata* basis determined by and limited to the outstanding indebtedness under the respective Promissory Note and Loan Agreement.

This equal claim and right among Second Position Lenders as to the Common Collateral is accomplished and memorialized through an "**Intercreditor Agreement**," executed by all Second Position Lenders having a security interest in a particular Commercial Note and Second Mortgage.

WMIF does not and will not grant a security interest in or otherwise encumber the Common Collateral in favor of any creditor other than the Second Position Lenders whose promissory notes and loan agreements are secured by such Common Collateral.

### THE COMMON COLLATERAL

As it pertains to the Common Collateral, WMIF mitigates the risk of loss and depreciation of the real property encumbered by a particular Second Mortgage in a multitude of ways:

*Incremental Borrowing.* With respect to C&D Loans, WMIF does not borrow the full amount of the loan at once. Instead, WMIF borrows funds from Second Position Lenders incrementally on an as needed basis during the construction and development process. This ensures that the entirety of the C&D Loan amount will not be borrowed until the construction and development of the encumbered property has been substantially completed.

*Maximum Two-Year Term.* WMIF generally does not lend for a term greater than two (2) years. A maximum loan term of two years minimizes the duration within which a substantial downward fluctuation may occur.

*Second Position Mortgage.* WMIF obtains and maintains a second position mortgage lien against real property owned by the applicable WMIF affiliate. Each Second Mortgage, while junior to any 1st mortgage, has priority over all other subordinate mortgage liens on the encumbered property in the event of a default under the Commercial Note.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688539

## Contracts - Construction Loan – Anatomy/Summary

***Creation of Second Lien Priority.*** In conjunction with each Second Mortgage loan, WMIF requires that a title examination is first conducted: (i) to confirm that its affiliate signing the Commercial Note and Second Mortgage owns vested title to the property, as sole owner, and (ii) to identify any outstanding mortgages, judgments, liens, or other encumbrances on the property. WMIF requires that all materialmen and mechanics liens, claims, and encumbrances be paid, released, or otherwise extinguished prior to the closing of the subject loan transaction.

***Preservation of Second Lien Priority.*** Throughout the term of the Commercial Note and Second Mortgage, the mortgaged property is maintained free and clear of all competing liens, claims, security interests, and encumbrances of any kind which could impair the second priority of the Second Mortgage. WMIF's failure

to do so constitutes a default under the Commercial Note, Second Mortgage, and Second Position Loan documents.

***Title Insurance.*** WMIF obtains and maintains closing, gap, and title insurance coverage for each Commercial Note. This mitigates risks associated with any defect in or lien or encumbrance on the mortgaged property and title. Title coverage also mitigates the risk of invalidity or unenforceability of the lien, defective attachment, perfection, or lack of second priority lienholder status.

***Property Insurance.*** WMIF obtains insurance coverage (as an additional insured and as the designated lender's loss payee) on the encumbered property itself. This mitigates the risk of loss to the encumbered property's value due to damage, destruction, natural disasters, and the like.

***Subordinated Right to Payment.*** WMIF grants to its Second Position Lender(s) a superior security interest in and to the subject Commercial Note and Second Mortgage proceeds. As a junior lienholder, WMIF's right to such proceeds is contingent upon payment and satisfaction of its obligations to each applicable Second Position Lender according to the respective promissory note and loan agreement. In the event of a payoff, sale, or other disposition of the Common Collateral, the net proceeds are first applied toward the satisfaction of amounts due and owing from WMIF to the associated Second Position Lender(s). Only upon full repayment of each applicable Second Position Loan(s) may such proceeds be applied toward WMIF's junior interest.

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688540

Contracts - Construction Loan – Promissory Note

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.50%

## PROMISSORY NOTE

January 15, 2016
$100, 000.00                                               Sherman Oaks, California

**FOR VALUE RECEIVED**, the undersigned, **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC,** a Delaware limited liability company having an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (hereinafter referred to as the "Borrower") does hereby promise to pay to the order of **LENDER,** an individual having an address of 123 Street, Town, ST 01234 (hereinafter referred to as "Lender"), at such place as the Lender may designate by written notice to Borrower, the principal sum of One Hundred Thousand and 00/100 Dollars ($100,000.00), together with interest on all unpaid balances beginning as of the date hereof, at the fixed rate per annum as set forth in Section 1 hereof.

Referencing the 15 month term increase. (Jump rate)

**Interest Rate**. The unpaid balance of the principal sum of One Hundred Thousand and 00/100 Dollars shall bear interest from the date hereof through March 1, 2017, at a fixed rate of interest equal to five and 50/100 percent (5.50%) per annum. After March 1, 2017, the unpaid balance of this Note shall bear interest at a fixed rate equal to nine and 00/100 percent (9.00%) per annum. The rate of interest charged hereunder shall never exceed the maximum amount, if any, allowable by law. Interest shall be charged on the principal balance from time to time outstanding on the basis of the actual number of days elapsed computed on the basis of a 360 day year.

1. **Default Interest Rate.** During the continuance of any Event of Default (as more particularly defined in Paragraph 6 below) under this Note by acceleration or otherwise, interest shall accrue from and after such Event of Default at four (4) percentage points above the interest rate then in effect hereunder (the "Default Interest Rate").

2. **Repayment.** Borrower promises to pay the interest and principal on this Note, as set forth below:

   Monthly payments of interest shall be made commencing on February 1, 2016 and continuing on the same day of each and every month to occur thereafter, both before and after maturity by acceleration or otherwise.

   The entire principal balance plus accrued and unpaid interest thereon, and all other sums and charges due to the Lender hereunder, unless sooner paid, shall be due and payable on June 1, 2017 (the "Maturity Date"). Upon and after the eighth (8th) day following Borrower's receipt of written notice from Lender of Borrower's failure to pay the entire principal balance plus accrued and unpaid interest on the Maturity Date as required, any outstanding amounts due under this Note shall bear interest at a fixed rate of twenty-four and 00/100 percent (24.00%) per annum.

3. **Application of Payments.** All payments pursuant to this Note shall be made in legal tender of the United States of America and shall be applied first to the payment of delinquency or late charges, if any; second, to the payment of accrued and unpaid interest on this Note; and third, the balance on account of the principal of this Note.

4. **Application of Payments.** All payments pursuant to this Note shall be made in legal tender of the United States of America and shall be applied first to the payment of delinquency or late charges, if any; second, to the payment of accrued and unpaid interest on this Note; and third, the balance on account of the principal of this Note.

FOIA    CONFIDENTIAL TREATMENT REQUESTED                    WOODBRIDGE SEC_02688541

Contracts - Construction Loan – Promissory Note

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.50%

5. **Cure Period and Notice of Default.** Failure of Borrower to pay by its due date any installment of the principal or of interest within thirty (30) days from the date the same becomes due and payable, shall constitute a "Payment Default" under this Note. Borrower shall have a cure period of not less than thirty (30) days after receipt of written notice ("Notice of Default") of any alleged breach or Payment Default under the terms of this Note to cure the same.

6. **Event of Default.** Any alleged breach or Payment Default under this Note that is not fully cured following the expiration of the applicable cure period specified in a given Notice of Default shall constitute an event of default ("Event of Default") under this Note.

7. **Waiver of Rights.**

a. BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY COURT AND IN ANY SUIT ACTION OR PROCEEDING OR ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE FINANCING TRANSACTIONS OF WHICH THIS NOTE OR THE COLLATERAL ASSIGNMENT DOCUMENTS (AS DEFINED BELOW) ARE A PART AND/OR THE ENFORCEMENT OF ANY OF LENDER'S RIGHTS AND REMEDIES. BORROWER ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER.

b. Borrower hereby waives diligence, demand, presentment for payment, protest and notice of protest, and notice of any renewals or extensions of this Note, and agrees that the time for payment of this Note may be changed and extended at Lender's sole discretion, without impairing its liability thereon, and further consents to the release of any party liable for this obligation, or the release of all or any part of the collateral given as security for the payment of this Note, without affecting its liability with respect hereto.

8. **Lender's Rights.** Lender's rights hereunder shall be cumulative and not exclusive and may be exercised at the sole discretion of Lender with respect to priority, order and type of collateral or security realized upon or applied toward the indebtedness evidenced hereby until this Note and all accrued and unpaid interest and other sums and charges due hereunder shall have been paid in full. Further, no failure on the part of Lender to exercise any right or remedy hereunder, whether before or after the occurrence of an Event of Default hereunder, shall constitute a waiver thereof, and no waiver of any past default shall constitute waiver of any future default or of any other default.

9. **Prepayment.** The Borrower shall have the right to prepay this Note in whole or in part at any time without penalty.

10. **Binding Effect.** This Note shall bind the successors and assigns of Borrower and shall inure to the benefit of the Lender, its successors and assigns.

11. **Captions and Section Headings**. The captions and section headings used in this Note are for convenience only and shall not be used to interpret, modify or affect in any way the covenants and agreements herein contained.

12. **Severability.** In the event that any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part, or in any respect, or in the event that any one or more of the provisions of this Note shall operate or would prospectively operate, to invalidate this Note, then the remaining provisions of this Note shall remain operative and in full force and effect, shall be valid, legal and enforceable and shall in no way be affected, prejudiced or disturbed thereby.

13. **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of Delaware.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688542

## Contracts - Construction Loan – Promissory Note

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.50%

14. **No Assignment.** Neither this Note, the Loan Agreement of even date herewith between Borrower and Lender, nor all other instruments executed or to be executed in connection therewith (collectively, the "Collateral Assignment Documents") are assignable by Lender without the Borrower's written consent and any such attempted assignment without such consent shall be null and void.

15. **Commercial Transaction.** Lender and Borrower each acknowledge and stipulate that the Loan is a commercial transaction.

16. **Security.** This Note will be secured inter alia by the Collateral Assignment Documents upon execution thereof.

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688543

## Contracts - Construction Loan – Promissory Note

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.50%

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3, LLC**

By: _____

_____
Its Authorized Representative

Accepted and Agreed to by Lender:

_____
LENDER

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688544

## Contracts - Construction Loan – Loan Agreement

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.50%

### LOAN AGREEMENT

**THIS LOAN AGREEMENT** (this "Agreement") made on this January 15, 2016, by and between **LENDER**, an individual having an address of 123 Street, Town, ST 01234 (hereinafter referred to as the "Lender") and **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**, a Delaware limited liability company, having an office at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 ( "Woodbridge").

### WITNESSETH:

**WHEREAS,** Lender wishes to make a loan (the "Loan") to Woodbridge to fund, in part, a loan to a third-party borrower, as more fully defined below (the "Pledged Loan"); and

**WHEREAS,** Lender advanced to Woodbridge a portion of the funds that, with other funds from Woodbridge, will be used to make the Pledged Loan; and

**WHEREAS,** Lender acknowledges that Woodbridge has executed or intends to execute other notes and loan agreements to fund the Pledged Loan on a pari passu basis with other lenders; and

**WHEREAS,** Woodbridge and Lender have agreed to the foregoing transaction on the terms and conditions and in reliance upon the representations and warranties of Woodbridge and Lender hereinafter set forth;

**NOW, THEREFORE,** in consideration of the foregoing and in further consideration of the mutual covenants herein contained, the parties hereto agree as follows:

1. Lender has agreed to lend Woodbridge the sum of One Hundred Thousand and 00/100 Dollars ($100,000.00). The foregoing obligation shall be evidenced by Woodbridge's promissory note to Lender, in the original principal amount of One Hundred Thousand and 00/100 Dollars ($100,000.00) in the form of Exhibit A hereto and made a part hereof (as the same may be amended or modified from time to time, the "Note"), with appropriate insertion of dates.

The Note shall bear interest at a rate equal to five and 50/100 percent (5.50%) per annum, subject to such default rates as may be set forth in the Note; provided, however, that the rate of interest charged thereunder shall never exceed the maximum amount, if any, allowable by law. Interest shall be payable as provided in the Note and shall be charged on the daily outstanding principal balance on the basis of the actual days elapsed and on a three hundred sixty (360) day year.

Interest shall be payable as provided in the Note. The entire outstanding principal balance of the Note shall be due and payable in full on June 1, 2017, unless sooner prepaid. Woodbridge may prepay the Note without penalty at any time.

2. **Security Interest.** Woodbridge hereby grants to the Lender a security interest in all of the Woodbridge's present and future right, title and interest in and to any and all of the following (the "Collateral"):

| | |
|---|---|
| Referencing position held | (a) That certain loan in the principal amount of One Million and 00/100 Dollars ($1,000,000.00) (the "Pledged Loan") extended or to be extended to Commercial Borrower (the "Borrower") secured by a second priority lien on the real property located at Address (the "Premises"); |

(b) The promissory note evidencing the Pledged Loan (the "Underlying Note");

(c) The mortgage or deed of trust securing the Pledged Loan with an interest in the Premises (the "Underlying Mortgage"); and

(d) Title insurance policies and such other instruments or documentation as may be executed and delivered to Woodbridge in conjunction with the Pledged Loan (said Underlying Note, Underlying Mortgage and other associated loan documents collectively hereafter referred to as the "Loan Documents").

(e) Upon the consummation of the Pledged Loan, Woodbridge will execute and deliver to Lender collateral

109 | P a g e

## Contracts - Construction Loan – Loan Agreement

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.50%

assignment documents substantially in the form attached hereto as <u>Exhibits B and C</u>.

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688546

## Contracts - Construction Loan – Loan Agreement

Property ID : Property Name
Principal  : $100,000.00
Int. Rate  : 5.50%

**(f)** Lender acknowledges that they are only providing the financing for a portion of the Pledged Loan and, therefore, Woodbridge retains the right to execute other notes, loan agreements, assignments, and collateral assignments in favor of other lenders as may be necessary to fund the Pledged Loan secured by the Collateral on a pari passu basis with such other lenders. Lender further agrees that it, and any such other lenders, shall execute an Intercreditor Agreement substantially in the form attached hereto as Exhibit D in order to confirm that their interests in the Collateral are of equal priority.

**3.**   **Representations and Warranties.**

**(e)** Woodbridge represents and warrants to Lender that Woodbridge has or will have good and marketable title to the Pledged Loan and the Collateral free from any adverse liens, security interests or encumbrances on record as of the date of the Pledged Loan.

**(f)** The execution and delivery of the Note, this Agreement, and every other agreement, instrument or document executed and delivered to Lender by Woodbridge pursuant to the terms hereof, are valid, legal and binding upon it and enforceable in accordance with their respective terms.

**(g)** All information furnished or to be furnished by Woodbridge pursuant to the terms hereof will not, at the time the same is furnished, contain any untrue statement of a material fact and will not omit to state a material fact necessary to make the information so furnished, in the light of the circumstances under which such information is furnished, not misleading.

**(h)** Lender represents and warrants to Woodbridge that: (i) the Loan Documents and the Pledged Loan they evidence constitute a commercial loan transaction and are not for investment purposes; and (ii) Lender has reviewed the Loan Documents and the associated other information on the Borrower of the Pledged Loan, and has had the opportunity to review said documents and information with its own legal counsel, and has had sufficient access to all of said documents and information to allow it to make its own credit decision with respect to the Pledged Loan, and has, in fact, made its own credit decision in making the Loan.

**4.**   **General Provisions.**

**(g)** This Agreement is an integrated document and all terms and provisions are embodied herein and shall not be varied by parol;

**(h)** This Agreement is made, executed and delivered in the State of Delaware and it is the specific desire and intention of the parties that it shall in all respects be construed under the laws of the State of Delaware;

**(i)** The captions for the paragraphs contained in this Agreement have been inserted for convenience only and form no part of this Agreement and shall not be deemed to affect the meaning or construction of any of the covenants, agreements, conditions or terms hereof;

**(j)** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided, however, that Lender shall not assign, voluntarily, by operation of law or otherwise, any of its rights hereunder without the prior written consent of Woodbridge and any such attempted assignment without such consent shall be null and void;

**(k)** No delay or failure of Lender in exercising any right, power or privilege hereunder shall affect such right, power or privilege, nor shall any single or partial exercise preclude any further exercise thereof or the exercise of any other rights, powers or privileges; and

**(l)** This Agreement, the security interest hereby granted to Lender by Woodbridge and every representation, warranty, covenant, promise and other then herein contained shall survive until the Note has been paid in full.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE TO FOLLOW]**

FOIA   CONFIDENTIAL TREATMENT REQUESTED                                    WOODBRIDGE SEC_02688547

## Contracts - Construction Loan – Loan Agreement

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.50%

**IN WITNESS WHEREOF,** the parties hereto have hereunto set their hands and seals, the day and year first above written.

Signed, Sealed, and Delivered
in the Presence of:

_____
(Witness)

_____                    _____
(Witness)                                                                  LENDER

Assignor:

**WOODBRIDGE MORTGAGE
INVESTMENT FUND 3, LLC**

_____          By: _____
                                                                            Its Authorized Representative

_____

FOIA   CONFIDENTIAL TREATMENT REQUESTED                    WOODBRIDGE SEC_02688548

## Contracts - Construction Loan – Exhibits

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.50%

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688549

## Contracts - Construction Loan – Exhibits

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 5.50%

### EXHIBIT LIST

EXHIBIT A    Note from Woodbridge to Lender

EXHIBIT B    Form of Assignment

EXHIBIT C    Form of Collateral Assignment

EXHIBIT D    Form of Intercreditor Agreement

**SIMILAR TO FPCM EXHIBITS**

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688550

## Contracts - Mezzanine Loan – Anatomy/Summary

### SUMMARY

A Woodbridge Mezzanine Loan is a private third-party loan to Woodbridge Mortgage Investment Fund 3, LLC, a Delaware limited liability company, or one of its affiliates (collectively, "**WMIF**") that is secured by a particular mezzanine loan receivable selected from WMIF's inventory.

| | |
|---|---|
| Referencing position held | A mezzanine loan is a loan that is not secured by a lien on property, but instead secured by a pledge by the borrower holding company of equity interests in the holding company's subsidiary which owns the property (for example, the shares of a corporation or the membership interests of a limited liability company). |

### BACKGROUND

WMIF is an asset-based lender. WMIF makes mezzanine loans to asset holding companies (each a "**Holding Company**") in exchange for later repayment of the loan amount plus interest (each a "**Mezzanine Asset**"). Every Mezzanine Asset is evidenced by a written loan agreement and promissory note entitling WMIF to repayment of the applicable loan debt. To secure full and prompt repayment of the Mezzanine Asset, the Holding Company pledges all control, beneficial interest, and ownership of its sole subsidiary. That pledged subsidiary owns and maintains paramount legal and equitable title to certain real property specified in the loan agreement.

### ANATOMY OF A WOODBRIDGE MEZZANINE LOAN

To facilitate its mezzanine lending business, WMIF itself borrows funds from private third-party lenders (each a "**Private Loan**"). WMIF's repayment to its lender (each a "**Woodbridge Lender**") is secured by a first position lien on a particular Mezzanine Asset in WMIF's inventory. For each Private Loan, the Woodbridge Lender selects a particular Mezzanine Asset to serve as collateral for that particular Private Loan transaction.

Each Private Loan is evidenced by a promissory note and written loan agreement specific to that discrete transaction. Each Private Loan is secured by the proceeds of the selected Mezzanine Asset.

| | |
|---|---|
| Referencing 3% accrued interest | Additionally, upon the earlier to occur of (i) a Woodbridge Lender continuing to be owed funds under a particular Private Loan at the time the Holding Company's sole subsidiary sells or disposes of the real property specified in the loan agreement or (ii) the Private Loan maturing prior to the sale or disposal of the property, the Woodbridge Lender will receive an additional accrued interest payment as specified in the promissory note. |

Each Private Loan is an arms-length transaction separate and distinct both from the Mezzanine Asset and from the membership interest pledged by the Holding Company as collateral for the Mezzanine Asset. As such, WMIF's obligations under each Private Loan are neither contingent upon nor subject to the performance or repayment status of the subject Mezzanine Asset.

In the event of a default by the Holding Company of its obligations to WMIF under the Mezzanine Asset, WMIF is obligated and shall continue to make payment to the Woodbridge Lender under each Private Loan according to its respective promissory note and loan agreement.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688551

# Contracts - Mezzanine Loan – Anatomy/Summary

In the event of a default by WMIF under a particular Private Loan, the pledged collateral enables the associated Woodbridge Lender the right to receive the subject Mezzanine Asset proceeds directly from the Holding Company. In the event of a default by both: (i) the Holding Company under the subject Mezzanine Asset; and (ii) WMIF under a particular Private Loan, the pledged conveyance enables the Woodbridge Lender(s) the legal right and standing necessary to acquire the Holding Company's entire controlling and ownership interest in its respective subsidiary to pay all amounts owed to the Woodbridge Lender(s). As such, the Mezzanine Asset is structurally subordinate to any first or second priority mortgage loans secured by the subject property owned by the Holding Company's subsidiary.

## THREE LAYERS OF COLLATERAL

***Promissory Note.*** This instrument is WMIF's promise to repay the Woodbridge Lender according to the agreed terms and conditions set forth in both the promissory note and loan agreement. The promissory note forms the basis of a Woodbridge Lender's right to payment from WMIF according to its terms.

***Loan Agreement.*** This document creates and attaches a UCC Article 9 security interest, in favor of the Woodbridge Lender, in the control and ownership interests pledged by the applicable Holding Company.

***Assignment and Collateral Assignment.*** These documents are pledged conveyances by WMIF of all of its rights, title, and interest as holder and owner of the pledged control and ownership of the subject Holding Company's subsidiary.

## EQUAL CLAIM AMONG LIENHOLDERS

All Woodbridge Lenders having a security interest in a particular Mezzanine Asset are of equal claim and right to such Mezzanine Asset (the "**Common Collateral**") with no priority or preference among them and on a *pro rata* basis determined by and limited to the outstanding indebtedness under the respective promissory notes and loan agreements.

This equal claim and right among Woodbridge Lenders as to the Common Collateral is accomplished and memorialized through an "**Intercreditor Agreement**," executed by all Woodbridge Lenders having a security interest in a particular Mezzanine Asset.

WMIF does not and will not grant a security interest in or otherwise encumber the Common Collateral in favor of any creditor other than the Woodbridge Lenders whose promissory notes and loan agreements are secured by such Common Collateral.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688552

Contracts - Mezzanine Loan – Promissory Note

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 6.00%

**PROMISSORY NOTE**

January 15, 2016
Sherman Oaks, California

$100,000.00

**FOR VALUE RECEIVED**, the undersigned, **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**, a Delaware limited liability company having an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 (hereinafter referred to as the "Borrower") does hereby promise to pay to the order of **LENDER**, an individual having an address of 123 Street, Town, ST 01234 (hereinafter referred to as "Lender"), at such place as the Lender may designate by written notice to Borrower, the principal sum of One Hundred Thousand and 00/100 Dollars ($100,000.00), together with interest on all unpaid balances beginning as of the date hereof, at the fixed rate per annum as set forth in Section 1 hereof.

No reference of 15 month term increase. (No jump rate)

1.    **Interest Rate**. The unpaid balance of the principal sum of One Hundred Thousand and 00/100 Dollars ($100,000.00) shall bear interest from the date hereof through March 1, 2017, at a fixed rate of interest equal to six and 00/100 percent (6.00%) per annum.  The rate of interest charged hereunder shall never exceed the maximum amount, if any, allowable by law. Interest shall be charged on the principal balance from time to time outstanding on the basis of the actual number of days elapsed computed on the basis of a 360 day year.

2.    **Default Interest Rate.** During the continuance of any Event of Default (as more particularly defined in Paragraph 6 below) under this Note, or after the maturity of the loan evidenced hereby, by acceleration or otherwise, interest shall accrue from and after such event at four (4) percentage points above the interest rate then in effect hereunder (the "Default Interest Rate").

3.    **Repayment**. Borrower promises to pay the interest and principal on this Note, as set forth below:

a. Monthly payments of interest shall be made commencing on February 1, 2016 and continuing on the same day of each and every month to occur thereafter, both before and after maturity by acceleration or otherwise.

The entire principal balance plus accrued and unpaid interest thereon, and all other sums and charges due the Lender hereunder, unless sooner paid, shall be due and payable on March 1, 2017 (the "Maturity Date").

Referencing 3% accrued interest

b. On or after (but not before) the earlier to occur of the Maturity Date or the date upon which Property Owner, LLC, a Delaware limited liability company having an office and a mailing address at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423, or its successors or assigns, sells or disposes of the property described in the "Underlying Documents" as that term is defined in the Collateral Assignment Documents (hereinafter defined), **and provided at such time Lender continues to be owed any principal due hereunder,** an additional payment of Three and 00/100 percent (3.00%) per annum of such unpaid balance of principal shall be made to Lender.

4.    **Application of Payments.** All payments pursuant to this Note shall be made in legal tender of the United States of America and shall be applied first to the payment of delinquency or late charges, if any; second, to the payment of accrued and unpaid interest on this Note; and third, the balance on account of the principal of this Note.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688553

## Contracts - Mezzanine Loan – Promissory Note

Property ID : Property Name
Principal  : $100,000.00
Int. Rate  : 6.00%

5. **Cure Period and Notice of Default.** Failure of Borrower to pay by its due date any installment of the principal or of interest within thirty (30) days from the date the same becomes due and payable, shall constitute a "Payment Default" under this Note. Borrower shall have a cure period of not less than thirty (30) days after receipt of written notice ("Notice of Default") of any alleged breach or Payment Default under the terms of this Note to cure the same.

6. **Event of Default.** Any alleged breach or Payment Default under this Note that is not fully cured following the expiration of the applicable cure period specified in a given Notice of Default shall constitute an event of default ("Event of Default") under this Note.

7. **Waiver of Rights.**

a.  BORROWER HEREBY WAIVES TRIAL BY JURY IN ANY COURT AND IN ANY SUIT ACTION OR PROCEEDING OR ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE FINANCING TRANSACTIONS OF WHICH THIS NOTE OR THE COLLATERAL ASSIGNMENT DOCUMENTS (AS DEFINED BELOW) ARE A PART AND/OR THE ENFORCEMENT OF ANY OF LENDER'S RIGHTS AND REMEDIES. BORROWER ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER.

b.  Borrower hereby waives diligence, demand, presentment for payment, protest and notice of protest, and notice of any renewals or extensions of this Note, and agrees that the time for payment of this Note may be changed and extended at Lender's sole discretion, without impairing its liability thereon, and further consents to the release of any party liable for this obligation, or the release of all or any part of the collateral given as security for the payment of this Note, without affecting its liability with respect hereto.

8. **Lender's Rights.** Lender's rights hereunder shall be cumulative and not exclusive and may be exercised at the sole discretion of Lender with respect to priority, order and type of collateral or security realized upon or applied toward the indebtedness evidenced hereby until this Note and all accrued and unpaid interest and other sums and charges due hereunder shall have been paid in full. Further, no failure on the part of Lender to exercise any right or remedy hereunder, whether before or after the occurrence of an Event of Default hereunder, shall constitute a waiver thereof, and no waiver of any past default shall constitute waiver of any future default or of any other default.

9. **Prepayment.** The Borrower shall have the right to prepay this Note in whole or in part at any time without penalty.

10. **Binding Effect.** This Note shall bind the successors and assigns of Borrower and shall inure to the benefit of the Lender, its successors and assigns.

11. **Captions and Section Headings.** The captions and section headings used in this Note are for convenience only and shall not be used to interpret, modify or affect in any way the covenants and agreements herein contained.

12. **Severability.** In the event that any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part, or in any respect, or in the event that any one or more of the provisions of this Note shall operate or would prospectively operate, to invalidate this Note, then the remaining provisions of this Note shall remain operative and in full force and effect, shall be valid, legal and enforceable and shall in no way be affected, prejudiced or disturbed thereby.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688554

Contracts - Mezzanine Loan – Promissory Note

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 6.00%

13. **Governing Law.** This Note shall be governed by and construed in accordance with the laws of the State of Delaware.

14. **No Assignment.** Neither this Note, the Loan Agreement of even date herewith between Borrower and Lender, nor all other instruments executed or to be executed in connection therewith (collectively, the "Collateral Assignment Documents") are assignable by Lender without the Borrower's written consent and any such attempted assignment without such consent shall be null and void.

15. **Commercial Transaction.** Lender and Borrower each acknowledge and stipulate that the Loan is a commercial transaction.

16. **Security.** This Note will be secured inter alia by the Collateral Assignment Documents upon execution thereof.

**WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**

By: _____

_____
Its Authorized Representative

Accepted and Agreed to by Lender:

_____
LENDER

FOIA   CONFIDENTIAL TREATMENT REQUESTED                    WOODBRIDGE SEC_02688555

## Contracts - Mezzanine Loan – Promissory Note

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 6.00%

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688556

Contracts - Mezzanine Loan – Loan Agreement

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 6.00%

## LOAN AGREEMENT

**THIS LOAN AGREEMENT** (this "Agreement") made on this January 15, 2016, by and between **LENDER**, an individual having an address of 123 Street, Town, ST 01234 (hereinafter referred to as the "Lender") and **WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC**, a Delaware limited liability company, having an office at 14225 Ventura Boulevard, Suite 100, Sherman Oaks, California 91423 ( "Woodbridge").

### WITNESSETH:

**WHEREAS,** Lender wishes to make a loan (the "Loan") to Woodbridge to fund, in part, a loan to a third-party borrower, as more fully defined below (the "Pledged Mezzanine Loan"); and

**WHEREAS,** Lender advanced to Woodbridge a portion of the funds that, with other funds from Woodbridge, will be used to make the Pledged Mezzanine Loan; and

**WHEREAS,** Lender acknowledges that Woodbridge has executed or intends to execute other notes and loan agreements to fund the Pledged Mezzanine Loan on a pari passu basis with other lenders; and

**WHEREAS,** Woodbridge has agreed to execute and deliver to Lender a promissory note payable to Lender in the amount tendered by Lender to Woodbridge pursuant to the Loan; and

**WHEREAS,** Woodbridge has further agreed to execute and deliver a collateral assignment of its interest in the Loan Documents (as defined below) in favor of Lender on a pari passu basis as security for the Loan; and

**WHEREAS,** Woodbridge and Lender have agreed to the foregoing transaction on the terms and conditions and in reliance upon the representations and warranties of Woodbridge and Lender hereinafter set forth:

**NOW, THEREFORE,** in consideration of the foregoing and in further consideration of the mutual covenants herein contained, the parties hereto agree as follows:

1. **Amount and Terms of Lender's Loan.** Lender has agreed to lend Woodbridge the sum of One Hundred Thousand and 00/100 Dollars ($100,000.00). The foregoing obligation shall be evidenced by Woodbridge's promissory note to Lender, in the original principal amount of One Hundred Thousand and 00/100 Dollars ($100,000.00), in the form of Exhibit A hereto and made a part hereof (as the same may be amended or modified from time to time, the "Note"), with appropriate insertion of dates.

Referencing 3% accrued interest

The Note shall bear interest at a rate equal to six and 00/100 percent (6.00%) per annum, subject to such default rates and additional interest payments as may be set forth in the Note; provided, however, that the rate of interest charged thereunder shall never exceed the maximum amount, if any, allowable by law. Interest shall be payable as provided in the Note and shall be charged on the daily outstanding principal balance on the basis of the actual days elapsed and on a three hundred sixty (360) day year.

Interest shall be payable as provided in the Note. The entire outstanding principal balance of the Note shall be due and payable in full on March 1, 2017, unless sooner prepaid. Woodbridge may prepay the Note without penalty at any time.

2. **Security Interest.** Woodbridge hereby grants to the Lender a security interest in all of the Woodbridge's present and future right, title and interest in and to any and all of the following (the "Collateral"):

Referencing position held

(a) That certain mezzanine loan in the principal amount of Two Million Five Hundred Thousand and 00/100 Dollars ($2,500,000.00) (the "Pledged Mezzanine Loan") extended or to be extended by Woodbridge to Holding Company, LLC ("Borrower") and secured by a pledge of Borrower's entire and controlling

131 | P a g e

WOODBRIDGE SEC_02688557

## Contracts - Mezzanine Loan – Loan Agreement

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 6.00%

membership interest in Property Owner, LLC, an entity which owns real property located at Address ( "Premises"), subject to any first or second priority mortgage loans secured by the Premises to which that certain mezzanine loan would be structurally subordinate;

**(b)** The promissory note evidencing the Pledged Loan (the "Underlying Note");

**(c)** The pledge and security agreement securing the Pledged Mezzanine Loan to Woodbridge (the "Underlying Pledge and Security Agreement"); and

**(d)** Title insurance policies and such other instruments or documentation as may be executed and delivered to Woodbridge in conjunction with the Pledged Mezzanine Loan (said Underlying Note, Underlying Pledge and Security Agreement and other associated loan documents collectively hereafter referred to as the "Loan Documents").

**(e)** Upon the consummation of the Pledged Mezzanine Loan, Woodbridge will execute and deliver to Lender collateral assignment documents substantially in the form attached hereto as Exhibits B and C.

**(f)** Lender acknowledges that they are only providing the financing for a portion of the Pledged Mezzanine Loan and, therefore, Woodbridge retains the right to execute other notes, loan agreements, assignments, and collateral assignments in favor of other lenders as may be necessary to fund the Pledged Mezzanine Loan secured by the Collateral on a pari passu basis with such other lenders. Lender further agrees that it, and any such other lenders, shall execute an Intercreditor Agreement substantially in the form attached hereto as Exhibit D in order to confirm that their interests in the Collateral are of equal priority.

3. **Representations and Warranties.**

**(i)**  Woodbridge represents and warrants to Lender that Woodbridge has or will have good and marketable title to the Pledged Mezzanine Loan and the Collateral free from any adverse liens, security interests or encumbrances on record as of the date of the Pledged Loan.

**(j)**  The execution and delivery of the Note, this Agreement, and every other agreement, instrument or document executed and delivered to Lender by Woodbridge pursuant to the terms hereof, are valid, legal and binding upon it and enforceable in accordance with their respective terms.

**(k)**  All information furnished or to be furnished by Woodbridge pursuant to the terms hereof will not, at the time the same is furnished, contain any untrue statement of a material fact and will not omit to state a material fact necessary to make the information so furnished, in the light of the circumstances under which such information is furnished, not misleading.

**(l)**  Lender represents and warrants to Woodbridge that: (i) the Loan Documents and the Pledged Mezzanine Loan they evidence constitute a commercial loan transaction and are not for investment purposes; and (ii) Lender has reviewed the Loan Documents and the associated other information on the Borrower of the Pledged Mezzanine Loan, and has had the opportunity to review said documents and information with its own legal counsel, and has had sufficient access to all of said documents and information to allow it to make its own credit decision with respect to the Pledged Mezzanine Loan, and has, in fact, made its own credit decision in making the Loan.

4. **General Provisions.**

**(m)** This Agreement is an integrated document and all terms and provisions are embodied herein and shall not be varied by parol;

**(n)** This Agreement is made, executed and delivered in the State of Delaware and it is the specific desire and intention of the parties that it shall in all respects be construed under the laws of the State of Delaware;

**(o)** The captions for the paragraphs contained in this Agreement have been inserted for convenience only and form no part of this Agreement and shall not be deemed to affect the meaning or construction of any of the covenants, agreements, conditions or terms hereof;

**(p)** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, provided, however, that Lender shall not assign, voluntarily, by operation of law or otherwise, any of its rights hereunder without the prior written consent of Woodbridge and any such attempted assignment without such consent shall be null and void;

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688558

## Contracts - Mezzanine Loan – Loan Agreement

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 6.00%

**(q)**  No delay or failure of Lender in exercising any right, power or privilege hereunder shall affect such right, power or privilege, nor shall any single or partial exercise preclude any further exercise thereof or the exercise of any other rights, powers or privileges; and

**(r)**  This Agreement, the security interest hereby granted to Lender by Woodbridge and every representation, warranty, covenant, promise and other then herein contained shall survive until the Note has been paid in full.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE TO FOLLOW]**

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688559

## Contracts - Mezzanine Loan – Loan Agreement

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 6.00%

**IN WITNESS WHEREOF,** the parties hereto have hereunto set their hands and seals, the day and year first above written.

Signed, Sealed, and Delivered
in the Presence of:

_____
(Witness)

_____
(Witness)

_____                    _____
                                                    LENDER


_____                    **WOODBRIDGE MORTGAGE
                                                    INVESTMENT FUND 3, LLC**


_____                    By: _____
                                                    _____
                                                    Its Authorized Representative

FOIA    CONFIDENTIAL TREATMENT REQUESTED                    WOODBRIDGE SEC_02688560

## Contracts - Mezzanine Loan – Exhibits

Property ID : Property Name
Principal   : $100,000.00
Int. Rate   : 6.00%

### EXHIBIT LIST

EXHIBIT A      Note from Woodbridge to Lender

EXHIBIT B      Form of Assignment

EXHIBIT C      Form of Collateral Assignment

EXHIBIT D      Form of Intercreditor Agreement


**SIMILAR TO FPCM EXHIBITS**

FOIA    CONFIDENTIAL TREATMENT REQUESTED                                        WOODBRIDGE SEC_02688561

Secondary Market Annuities – Offer Sheet

**OFFER SHEET**

Woodbridge Group of Companies, LLC ("Assignor") hereby makes available for offer the purchase of the structured asset (the "Asset") described in this Offer Sheet (this "Offer Sheet").  By executing and delivering this Offer Sheet to Assignor, Individual Name ("Assignee") offers (the "Offer") to purchase the Asset generally described as follows (the "Asset Description"):

**Asset Description**

| Seller / Payee Name ("Seller"): | Seller Name |
|---|---|
| Payor ("Payor"): | Annuity Issuer / Payor Name |
| File Number: | File Number |
| Aggregate Payments: | $XXX,XXX.XX |
| Assigned Payments: | Two hundred fifty (250) monthly payments of $2,500.00 each, commencing on or about September 1, 2017, and continuing through and including approximately June 1, 2038, increasing by 3% annually each September. |
| Purchase Price:[1] | $XXX,XXX.XX |
| Effective Interest Rate: | X.XX% |

**Terms**

1.      Acknowledging that Assignee and Assignor have executed a Master Assignment and Assumption Agreement (the "Master Agreement"), all of the terms of the Master Agreement are adopted in this Offer Sheet and incorporated herein by this reference thereto.  Capitalized terms used in this Offer Sheet have the meaning given to them in the Master Agreement unless otherwise defined in this Offer Sheet.

2.      Assignee shall, no less than 30 days prior to the first scheduled court hearing (the "Initial Hearing Date") to decide whether to permit the Transfer Agreement to be fully consummated, if any, but in no case more than 30 days following the date on which Assignor accepts the Offer contained in this Offer Sheet, direct Assignee to deliver the purchase price set forth in the Asset Description (the "Purchase Price") to the Woodbridge Group of Companies Special Holding Account (the "Holding Account"). The Purchase Price shall be remitted by draft paid in U.S. Dollars and payable to Woodbridge Group of Companies and delivered to the following address:

Woodbridge Group of Companies, LLC
14225 Ventura Boulevard, Suite 100
Sherman Oaks, California 91423

3.      Assignor shall direct Holding Account representative to hold the Purchase Price in the Holding Account, with any interest accruing thereupon inuring to the benefit of Assignor.

4.      The closing of the purchase contemplated by this Offer Sheet (the "Purchase Closing") will take place on a date to be determined by Assignor, provided, however, Assignor shall advise Assignee if Assignor reasonably believes the Purchase Closing would occur more than one hundred eighty (180) days following the date on which Assignor accepts this Offer.

---

[1] This is an estimated price as of the projected day of funding.  The actual purchase price will be calculated using the stated effective interest rate and shall be calculated as of the actual day of funding.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688562

## Secondary Market Annuities – Offer Sheet (continued)

5.      In the event any court or any judicial or administrative officer before which any petition ( "<u>Petition</u>") to approve the sale described in the Transfer Agreement is pending (collectively, the "<u>Court</u>") or any party to the Transfer Agreement materially alters the terms of the Transfer Agreement, including but not limited to the purchase price and payment dates and amounts set forth therein, Assignor shall then have the right to revoke its acceptance of this Offer and return to Assignee the Purchase Price received by Holding Account representative.  In the event the Court denies the Petition (if applicable) with prejudice or in the event the Initial Hearing Date, if applicable, is postponed more than thirty (30) calendar days, Assignee solely shall have the right to revoke the Offer and request a refund to Assignee of the Purchase Price funds that Assignee delivered to Holding Account representative.

6.      Upon satisfaction of all terms and conditions of the Master Agreement, Holding Account representative or its designee shall deliver an electronic or physical copy of the Closing Book (the "<u>Closing Book Copy</u>") to Assignee or to its designee as Assignee may so designate in writing to Assignor from time to time (collectively, "<u>Recipient</u>").

7.      As an express condition of the Purchase Closing, Assignee shall have the right to review the Closing Book Copy and shall have three (3) business days following the date of delivery of the Closing Book Copy to Recipient to notify Assignor of any objections to the underwriting of the transaction described in the Closing Book Copy.  If such an objection is made, Assignor shall have forty-five (45) business days ("<u>Cure Period</u>") following the date on which it receives such notice of objection during which Assignor may either cure said objection or revoke its acceptance of the Offer.  If Assignor during the Cure Period revokes its acceptance of this Offer, then Assignee hereby authorizes and provides Assignor with power of attorney to take any and all steps on behalf of Assignee that Assignor deems necessary and/or prudent to assign the Assigned Payments to another person, entity, and/or assignee.  If Assignor cures and satisfies said objection, then Assignee shall provide Assignor with written acknowledgement ("<u>Cure Acknowledgment</u>") that said cure is satisfactory.   If Assignee does not deliver Cure Acknowledgment to Assignor within three (3) business days following notice by Assignor to Assignee of said cure, then Holding Account representative shall complete the transaction described in this Offer Sheet by releasing the corresponding Purchase Price funds from the Holding Account as directed by Assignor, and Assignee is responsible to immediately remit to Assignor any remaining balance due as determined by Assignor to purchase the Asset in accordance with the other terms and conditions of this Offer Sheet.  If Assignee does not notify the Assignor and the Holding Account representative of any objections to the Closing Book Copy, then Holding Account representative shall complete the transaction described in this Offer Sheet by releasing the corresponding Purchase Price funds held in the Holding Account by the Holding Account representative as directed by the Assignor.

8.      If Assignee breaches the Master Agreement and/or this Offer Sheet, Assignor shall be entitled to retain as liquidated damages an amount equaling ten percent (10%) of the corresponding Purchase Price funds held on deposit in the Holding Account, and Assignor additionally shall have the right to revoke each Offer made by Assignee accepted by Assignor involving a Transfer Agreement that has not been the subject of a completed purchase prior to the date on which Assignee makes the Offer set forth in this Offer Sheet.

9.      If the Asset involves life-contingent payments, then Assignee acknowledges and agrees that any life insurance purchased by Assignor on the life of Seller to mitigate risk of non-payment of such payments as a result of the demise of Seller shall be collaterally assigned to Assignee and that Assignee shall not be an owner or beneficiary of such life insurance.

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688563

## Secondary Market Annuities – Offer Sheet (continued)

10.   Assignee acknowledges and agrees:

(A)   If the Asset involves any investment annuity, casino prize, lottery prize, sweepstakes prize, or other payment generally regarded as taxable income to Seller, then Assignee has consulted with an independent tax and/or financial professional prior to executing this Offer Sheet to determine how Payor deductions for state, federal, and/or other taxes, if any, affect Assignee and the purchase contemplated hereunder;

(B)   If the Asset involves any investment annuity payment, then Assignee acknowledges Payor may deduct taxes from each such payment based on the exclusion ratio applicable under the related annuity vehicle or by some other method followed by Payor, which Assignee may not be able to elect to change.  Additionally, Payor may issue IRS Forms 1099 to Assignee denoting principal and interest for each tax year during which such payments are issued based on the annuitization schedule applicable to the related annuity vehicle, without regard to the amortization schedule agreed to by Assignee and Assignor.

(B)   Assignor has not furnished any legal, tax, accounting, or other advice or guidance to Assignee in connection with the Master Agreement, the Offer, and/or this Offer Sheet; and

(C)   Assignee has read and understood all of the terms and conditions set forth in this Offer Sheet immediately prior to executing this Offer Sheet.

Offered by:                          **ASSIGNEE**
                                     **Individual Name**
                                     **123 Main Street**
                                     **Anytown, State 12345**

Date: _____
         (deemed day before date      _____
          accepted below if blank)    Individual Name
                                      SSN: XXX-XX-XXXX

Accepted by:                         **ASSIGNOR**
                                     **Woodbridge Group of Companies, LLC**

Date: _____
         (deemed Closing Date         _____
          if blank)                   By:     Robert Shapiro
                                      Its:    President

FOIA    CONFIDENTIAL TREATMENT REQUESTED                          WOODBRIDGE SEC_02688564

## Secondary Market Annuities – Master Assignment & Assumption Agreement

### MASTER ASSIGNMENT AND ASSUMPTION AGREEMENT

This Master Assignment and Assumption Agreement (the "Agreement"), is made and entered into by and between Woodbridge Group of Companies, LLC, a Delaware limited liability company ("Woodbridge" or "Assignor") and Individual Name ("Assignee"; together with Assignor, the "Parties"; each of the Parties, a "Party").

WHEREAS, from time to time, Woodbridge or an affiliate thereof will enter into transfer agreements ("Transfer Agreements"; each, a "Transfer Agreement") with individuals ("Sellers"; each, a "Seller") who desire to sell their respective rights to, title to, and interest in, certain structured settlement, lottery, investment annuity, casino, and/or sweepstakes prize payments (each, an "Assigned Payment Stream" or "Assigned Payments") in exchange for a discounted lump sum payment; and

WHEREAS, from time to time, Woodbridge or an affiliate thereof will assign to Assignee, a designee of Assignee acceptable to Assignor ("Designee") its rights, title and interest to receive certain interests in various assigned payments under one or more certain Transfer Agreements (the "Assignments"; each, an "Assignment");

NOW THEREFORE, in consideration of the agreements, promises, and covenants set forth herein, the Assignor and the Assignee do hereby agree as follows:

1. **Non-Circumvention.**

    1.1 **Non-Circumvention by Assignee.** Assignee shall, directly and indirectly, for a period of five (5) years commencing on the date last set forth below in this Agreement, refrain from soliciting business and contracts from sources the identity of each of which has been made available to Assignee by or through Assignor unless Assignor has provided to Assignee prior, express, written permission to the contrary. In addition, Assignee will maintain complete confidentiality regarding the Assignments, the Assigned Payment Streams, and the Transfer Agreements absent prior, express, written permission to the contrary from Assignor.

    1.2 **Penalties for Breach.** In the event Assignee breaches Section 1.1 of this Agreement, Assignor shall be entitled to a legal monetary penalty equal to the maximum revenue that Assignor reasonably estimates or demonstrates it would have realized from each and every affected transaction plus any and all expenses, including but not limited to all legal costs and expenses, it incurs in connection with its efforts to recover that revenue amount.

2. **Price Quote and Special Holding Account.** Assignor shall deliver from time to time an offer sheet ("Offer Sheet") to Assignee. If Assignee agrees to make an offer with respect to a particular Assigned Payment Stream, Assignee shall then also execute the Offer Sheet and return the signed Offer Sheet to Assignor. If Assignor accepts the offer set forth in the Offer Sheet (the "Offer") from Assignee, Assignor shall then notify Assignee accordingly, as indicated in the fully-executed Offer Sheet and shall then deliver its acceptance to Assignee. Assignee shall, as directed in the Offer Sheet, remit, subject to the terms and conditions of the Offer Sheet, an amount equal to Assignee's Offer as indicated in the Offer Sheet (the "Offer Sheet Price") and Assignor shall hold these funds in a Special Holding Account (the "Holding Account").

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688565

## Secondary Market Annuities – Master Assignment & Assumption Agreement

3.    <u>Court Order & Related Documentation</u>.

   3.1   <u>Contents of Court Order</u>.  Assignor shall obtain a court order pursuant to Schedule B of this Agreement ("<u>Court Order</u>") if required by applicable law and/or by the payor of the Assigned Payment Stream, and, where applicable, a stipulation ("<u>Stipulation</u>"), in respect of each sale of an Assigned Payment Stream to Assignee.  Each such Court Order and Stipulation (together, the "<u>Transfer-Approving Documents</u>"; each, a "<u>Transfer-Approving Document</u>") shall, to the extent reasonably possible and accommodated by the court issuing the corresponding Transfer-Approving Document:

   (a)   Describe the Assigned Payment Stream assigned to Assignee;

   (b)   Identify Assignee or a designee thereof approved by Assignor shall as the designated assignee of the Assigned Payment Stream; and

   (c)   Permit Assignee to make address changes for legitimate reasons to the designated address on record with the payor of the Assigned Payments for the receipt of the Assigned Payment Stream.

   3.2   <u>Indemnity in Transfer-Approving Documents.</u>  Assignee understands and agrees that the Transfer-Approving Documents may include a provision requiring Assignee to indemnify and hold harmless the payor and obligor from any liability, including but not limited to reasonable costs and attorneys' fees, for any claims made in connection with, related to or arising out of the transfer of the respective Assigned Payment Stream.

   3.3   <u>Execution on Buyer's Behalf.</u>  Assignee authorizes Assignor and its officers, directors, agents, and representatives to execute all Transfer-Approving Documents on behalf of Assignee.

4.    <u>Closing and Payment</u>.

   4.1   <u>Closing Defined</u>.  The closing of an Assignment ("<u>Closing</u>") shall occur following (i) the remittance by Assignee described in Section 2 of this Agreement and (ii) delivery to and the receipt by Assignee or a designee thereof of a complete closing book ("<u>Closing Book</u>") as described in Schedule A of this Agreement.

   4.2   <u>Closing Date</u>.  The closing date of a given Assignment ("<u>Closing Date</u>") shall be the later of (a) the date which Assignor identifies as being the date upon which Seller has complied with all of the terms and conditions of the related Transfer Agreement and (b) the date on which Assignor receives from Assignee funds equaling the corresponding Offer Sheet Price.  Upon distribution from the Holding Account of that Offer Sheet Price, the transaction between Assignor and Assignee shall constitute a final sale, grant, assignment, transfer and conveyance by Assignor to Assignee (whether payable to Assignee by name or to another Assignment Payee by name) of all of Assignor's rights, title and interest in, to and under the Assigned Payment Stream.

FOIA   CONFIDENTIAL TREATMENT REQUESTED          WOODBRIDGE SEC_02688566

**Secondary Market Annuities – Master Assignment & Assumption Agreement**

4.3 <u>Price and Payment</u>.  The final purchase price for each Assignment (the "<u>Final Purchase Price</u>"), which may be more or less than the Offer Sheet Price and shall be calculated by Assignor, shall be paid by Assignee in accordance with funding instructions issued by Assignor and as provided in the Closing Book.  The Parties agree that the Final Purchase Price due from Assignee for an Assignment shall be determined by Assignor, using the Closing Date as the date on which payment of the Final Purchase Price is due and applying the yield rate set forth in the related Offer Sheet, <u>provided</u>, <u>however</u>, that such yield rate shall be deemed realized for the entirety of the Assigned Payment Stream in the event of the death of the measuring life if any of the Assigned Payments are life-contingent, as if the measuring life did not die, following which demise the life insurance coverage amount set forth in the corresponding Offer Sheet will be paid in lieu of the Assigned Payment Stream upon fulfillment of all terms required by the corresponding insurer.

5. <u>Representations and Warranties of Assignor</u>.

5.1 Assignor has all requisite power and authority to execute, deliver and perform under this Agreement.

5.2 The signatures in each Closing Book delivered to Assignee are genuine original signatures or genuine copies of original signatures, and the corresponding Sellers did not execute the corresponding documents under duress.

5.3 Each Seller is age eighteen (18) years or older, of sound mind, and legally competent to enter into the Transfer Agreement.

5.4 All applicable laws and regulations will have been complied with in connection with each Assignment and the related Transfer-Approving Documents.

5.5 Assignor has the authorization and power to transfer each Assigned Payment Stream to Assignee, and no consents are needed to execute, deliver and perform Assignor's obligations under this Agreement <u>except for consents that will have been obtained prior to such assignment</u>.

5.6 Each Assigned Payment Stream assigned by Assignor to Assignee shall be free and clear of all claims, liens and encumbrances except for those paid and released by Assignor on or prior to the Closing Date.

5.7 Assignor shall cooperate with Assignee to instruct and notify the payor to make the Assigned Payments payable to the corresponding Assignment Payee in accordance with the terms of this Agreement and the Transfer-Approving Documents, and the Parties shall cooperate with each other to execute all other documents and agreements and to make any filings and to otherwise take any action necessary to <u>ensure</u> that the Assigned Payment Stream that is the subject of an Assignment by Assignor to Assignee is <u>not paid to anyone other than the corresponding Assignment Payee as a result of any inaccuracy of the preceding representations and warranties</u>. Assignor shall direct relevant third parties that such payments are to be made payable to the Assignment Payee (as applicable) and sent to the corresponding address set forth with Assignee's signature to this Agreement or to such other address as Assignee furnishes to Assignor in a signed writing or to which Assignee agrees in writing delivered to Assignor by any commercially-reasonable means (i.e., electronic mail, facsimile, etc.).

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688567

## Secondary Market Annuities – Master Assignment & Assumption Agreement

6.  <u>Wiring Instructions</u>.  Assignee shall deliver funds pursuant to funding instructions provided by Assignor, and Assignee acknowledges that wire transmissions of funds must be completed by 12:00 P.M. Pacific Time to be deemed received by Assignor that same day.

7.  <u>Assumption</u>. Subject to the terms and conditions of this Agreement, and in accordance with the Transfer Agreements, Assignee shall accept each Assignment made thereto by Assignor, and shall assume, perform, pay, and discharge all of the duties, liabilities, and obligations of Assignor, under the related Transfer Agreements.   After Closing of the Assignment and receipt of the Final Purchase Price by Assignor, Assignee may file any and all Uniform Commercial Code ("UCC") financing statements as it deems necessary to reflect that the rights of Assignor to receive the Assigned Payment Stream have been assigned to the Assignment Payee.

8.  <u>Entire Agreement</u>.   Neither Party has been induced to enter into this Agreement by any covenant, representation or warranty not specifically set forth in this Agreement.  This Agreement supersedes all prior agreements, arrangements and understandings, whether oral or written, and all other communications between the Parties, concerning the subject matter hereof.  No modification, waiver, release, rescission, or amendment of any provision of this Agreement shall be made except by a written instrument duly executed by the Parties.

9.  <u>Binding Effect</u>.  This Agreement shall inure to the benefit of and be binding upon the Parties and their respective permitted successors and assigns.

10.  <u>Severability</u>.  Any invalid or unenforceable provision shall either be deemed severed from this Agreement to the extent of its invalidity or unenforceability, and the remainder of this Agreement shall remain in full force and effect.

11.  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall constitute an original of this Agreement but all of which, when taken together, shall constitute one and the same Agreement, and may be delivered by one Party to the other Party via electronic mail, facsimile, overnight delivery, or other commercially-acceptable means of delivery.

12.  <u>Confidentiality</u>. The Parties agree that the contents of this Agreement shall remain confidential and shall not be disclosed by a Party to any person or entity (other than the Party's own attorneys, auditors, vendees, investors, senior managers, or such employees whose knowledge is required to carry out the terms of this Agreement) except as may be required by law and upon reasonable notice to the other Party.

13.  <u>Section Headings</u>.   Section headings contained in this Agreement are inserted for convenience and reference only and shall not be deemed to be a part of this Agreement for any other purpose, and shall not in any way define or affect the meaning, construction, and/or scope of any of the provisions of this Agreement.

14.  <u>Governing Law</u>.  This Agreement shall be construed according to the laws of the State of California, without regard to choice of law principles.

15.  <u>Disclaimer</u>.  Assignments may constitute taxable income to Assignee.  Assignee acknowledges having consulted with an independent financial and/or tax advisor concerning the transactions contemplated under this Agreement prior to executing and delivering this Agreement to Assignor.

FOIA    CONFIDENTIAL TREATMENT REQUESTED                    WOODBRIDGE SEC_02688568

## Secondary Market Annuities – Master Assignment & Assumption Agreement

By executing this Agreement, each Party, respectively, acknowledges having read and understood all eleven (11) pages of this Agreement, including but not limited to Schedule A and Schedule B, which follow this signature page, and all of the terms and conditions on each page.

This Agreement is dated and effective as of the _____ day of _____, 20___.

**ASSIGNEE**
**Individual Name**
**123 Main Street**
**Anytown, State 12345**

_____

Individual Name
SSN:

**ASSIGNOR**
**Woodbridge Group of Companies, LLC**

_____

By:     Robert Shapiro
Its:     President

133 | P a g e

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688569

## Secondary Market Annuities – Master Assignment & Assumption Agreement

### SCHEDULE A

**CLOSING BOOK REQUIREMENTS**
**(document titles may vary slightly)**

1.  Fully-executed **Offer Sheet**

2.  **Contact Information** of relevant interested parties

3.  **Amortization Table** depicting Assigned Payment Stream with yield to Assignee calculated at the effective interest rate set forth in the Offer Sheet

4.  **Petition** (if applicable)

5.  **Notice of Hearing** (if applicable)

6.  **Certificate or Proof of Service** (if applicable)

7.  **Court Order** issued by a court of competent jurisdiction (if applicable)

8.  **Stipulation** executed by all interested parties (if applicable)

9.  **Acknowledgment Letter** from the payor stating it will direct payments in accordance with the Order to Assignee (if applicable)

10. **Annuity Contract, Benefits Letter**, or other documentation evidencing payments (if made available to Assignor)

11. **Transfer Agreement**

12. **Disclosure Statement** (if applicable)

13. **Structured Settlement Agreement** (if applicable & made available to Assignor)

14. **Qualified Assignment Agreement** (if applicable & made available to Assignor)

15. **Certificate of Marital Status**

16. **Statement Regarding Independent Professional Advice**

17. **Affidavit or declaration from Seller** stating dependents and setting forth factual basis for the transaction described in the Transfer Agreement being in Seller's best interest

18. **Seller's Application**

19. **Photo Identification of Seller or Person acting on behalf of Seller**

20. **UCC, lien, judgment, and bankruptcy search results of Seller**

21. **Notice of Assignment** and **Proof of delivery** of any administrative fee to payor

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688570

**Secondary Market Annuities – Master Assignment & Assumption Agreement**

**SCHEDULE B**

**TRANSACTION-APPROVING DOCUMENT REQUIREMENTS
(AS APPLICABLE)**

> The term "Designated Assignee" as used in this Schedule B shall mean Assignee, Designee, or Assignee IRA (as those terms are defined in the Agreement), as applicable.
>
> Sample verbiage set forth in this Schedule B is offered for illustrative purposes only and is not offered to be or intended as verbatim, specific content that might or would appear in a Transaction-Approving Document.

1. **Designated Beneficiary; Death Provision**

   The order should name the designated beneficiary as the Seller's estate and direct what happens in the event of Seller's death.

   Sample verbiage:

   > *During the period the structured settlement payment rights are assigned or encumbered pursuant to the transaction at issue, the designated beneficiary of the Assigned Payments shall be the Estate of Seller. However, the transferee's designated assignee, Designated Assignee, shall be entitled to receive the Assigned Payment(s) even in the event of Seller's death.*

2. **Direction of Assigned Payments**

   The Court Order will approve the transaction described in the Transfer Agreement and will direct the payor to remit the Assigned Payment Stream to the Designated Assignee as and when that comes due.

   Sample verbiage:

   > *Pursuant to the approved transfer, payor and obligor are hereby ordered to deliver the Assigned Payment(s) which were previously due to Transferor directly to Designated Assignee at [address of Designated Assignee] (the "Designated Address") or to any other address as designated in writing by the transferee or Designated Assignee without further order of this Court.*
   >
   > *In the event Designated Assignee further assigns the Assigned Payment(s) (or any portion thereof) (a "Reassignment") to any other person or entity, payor and obligor shall not be obligated to redirect the Assigned Payment(s) (or any portion thereof) to any person or entity other than Designated Assignee, or to any payment address other than the Designated Address, and Designated Assignee shall remain obligated to comply with all terms and conditions herein. However, if Designated Assignee moves or the Designated Address is no longer viable for reasons beyond its control, payor and obligor shall make payments to the new payment address upon the timely submission by Designated Assignee of a written notice to payor and obligor confirming that such event has occurred, and specifying the new entity and/or payment address.*

FOIA   CONFIDENTIAL TREATMENT REQUESTED   WOODBRIDGE SEC_02688571

Secondary Market Annuities – Master Assignment & Assumption Agreement

3. **Payor Acknowledgment of Assignment**

If amenable to payor and to the court, the Court Order should provide that payor will send an acknowledgement letter to the Designated Assignee that acknowledges the Transfer.

Sample verbiage:

> *Not later than twenty (20) days after service of a copy of the within order entered by this Court, payor shall send a letter to the transferee and Designated Assignee, at the following address: 14225 Ventura Blvd., Suite 100, Sherman Oaks, CA 91423, acknowledging the Transfer, informing transferee and Designated Assignee that the corresponding changes have been made to its records, and specifying the name of the payee scheduled to receive the Assigned Payment(s), and address or bank account designation to where the Assigned Payment(s) shall be sent.*

4. **Binding Nature of Court Order**

The Court Order should state that it is binding.

Sample verbiage:

> *This Order shall be binding upon [Seller], transferee, payor, obligor, and all other interested parties.*

5. **Indemnity and Release Provisions**

While it is preferred that the Court Order not require any indemnification of payor and/or obligor, the preference will be to only have the transferee release and indemnify the payor and obligor to the extent either or both payor and obligor require such content, but most payors and obligors require both the transferee and Designated Assignee to provide such indemnity.

Sample verbiage:

> *Transferee and/or Designated Assignee shall defend, indemnify, and hold harmless payor and obligor, and their respective past, present, and future directors, shareholders, officers, agents, employees, servants, successors, and assigns, and any parent, subsidiary, or affiliate thereof, and their directors, shareholders, officers, agents, employees, servants, successors, and assigns, from and against any and all liability, including reasonable costs and attorneys' fees, for any and all claims made, including but not limited to any claims made by [Seller] and [Seller's] heirs, beneficiaries, contingent beneficiaries, executors, administrators, and assigns, in connection with, related to, or arising out of the Purchase Agreement, the Proposed Transfer, the Assigned Payment(s), any Reassignment, the Stipulation (if any), or this Order, except with respect to claims to enforce a party's rights under this Order.*

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688572

## Secondary Market Annuities – Master Assignment & Assumption Agreement

*Transferee, Designated Assignee, and   [Seller], for themselves and their respective past, present, and future directors, shareholders, officers, agents, employees, servants, successors, heirs, beneficiaries, contingent beneficiaries, executors, administrators, and assigns, and any parent, subsidiary, or affiliate thereof, and their directors, shareholders, officers, agents, employees, servants, successors, heirs, beneficiaries, contingent beneficiaries, executors, administrators, and assigns (the "Releasors"), hereby remise, release, and forever discharge [annuity issuer and/or annuity owner], and their respective directors, shareholders, officers, agents, employees, servants, successors, and assigns, and any parent, subsidiary, or affiliate thereof, and their directors, shareholders, officers, agents, employees, servants, successors, and assigns, past and present (the "Releasees"), of and from any and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, settlements, damages, claims, and demands whatsoever, in law or in equity, in connection with, related to, or arising out of the Purchase Agreement, Assigned Payment(s), the Proposed Transfer, the parties' Stipulation (if any), or this Order, which against each other or the Releasees, the Releasors can, shall, or may have, except for claims to enforce a party's rights under this Order.*

**6.  Child Support Order Interpleader**

Payor and/or obligor may require content substantially similar to the sample verbiage immediately below.

Sample verbiage:

*In the event an order is subsequently entered requiring payor or obligor to make payments in connection with a child support order, divorce decree or other order of a similar nature affecting the Assigned Payment(s),  payor and/or obligor may file an interpleader action in a court in the jurisdiction in which [Seller] is domiciled at the time, and payor will make payments to the court, or as directed by the court, until the court determines the priority of the subsequent order.*

**7.  Other provisions**

The payor and/or obligor may require provisions additional to those described and/or contemplated above in this Schedule B.  Assignee hereby authorizes Woodbridge (on its own behalf and on behalf of the transferee if Woodbridge is not the transferee) to agree to such provisions.

FOIA   CONFIDENTIAL TREATMENT REQUESTED

**Pass-It-On Referral Program and Application**



# Pass it on...
## A financial planner referral program for
## First Position Commercial Mortgage notes

We are pleased that you decided to work with Woodbridge to "pass along the word" to your clients about our exceptional products. We know that their higher yields have made them quite attractive to you and your clients!

We'd like to invite you to share Woodbridge's most popular product—First Position Commercial Mortgage (FPCM) notes—with other financial planners. Earn a bonus 25 basis points (bps)* as a reward on the net production of all FPCM sales your referred "FP" (Financial Planner) brings in each month. The program is called "Pass It On" and by that we mean—pass along the good news.

### Here's how you participate in "Pass It On" and start earning 25 bps* on your referred FP's net production every month:

**1)** To get the optimal benefit from your network, identify other financial planners who you know have a strong book of business and can bring well-qualified, potential clients to the table. If you have a high-producing network, your bonus will be higher!

**2)** Because you are already well-versed in First Position Commercial Mortgage notes, we ask you to share

the benefits. In other words, pass along your knowledge and enthusiasm.

**3)** Enroll your FP in the Pass It On program. You can enroll 3 different ways:

▶ Online: www.woodbridge wealth.com/pass-it-on
▶ Mail: Send the completed application to Dayne Roseman, 14140 Ventura Blvd., Suite 302, Sherman Oaks, CA 91423

▶ Email: DayneR@Woodbridge Wealth.com.

**4)** Once you enroll your FP, you'll permanently become their FP Principal.

**5)** Anytime your FP agent calls with new business that closes, their sales will be linked to your net production. You will receive a separate check paying you 25 bps* on all FPCM sales that they bring in. It's that easy!

Why wouldn't you want to earn an extra 25 bps* on all net production your Financial Planner brings in? Just inform other financial planners about what you've been so successful at already...and you've got a winning combination.

We're pleased to be working with you as our valued partner and hope that you're ready to "Pass It On!" Call 866-818-3044 or visit www.woodbridgewealth.com/pass-it-on to get started.

Sincerely,

*Dayne Roseman*

Dayne Roseman
Managing Director

*25 bps = ¼ of 1%

NOTE: No securities or insurance license is required. Reward bonus payments do not include any securities or First Position Commercial Mortgage note purchases and FP referred FP sales.

14140 Ventura Blvd., Suite 302, Sherman Oaks, CA 91423  •  Toll-free: (866) 815-4431  |  Fax: (866) 999-8764
www.WoodbridgeWealth.com

138 | P a g e

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688574

**Pass-It-On Referral Program and Application (continued)**



## Pass It On program checklist

1) Identify high-performing financial planners who you believe would bring solid, qualified clients that may be interested in First Position Commercial Mortgage (FPCM) notes.

2) Speak to your referred FP regarding the opportunity and outline the benefits.

3) When your FP is ready to start producing, help them become familiar with the procedure to request paperwork and fund a purchase. Inform them about the products, how they work, how they're processed, etc. Establish yourself as the "mentor" to your FP.

4) If you have an agreement and feel comfortable that this FP would be a positive contributor to your network, enroll them in the Pass It On program. You can enroll 3 different ways:

- **Online:** www.woodbridgewealth.com/pass-it-on
- **Mail:** Send to Dayne Roseman
       14140 Ventura Blvd., Suite 302
       Sherman Oaks, CA 91423
- **Email:** DayneR@WoodbridgeWealth.com

5) Once the application has been verified and we welcome the new Financial Planner, their First Position Commercial Mortgage notes net sales will benefit you every month by 25 bps.

14140 Ventura Blvd., Suite 302, Sherman Oaks, CA 91423  •  Toll-free: (866) 815-4431  |  Fax: (866) 399-6768
www.WoodbridgeWealth.com

139 | P a g e

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688575

## Pass-It-On Referral Program and Application (continued)



WOODBRIDGE WEALTH

# Pass It On Application

### Your Information

**Your Name**

**Company Name**

**Email Address**

**Street Address**

**City**

**State**

**Zip Code**

**Phone Number**

**Mobile Number**

### Financial Planner Referral Information

**Your Name**

**Company Name**

**Email Address**

**Street Address**

**City**

**State**

**Zip Code**

**Phone Number**

**Mobile Number**

**Years in Business**

**Outside Business Allowed?** Yes  No

**If Affiliated, Broker Dealer Name**

**Specializes in**

### Your Financial Planner's Client Base

**Demographic**

**Type of clientele**

**Clients need to reposition to purchase from us?**
Yes  No

**Clients are in a liquid position to purchase from us?**
Yes  No

**Does the referred FP have a complete understanding of FPCM notes, including the purchasing process?**
Yes  No

**Is the FP ready to start doing business? If not, why?**
Yes  No

**Estimate of FP's monthly gross sales**

**How many FPCM transactions per month do you expect the FP to produce?**

14140 Ventura Blvd, Suite 302, Sherman Oaks, CA 91423  •  Toll-free: (866) 815-4431  |  Fax: (866) 599-6768
www.WoodbridgeWealth.com

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688576

FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688577

## Lead Assessment Sheet

| LEAD - INITIAL SALES ASSESSSMENT | |
|---|---|
| Prospect Name | |
| Email Address | |
| Phone Number | |
| Address | |
| Prospect Temperature | Hot / Warm / Cold |
| How did you hear about us? / Lead source? | Outbound / Inbound / Live Transfer / Radio |
| What type of services / investment products do you offer? | |
| How long have you been in business? | |
| Fee based or commissions based? | Fee – Comm. |
| Is your client base Conservative, Moderate or Speculative? | |
| Do you work with other agents or associates? | Yes - No |
| Do you have any broker-dealer affiliation? | Yes - No |
| What are the best yielding, short-term products you offer and how are they secured? | |
| Do you have a market for a 12 month secured yield of 5-6%? | Yes - No |
| Do you have a market for long-term insured income products? | Yes - No |
| Do you represent clients that are Accredited Investors? | Yes - No |
| What is the next step for this prospect? | |
| In your best assessment, is this client able to do business in the next 30-90 days? | |
| If yes or no, please explain | |
| Date | |
| WSF Agent | |

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688578

## ShoreTel Communicator – Logging In, Breaks, Lunch, Meetings & Logging Out



FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688579

## ShoreTel Communicator – Logging In, Breaks, Lunch, Meetings & Logging Out

1. To Log In to the system, click on **"Contact Center,"** then click on **"Log Into All Groups"** at the start of your scheduled shift. This Clocks you "In" for the day.

2. When you are logged in all areas will be **"green."** This puts you in the **"Queue"** allowing you to take inbound calls. New hires are not allowed to be in the **"Queue"** taking inbound calls until approved to do so.




3. When going on **Break**, during a **Training Session**, in a **Meeting** or taking **Lunch**, click on the yellow **"Release"** button to open the **"Release with Code"** box.



FOIA    CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688580

## ShoreTel Communicator -- Logging In, Breaks, Lunch, Meetings & Logging Out

4. Choose the appropriate **"Release Code"** then click **"OK."**

5. Click **"Resume"** when returning to the phones and/or when clocking back in from the released code.

 

6. New Hires are required to not be in the **"Queue"** until you have been given permission to take inbound calls. Click on the **"Resume"** button until all boxes are yellow.

7. When Logging Out for the end of your shift click on **"Contact Center"** and then chose **"Log Out of All Groups."**

 

FOIA   CONFIDENTIAL TREATMENT REQUESTED

WOODBRIDGE SEC_02688581