**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-24624-CIV-COOKE**

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

vs.

ROBERT H. SHAPIRO,
WOODBRIDGE GROUP OF COMPANIES, LLC,
d/b/a WOODBRIDGE WEALTH,
RS PROTECTION TRUST,
WMF MANAGEMENT, LLC,
WOODBRIDGE STRUCTURED FUNDING, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 1, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 2, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 4, LLC,
WOODBRIDGE MORTGAGE COMMERCIAL BRIDGE LOAN FUND 1, LLC,
WOODBRIDGE MORTGAGE COMMERCIAL BRIDGE LOAN FUND 2, LLC,
144 WOODBRIDGE-AFFILIATED PROPERTY LIMITED
LIABILITY COMPANIES,
131 WOODBRIDGE-AFFILIATED HOLDING LIMITED
LIABILITY COMPANIES,

    Defendants, and

JERI SHAPIRO,
WOODBRIDGE REALTY OF COLORADO, LLC,
d/b/a WOODBRIDGE REALTY UNLIMITED,
WOODBRIDGE LUXURY HOMES OF CALIFORNIA, INC.,
d/b/a MERCER VINE, INC.,
RIVERDALE FUNDING, LLC,
SCHWARTZ MEDIA BUYING COMPANY, LLC,
WFS HOLDING CO., LLC

    Relief Defendants.
_____/

**DEFENDANT ROBERT H. SHAPIRO'S MOTION TO DISSOLVE OR MODIFY ASSET FREEZE AND INCORPORATED MEMORANDUM OF LAW**

1

Defendant Robert H. Shapiro, through undersigned counsel, files this motion seeking to dissolve or modify the asset freeze (the "Asset Freeze") established in this Court's *Order Granting Emergency Ex Parte Motion for Asset Freeze and Other Relief* [ECF 13] (the "Asset Freeze Order"). The Asset Freeze must be dissolved or modified because (1) it restrains assets to secure a hypothetical, future disgorgement remedy which the Securities and Exchange Commission ("SEC") no longer is authorized to seek; (2) an unlimited asset freeze is patently improper, overbroad, and bears no nexus to any reasonable measure of ill-gotten gains. In support of this motion, Mr. Shapiro states:

**I.     Background**

On December 20, 2017, the SEC filed the *Emergency Ex Parte Motion for Asset Freeze and Other Relief* (the "Asset Freeze Motion") [ECF 5] and memorandum in support thereof (the "Asset Freeze Memorandum") [ECF 6]. The SEC alleges, generally, that Mr. Shapiro misappropriated $21 million of investors' funds for his own personal use."[1] Asset Freeze Memorandum at 24. The SEC asked the Court to, among other things, freeze approximately $1 billion of Mr. Shapiro's and his co-defendants' assets so that they can be preserved for "potential disgorgement." Asset Freeze Motion at 2; Asset Freeze Memorandum at 40-41. The SEC argued that an asset freeze "is a well-accepted equitable remedy" that "is sometimes necessary to ensure a future disgorgement order will not be rendered meaningless." Asset Freeze Memorandum at 24; *see also* Asset Freeze Memorandum at 40 ("[d]isgorgement is an equitable remedy . . .").

On December 20, 2017, the Court found that Mr. Shapiro's assets "are likely subject to an Order of disgorgement," and, as such, entered the Asset Freeze Order. The Asset Freeze

---

[1] For the sake of brevity, Mr. Shapiro respectfully refers the Court to the Asset Freeze Memorandum for a complete set of the SEC's allegations against Mr. Shapiro.

Order imposed the Asset Freeze, prohibiting Mr. Shapiro from acquiring, using, or alienating any of his assets. Asset Freeze Order at 2-4.

## II.     Relief Requested and Basis Therefor

The Court should dissolve or modify the Asset Freeze because: (1) as a matter of law, disgorgement remedy is no longer available to the SEC; and (2) an asset freeze is improper, overbroad, and not reasonably connected to the alleged misconduct, nor to any alleged ill-gotten gains.

### A.     The Limits of Disgorgement Following *Kokesh*

#### i.     *Disgorgement Is a Penalty*

In a recent landmark decision, *Kokesh v. S.E.C.*, the United States Supreme Court placed significant limits on the SEC's enforcement powers vis-à-vis the oft-used remedy of disgorgement. *Kokesh v. S.E.C.*, 137 S.Ct. 1635 (2017). In its opinion closely examining whether SEC disgorgement is penal or remedial in nature, the Supreme Court unanimously held that disgorgement is a penalty. *Id.* at 1645.

The Supreme Court defined a "penalty" as "punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws." *Id* at 1638. The Court reasoned this definition gave rise to two principles used to assess whether a sanction is a penalty: *first*, "whether the wrong sought to be redressed is a wrong to the public, or a wrong to an individual"; and *second*, whether the sanction is "for the purpose of punishment, and to deter others from offending in like manner—as opposed to compensating a victim for loss." *Id.* Applying these principles, the Supreme Court found that SEC disgorgement is a penalty. *Id.* at 1635.

First, the Supreme Court found that SEC disgorgement seeks to redress public wrongs because it "is imposed by courts as a consequence for violating . . . public laws" – the securities laws under the Securities and Exchange Acts. *Id* at 1643. The Supreme Court stated, "[t]he violation for which [disgorgement] is sought is committed against the United States rather than an aggrieved individual—this is why, for example, a securities-enforcement action may proceed even if victims do not support or are not parties to the prosecution." *Id.* Second, the Supreme Court found that SEC disgorgement is imposed for a punitive purpose; in fact, the "primary purpose of disgorgement orders is to deter violations by depriving violators of their ill-gotten gains." *Id.* "Sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive because deterrence is not a legitimate non-punitive objective." *Id*. at 1644. Third, the Supreme Court noted that in many cases SEC disgorgement is not compensatory. *Id.* Funds that are disgorged from a defendant are paid to the district court, which has discretion regarding how and to whom the funds will be distributed. *Id.* Consequently, in some cases courts distribute disgorgement funds to victims and in others they are paid to the U.S. Treasury. *Id.* Based on this, the Court found that disgorgement "bears all the hallmarks of a penalty: it is imposed as a consequence for violating a public law and is intended to deter, not to compromise." *Id.*

The Supreme Court also explicitly rejected the SEC's arguments that disgorgement is remedial. Unconvinced by the SEC's contention that disgorgement is remedial because it attempts to "restore the status quo," *id.* at 1645, the Court observed that SEC disgorgement sometimes goes beyond merely remedying unjust enrichment and exceeds the alleged profits obtained through a securities violation. *Id.* As an example, the Court pointed to insider trading cases, in which defendants who provided confidential information (*i.e.*, "tippers") had been

4

required to disgorge the stock trading profits obtained by the tippees (those who received the confidential information)—even though the defendants did not personally receive any profits. *Id* at 1644-45. The Court also noted that, SEC disgorgement is sometimes ordered without considering the defendant's expenses which reduce his or her "ill-gotten gains." Defendants have been required to disgorge "gross proceeds" regardless of the amount of actual gains received. *Id.* In these scenarios, the Supreme Court observed, disgorgement does not restore the status quo, rather it leaves the defendant in a worse position. *Id.*

Finally, the Supreme Court recognized that although SEC disgorgement serves compensatory goals in some cases, "sanctions frequently serve more than one purpose". *Id.* at 1645. And, "[a] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." *Id.* In other words, the Supreme Court stated that any civil sanction that serves both remedial and penal purposes should be considered a penalty. Pursuant to the Supreme Court's holding, the fact that a disgorgement may sometimes serve a compensatory function does not render it an equitable remedy. It is a penalty and should be treated as such. *Id.*; *see also S.E.C. v. Graham*, 823 F.3d 1357, 1363 (11th Cir. 2016) (finding that there is no meaningful difference between disgorgement and forfeiture as compared to injunctions, which are forward looking equitable remedies).

### ii. *The SEC Cannot Obtain Disgorgement Because It Is Not Statutorily Authorized*

Because disgorgement is a penalty, the SEC cannot appeal to the Court's inherent equity powers to order it. Rather, a penalty may only be awarded if it is statutorily authorized. *See United States v. Parkinson*, 240 F.2d 918, 922 (9th Cir. 1956) ("Anything which savors of a penalty should not be permitted unless Congress has expressly so provided, since the spirit of

5

equity abhorred such punitive measures."). In *Kokesh*, the Supreme Court highlighted that SEC disgorgement is not a statutorily-based remedy, but, rather, evolved from decades of misguided efforts to take gratuitous pounds of flesh from unsympathetic defendants:

> Initially, the only statutory remedy available to the SEC in an enforcement action was an injunction barring future violations of securities laws. In the absence of statutory authorization for monetary remedies, the Commission urged courts to order disgorgement as an exercise of their 'inherent equity power to grant relief ancillary to an injunction.' . . . Beginning in the 1970s, courts ordered disgorgement in SEC enforcement proceedings in order to 'deprive . . . defendants of their profits in order to remove any monetary reward for violation" securities laws and to "protect the investing public by providing an effective deterrent to future violations.'
>
> In 1990, as part of the Securities Enforcement Remedies and Penny Stock Reform Act, Congress authorized the commission to seek monetary penalties. The Act left the Commission with a full panoply of enforcement tools: It may promulgate rules, investigate violations of those rules and securities laws generally, and seek monetary penalties and injunctive relief for those violations. In the years since the Act, however, the Commission has continued its practice of seeking disgorgement in enforcement proceedings.

*Kokesh*, 137 S. Ct. at 1640 (internal citations omitted). The Court openly questioned the propriety of SEC disgorgement and implied that it was not authorized at all. *Kokesh*, 137 S. Ct. at 1642 n.3 ("Nothing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context."). Since there is no statute authorizing disgorgement in the securities-enforcement context, there is no legal basis for an order of disgorgement against Shapiro.

6

### B.   The Asset Freeze Is Improper and Overly Broad

#### *i.   The Government Has Not Met Its Burden*

Rule 65 of the Federal Rules of Civil Procedure governs the entry of preliminary injunctions. A preliminary injunction enjoining violations of the securities laws is appropriate if the SEC makes a substantial showing of likelihood of success as to both a current violation and the risk of repetition. *See S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1031 (2d Cir. 1990).

Aside from the traditional showing necessary to obtain preliminary injunctive relief pursuant to Rule 65, "a plaintiff may obtain a prejudgment freeze on a defendant's assets only if he has asserted a cognizable equitable claim, has demonstrated a sufficient nexus between that claim and specific assets of the defendant which are the target of the injunctive relief, and has shown that the requested interim relief is a reasonable measure to preserve the status quo in aid of the ultimate equitable relief claimed." *Akers v. Akers*, No. 15-cv-2512, 2015 WL 4601155, at *2 (E.D. Pa. 2015). In this case, the SEC has not alleged, much less established, a cognizable equitable claim against *particular assets of Shapiro*. Instead, the Asset Freeze imposed a blanket freeze of all of Shapiro's assets. The Asset Freeze is neither limited in time nor in scope, and was entered without notice or a hearing.

In its Asset Freeze Memorandum, the SEC appealed to the Court's inherent equitable powers to order an asset freeze that would secure the ultimate disgorgement award. *See* Asset Freeze Memorandum, at 24 ("A district court may exercise its range of equitable powers, including an asset freeze, to preserve sufficient funds for the payment of a disgorgement award." (citations omitted)).

The cases cited by the SEC in support of the Asset Freeze Motion reveal that the justification for this interim remedy is the presumption, now eviscerated by the Supreme Court,

that the disgorgement remedy it sought to preserve is equitable in nature. S*ee id.* (*citing S.E.C. v. Lauer*, 478 Fed. Appx. 550, 554 (11th Cir. 2012) ("The district court may freeze assets in order to preserve funds while a party seeks *an equitable remedy such as disgorgement*.") (emphasis added); *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) ("[T]he asset freeze is justified as a means of preserving funds for the *equitable remedy of disgorgement*.") (emphasis added). Absent the critical equitable "hook," the viability of the Court's reasoning with respect to the purpose of the asset freeze is in doubt.

Additionally, while conceding it bears the burden to establish that the amount of assets subject to a potential disgorgement award is a "reasonable approximation of a defendant's ill-gotten gains," (Asset Freeze Memorandum at 24), the SEC's demand for a total asset freeze affecting approximately $1 billion in assets bears no reasonable nexus to the $21 million the SEC claims Shapiro misappropriated. *See id*. at 40. The Supreme Court rejected the SEC's contention that disgorgement is not a penalty where, *as here*, the SEC sought disgorgement that far exceeds the amount the defendant personally received. Doing so, the Supreme Court reasoned unanimously, does not restore the *status quo* but leaves a defendant like Shapiro in a worse position. *Kokesh*, 137 S. Ct. at 1645. If to disgorge more than a defendant gained imposes a penalty, the SEC cannot seek an asset freeze – an inherently equitable means – to secure it.

The constitutional significance of preservation of limits on pretrial assets freezes and forfeitures was underscored in another recent Supreme Court decision, *Luis v. United States*, 136 S. Ct. 1083 (2016). The federal statute at issue in *Luis*, 18 U.S.C. § 1345, permitted courts to freeze before trial assets belonging to a criminal defendant accused of violations of federal health care or banking laws, so long as such assets were: (1) obtained as a result of the crime; (2)

8

traceable to the crime; or (3) other property of equivalent value. *See id.* at 1087. The Supreme Court rejected the Government's contention that the Court may freeze untainted assets in a manner that would prevent the defendant from hiring defense counsel. *Id.* at 1089-90. In reaching its conclusion, the Court drew a critical distinction between the tainted and untainted assets:

> The relevant difference consists of the fact that the property here is untainted; *i.e.*, it belongs to the defendant, pure and simple. In this respect it differs from a robber's loot, a drug seller's cocaine, a burglar's tools, or other property associated with the planning, implementing, or concealing of a crime. The Government may well be able to freeze, perhaps to seize, assets of the latter, 'tainted' kind before trial. As a matter of property law the defendant's ownership interest is imperfect. The robber's loot belongs to the victim, not to the defendant. The cocaine is contraband, long considered forfeitable to the Government wherever found. And title to property used to commit a crime (or otherwise 'traceable' to a crime) often passes to the Government at the instant the crime is planned or committed. The property at issue here, however, is not loot, contraband, or otherwise 'tainted.' It belongs to the defendant. That fact undermines the Government's reliance upon precedent, for both *Caplin & Drysdale* and *Monsanto* relied critically upon the fact that the property at issue was "tainted," and that title to the property therefore had passed from the defendant to the Government before the court issued its order freezing (or otherwise disposing of) the assets.

*Id.* at 1090 (citations omitted). The distinction between tainted and untainted assets, which featured prominently in the Court's decision in *Luis*, is equally relevant in this case. Yet, the SEC has failed to draw such a distinction. Instead the SEC is seeking the wholesale seizure of all of Shapiro's assets, irrespective of whether they are connected to any alleged wrongdoing. Such a position runs contrary to the Supreme Court's directive and should be rejected.

        ii.    *The Asset Freeze Is Overbroad*

Assuming *arguendo* that the Asset Freeze is an appropriate means of securing a future disgorgement award, the current Asset Freeze is patently overbroad in relation to the amount of a

disgorgement award the SEC would be entitled to in the event it prevails on all its claims. Notwithstanding the SEC's contentions, an asset freeze must be limited in scope. As noted by the Eleventh Circuit, "the power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment." *S.E.C. v. ETS Payphones, Inc*., 408 F.3d 727, 735 (11th Cir. 2005); *see also F.T.C. v. Bishop*, 425 Fed. Appx. 796, 798 (11th Cir. 2011) ("The district court abused its discretion by imposing too broad of an asset freeze without making any reasonable approximation of Defendant–Appellant's ill-gotten gains.").

Given the new legal landscape governing disgorgement in the wake of *Kokesh*, and the Supreme Court's reasoning in *Luis*, the SEC can no longer circumvent the requirements for obtaining a pre-judgment freeze of a defendant's assets by simply asserting a blanket claim for disgorgement. The SEC has made no showing that a complete asset freeze is a reasonable approximation of Shapiro's allegedly ill-gotten gains. The value of assets encompassed by the asset freeze exceeds manifold the SEC's own approximation of what it believes the SEC is entitled to recover. By operation, the Asset Freeze is an unauthorized and improper penalty. Consistent with binding precedent, the Asset Freeze should be modified to bring it into proportion with the sums the SEC alleges Shapiro misappropriated.

### III. Conclusion

For these reasons, Mr. Shapiro respectfully requests that the Court either dissolve the Asset Freeze, modify its scope to bring it into conformity with a reasonable estimation of alleged ill-gotten gains, and enter any further relief that the Court deems just and equitable.

Dated:  February 7, 2018

Respectfully submitted:

*/s/ Ryan D. O'Quinn*
Ryan D. O'Quinn (FBN: 513857)
ryan.oquinn@dlapiper.com
Ardith Bronson (FBN: 423025)
ardith.bronson@dlapiper.com
Maia Sevilla-Sharon (FBN: 123929)
maia.sevillasharon@dlapiper.com
Elan A. Gershoni (FBN: 95969)
elan.gershoni@dlapiper.com
DLA PIPER LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone:    305.423.8500
Facsimile:     305.437.8131

*Attorneys for the Defendant Robert H. Shapiro*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 7, 2018, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Ryan D. O'Quinn*
Ryan D. O'Quinn

11

EAST\151170657.2