UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-24624-CIV-COOKE

SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

vs.

ROBERT H. SHAPIRO,
WOODBRIDGE GROUP OF COMPANIES, LLC,
d/b/a WOODBRIDGE WEALTH,
RS PROTECTION TRUST,
WMF MANAGEMENT, LLC,
WOODBRIDGE STRUCTURED FUNDING, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 1, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 2, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 4, LLC,
WOODBRIDGE MORTGAGE COMMERCIAL BRIDGE LOAN FUND 1, LLC,
WOODBRIDGE MORTGAGE COMMERCIAL BRIDGE LOAN FUND 2, LLC,
144 WOODBRIDGE-AFFILIATED PROPERTY LIMITED
LIABILITY COMPANIES,
131 WOODBRIDGE-AFFILIATED HOLDING LIMITED
LIABILITY COMPANIES,

                Defendants, and

JERI SHAPIRO,
WOODBRIDGE REALTY OF COLORADO, LLC,
d/b/a WOODBRIDGE REALTY UNLIMITED,
WOODBRIDGE LUXURY HOMES OF CALIFORNIA, INC.,
d/b/a MERCER VINE, INC.,
RIVERDALE FUNDING, LLC,
SCHWARTZ MEDIA BUYING COMPANY, LLC,
WFS HOLDING CO., LLC

                Relief Defendants.

_____/

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT ............................................................................................................................ 4

    A. The Shapiro Counts Must be Dismissed Because the Court Lacks Subject Matter Jurisdiction Over Them ............................................................................... 5

        1. "Securities" Are Assigned a Specific Meaning ..................................... 6

        2. The FPCM Notes Were Not Used to Fund Woodbridge's General Operations ................................................................................................ 7

        3. The Absence of a "Plan of Distribution" Demonstrates that the FPCM Notes are Not a Securities ............................................................ 8

        4. The Public Could Not Have Reasonably Expected that the FPCM Notes Entitled them to a Portion of Woodbridge's Profits ................... 9

        5. The FPCMs' Risk-Reducing Factors Neutralize the Need for Protections .............................................................................................. 10

    B. Alternatively, the Court Should Strike Allegations Relating to the Shapiro Counts as Immaterial, Impertinent, or Scandalous ............................................... 10

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Douglas v. U.S.*,
   814 F.3d 1268 (11th Cir. 2016) ................................................................................................5

*Eagle Trim, Inc. v. Eagle Pitcher Indus., Inc.*,
   205 F.Supp.2d 746 (E.D. Mich. 2002)...................................................................................7, 9

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993) ................................................................................................10

*Gilbert v. Eli Lilly & Co.*,
   56 F.R.D. 116 (D.P.R. 1972) ..................................................................................................10

*Glazer v. Abercrombie & Kent, Inc.*,
   2009 WL 3060269 (N.D. Ill. Sept. 22, 2009) ..........................................................................8

*Holloway v. Peat, Marwick, Mitchell & Co.*,
   900 F.2d 1485 (10th Cir. 1990) ................................................................................................7

*Lawrence v. Dunbar*,
   919 F.2d 1525 (11th Cir. 1990) ................................................................................................5

*Marine Bank v. Weaver*,
   455 U.S. 551 (1982)..................................................................................................................6

*U.S. ex rel. Osheroff v. Humana Inc.*,
   776 F.3d 805 (11th Cir. 2015) ..................................................................................................5

*Perrysburg Township v. City of Rossford, et al.*,
   103 Ohio St. 3d 79 (Ohio 2004).............................................................................................10

*Pigford v. Veneman*,
   215 F.R.D. 2 (D.D.C. 2003)...................................................................................................10

*Procter & Gamble*,
   925 F. Supp. 1270 (S.D. Ohio 1996) .......................................................................................9

*Resolution Trust Corp. v. Stone*,
   998 F.2d 1534 (10th Cir. 1993) ................................................................................................8

*Reves v. Ernst & Young*,
   494 U.S. 56 (1990).......................................................................................................*passim*

*Robyn Meredith, Inc. v. Levy*,
  440 F.Supp.2d 378 (D.N.J. 2006) ...................................................................................7

*SEC v. Global Telecom Services, LLC*,
  325 F. Supp. 2d 94 (D. Conn. 2004) ................................................................................8

*Vujasin v. Chef Vincent, Inc.*,
  2008 WL 4792049 (S.D. Fla. Oct. 31, 2008) ...................................................................5

**Statutes**

Exchange Act ............................................................................................................................1

Exchange Act Section 3(a)(1) ...................................................................................................6

Exchange Act Section 27(a) [15 U.S.C. § 78aa(a)] ..................................................................5

Securities Act ............................................................................................................................1

Securities Act of 1933, 15 U.S.C. § 77a *et seq.* ......................................................................1

Securities Act and Exchange Act ..........................................................................................1, 5

Securities Act or Exchange Act ...............................................................................................2

Securities Act Section 2(a)(1) ..................................................................................................6

Securities Act Section 22(a) [15 U.S.C. § 77v(a)] ...................................................................5

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ....................................................1

**Other Authorities**

Fed.R.Civ.P. 12(b)(1) ................................................................................................................5

Fed.R.Evid. 401 .......................................................................................................................11

Rule 12(f) ................................................................................................................................10

**ROBERT H. SHAPIRO'S MEMORANDUM OF LAW AND MOTION TO DISMISS CAUSES OF ACTION BASED ON FIRST POSITION COMMERCIAL MORTGAGES FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO STRIKE <u>ALLEGATIONS RELATING TO FIRST POSITION COMMERCIAL MORTGAGES</u>**

Defendant Robert H. Shapiro, through undersigned counsel, pursuant to rules 12(b)(1) and 12(f) of the Federal Rules of Civil Procedure, respectfully moves to (i) dismiss Counts One through Eight and Ten (the "**Shapiro Counts**") of the SEC's Complaint (the "**Complaint**"); or, in the alternative, (ii) strike all allegations in the Complaint relating to First Position Commercial Mortgages. As discussed more fully below, the Shapiro Counts allege that Mr. Shapiro violated various provisions of the Securities Act of 1933[1] (the "**Securities Act**") and Securities Exchange Act of 1934[2] (the "**Exchange Act**," collectively, with the Securities Act, the "**Securities Acts**") based on alleged wrongful conduct relating to First Position Commercial Mortgage Notes ("**FPCM Notes**"). Since the FPCM Notes are not "securities," the Court lacks subject matter jurisdiction to determine Mr. Shapiro's liability and culpability for any alleged wrongdoing that occurred in connection with the FPCM Notes. Alternatively, the Court should strike all allegations in the Complaint relating to First Position Commercial Mortgages as immaterial, impertinent, or scandalous.

## INTRODUCTION

The SEC alleges that Mr. Shapiro and Woodbridge orchestrated a scheme whereby Woodbridge raised funds by utilizing its sales team to identify private lenders (each, an "**FPCM Lender**") and sell them secured FPCM Notes with 12 to 18 month terms, bearing 5%-8% interest, and repayable using interest that Woodbridge earned by investing the notes' proceeds in higher-yielding loans to third parties secured by real property.

The SEC asserts that the FPCM Notes are "securities" and, thus, that this Court has subject matter jurisdiction over the claims against Mr. Shapiro relating to the FPCM Notes pursuant to the Securities Act and Exchange Act. In truth, however, the notes are not "securities" within the meaning assigned by the Supreme Court in *Reves v. Ernst & Young*, 494 U.S. 56 (1990). Pursuant to the Supreme Court's *Reves* test, the FPCM Notes are not

---

[1] 15 U.S.C. § 77a *et seq*.

[2] 15 U.S.C. § 78a *et seq*.

"securities" because: (i) the FPCM Notes' proceeds were not used to fund Woodbridge's general operations, rather, they were used to fund specific loans; (ii) the FPCM Notes were not transferrable or assignable; (iii) the FPCM Lenders could only reasonably believe that the notes entitled them to interest payments, not a portion of Woodbridge's profits; and (iv) the FPCM Lenders' loans were secured by a first position security interest on collateral. Since the FPCM Notes are not "securities," the notes are not governed by the Securities Act or Exchange Act, which only regulate "securities."  Therefore, the Court lacks subject matter jurisdiction to determine claims of wrongful conduct relating to the FPCM Notes.

## BACKGROUND

On December 20, 2017, the SEC initiated this action by filing its *Complaint for Injunctive and Other Relief* [ECF 1] (the "**Complaint**").

In the Complaint, the SEC alleged that Mr. Shapiro and co-defendant the Woodbridge Group of Companies, LLC ("**Woodbridge**") raised over $1.22 billion from more than 8,400 investors in order to run a Ponzi scheme.  Complaint ¶ 41.

The Complaint states that Woodbridge raised funds by utilizing its sales team to identify FPCM Lenders and sell them twelve-to-eighteen month term promissory note bearing 5%-8% interest that Woodbridge described as First Position Commercial mortgages ("**FPCM(s)**").  *Id.* ¶¶ 42 and 56.

On December 26, 2017, the SEC filed 124 exhibits in support of its Motion for Asset Freeze.  [ECF 36].  The exhibits included declarations from multiple FPCM Lenders that describe each lender's expectations in entering into the FPCM loan transaction, relationship with Woodbridge, the underlying transaction documents, and relationship with other FPCM Lenders.[3]  Taken together, these declarations and their exhibits outline the terms of the FPCM Notes and relationship between Woodbridge and the FPCM Lenders that the SEC omitted in its Complaint.[4]

---

[3] The declarations included: *Declaration of George L. Sims, Jr.* (the "**Sims Declaration**") [ECF 36-7]; *Declaration of John Schiel* [ECF 36-62]; *Declaration of Dan Jacobson* [ECF 36-85]; *Declaration of Susan Peck-Zirpolo* [ECF 36-105]; and *Declaration of Robert B. Maltz* [ECF 36-106] (collectively, the "**Declarations**").

[4] Most of the terms in the underlying loan documents (FPCM Notes, FPCM Loan Agreements, Assignments of Borrower Note and Mortgage from Woodbridge to FPCM

As the SEC alleges in the Complaint and numerous FPCM Lenders allege in their Declarations, FPCM Lenders were told that FPCM loan transactions would operate as follows:

- Woodbridge offered short-term financing ("**Borrower Loans**") to commercial borrowers (the "**Borrowers**") at interest rates of 11-15%. The Borrower Loans were secured by commercial properties and single-family houses (the "**Collateral**"). Complaint, ¶¶ 43 and 58.

- Borrower Loans are evidenced by a promissory note (the "**Borrower Note**") between the commercial Borrower and Woodbridge, and the Borrower grants Woodbridge a first position mortgage (the "**Mortgage**") on the subject Collateral. Complaint, ¶ 59.

- Woodbridge utilized its internal sales team to identify potential FPCM Lenders. Complaint, ¶ 45.

- FPCM Lenders reviewed Woodbridge's portfolio of Borrower Loans and then made loans to Woodbridge to fund specific Borrower Loans. Complaint, ¶¶ 43, 44, 56, 57, 76.

- FPCMs bore an interest rate of 5-8% and were memorialized in a promissory note, i.e. an FPCM Note. Complaint, ¶ 56; *see also*, Sims Declaration, p. 8, ¶ 1.

- Woodbridge negotiated the terms of each FPCM Note directly with each FPCM Lender. In other words, each FPCM Note was a tailored, two-party agreement between Woodbridge and the respective FPCM Lender. *See, e.g.* Sims Declaration, p. 8-24.

- The FPCM Notes provided that Woodbridge would pay the FPCM Lender interest, monthly, at the agreed upon interest rate through the term of the FPCM Note and then the entire unpaid principal on the maturity date of the FPCM Note. *See, e.g.* Sims Declaration, p. 8, ¶¶ 2-3.

- Woodbridge told FPCM Lenders that Woodbridge would pay interest on FPCM Lenders' loans using interest payments made to Woodbridge from the Borrowers on Borrower Loans, which bore higher interest rates than FPCM Notes. Complaint ¶¶ 1, 43, 44, 60, 76, 105.

---

lender, Assignments of Borrower Note and Pledge and Security Agreement, Collateral Assignments, and Intercreditor Agreements) appear to contain substantially identical terms. Accordingly, for the sake of brevity and to avoid burdening the Court with redundant citations, Mr. Shapiro will only cite to the relevant portions of the *Declaration of George L. Sims, Jr.* as it appears to contain a representative set of FCPM loan transaction documents.

- The FPCM Notes and collateral documents specifically provided that they were not assignable or transferrable without Woodbridge's written consent. *See, e.g.* Sims Declaration, page 10, ¶ 14.

- Woodbridge provided the FPCM Lender with information about the Borrower Loan that secured the FPCM Note, such as (i) a copy of the Borrower Note; (ii) a collateral assignment of the Borrower Note and Mortgage in favor of the FPCM Lender; and (iii) an intercreditor agreement. Complaint, ¶ 59; *see also,* Sims Declaration, p. 8-24

- FPCM Lenders were given a first position lien in the subject Collateral. Complaint, ¶¶ 60, 77; *see also,* Sims Declaration, p. 10, ¶ 16.

- Woodbridge's obligation to make monthly interest payments was not contingent upon payment by the Borrower. In the event a Borrower defaulted or failed to pay an underlying Borrower Loan, Woodbridge would continue to make interest payments to FPCM Lenders. Complaint, ¶ 78; *see also,* Sims Declaration, p. 8, ¶¶ 1 – 3.

- If Woodbridge ceased to exist or failed to make a payment to an FPCM Lender, the FPCM Lender could enforce its first position mortgage on the Collateral by foreclosing. Complaint, ¶ 103.

## ARGUMENT

Pursuant to the Supreme Court's *Reves* test, the FPCM Notes are not securities. Specifically, FPCM Notes are not securities because: (i) the FPCM Notes' proceeds were not used to fund Woodbridge's general operations, rather, they were used to fund specific loans; (ii) the FPCM Notes were not transferrable or assignable; (iii) the FPCM Lenders could only reasonably believe that the notes entitled them to interest payments, not a portion of Woodbridge's profits; and (iv) the FPCM Lenders' loans were secured by a first position security interest on collateral. Accordingly, as the FPCM Notes are not securities, the Court lacks subject matter jurisdiction under the Securities Acts over the SEC's claims of alleged wrongdoing in connection therewith. Therefore, the Court should dismiss all counts relating to the FPCM Notes. Alternatively, the Court should strike all allegations relating to FPCM Notes as immaterial, impertinent, or scandalous.

### A. The Shapiro Counts Must be Dismissed Because the Court Lacks Subject Matter Jurisdiction Over Them

A motion to dismiss a case pursuant to Fed.R.Civ.P. 12(b)(1) challenges a Federal court's subject matter jurisdiction to determine a dispute. *Douglas v. U.S.*, 814 F.3d 1268, 1278 (11th Cir. 2016). As this Court has stated, in determining whether the court has subject matter jurisdiction over a cause of action pursuant to Fed.R.Civ.P. 12(b)(1) the "court may be required to make a factual determination whether jurisdiction is proper." *Vujasin v. Chef Vincent, Inc.*, 2008 WL 4792049, at *1 (S.D. Fla. Oct. 31, 2008). In making that determination, the court is authorized to consider matters outside of the pleadings, including documents otherwise in the record, testimony, and affidavits. *Douglas*, 814 F.3d at 1278; *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (trial court is authorized to consider "matters outside the pleadings" when its subject matter jurisdiction is in question); *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) ("For purposes of Rule 12(b)(1) review for a factual attach on jurisdiction . . . the district court was permitted to consider extrinsic documents, including all of the documents in the record here."). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence,* 919 F.2d at 1529*; Vujasin*, 2008 WL 4792049, *1-2 ("When adjudication a motion to dismiss for lack of subject matter jurisdiction . . . [courts] the latitude to assess the facts of [the] case to decide the issue of jurisdiction.").

The SEC asserts that the Court has federal question jurisdiction over the Shapiro Counts pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)]. Complaint, ¶ 38. Those statutes provide Federal courts subject matter jurisdiction over violations of the Securities Act and Exchange Act, respectively. To invoke a court's jurisdiction under the Securities Acts, there must be some malfeasance related to a "security." *See, e.g., Vujasin*, 2008 WL 4792049, at *2 ("To decide whether this cases arises under federal law [and that the Court has subject matter jurisdiction over the case], I must first decide whether [the subject transactions] involve[d] *securities* . . .") (emphasis supplied).

In its Complaint, the SEC erroneously assumes that the FPCM Notes are "securities." Apart from the Securities Acts, the SEC has not asserted any alternative basis

for this Court's subject matter jurisdiction over the Shapiro Counts.  Since the FPCM Notes are not "securities," the Court lacks subject matter jurisdiction to determine whether Mr. Shapiro is liable for any damages relating to (mis)use of the FPCM Notes.

### 1. "Securities" Are Assigned a Specific Meaning

Section 2(a)(1) of the Securities Act and Section 3(a)(1) of the Exchange Act define "security" to include "notes."  However, in enacting the Securities Acts, Congress did not intend to provide a broad federal remedy for all fraud.  *See Marine Bank v. Weaver*, 455 U.S. 551, 556 (1982).  The Supreme Court has repeatedly held that the test to be utilized in determining whether an instrument qualifies as a "security" is "what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect."  *Marine Bank*, 455 U.S. at 556 (citations omitted).

In *Reves*, the Supreme Court observed that while common stock, by its nature, is an investment and consequently, the "quintessence of a security," the same simply cannot be said of notes, which are used in a variety of settings, not all of which involve investments. 494 U.S. at 62.  Thus, the term "note" should not be interpreted to mean literally "any note," but must be understood against the backdrop of what Congress was attempting to accomplish in enacting the Securities Acts (i.e., regulating investments).  *Id.* at 56.

The *Reves* Court held that while a "note" is presumed to be a security under the Securities Acts, certain types of instruments are excluded from the definition of a security as a matter of law.  They include: notes delivered in consumer financing; notes secured by a home mortgage; short-term notes secured by a lien on a small business or some of its assets; a note evidencing a character loan to a bank customer; short-term notes secured by an assignment of accounts receivable; a note which simply formalizes an open account debt incurred in the ordinary course of business; or notes evidencing loans by commercial banks for current operations.  *Reves*, 494 U.S. at 65.  In addition, any note bearing a strong "family resemblance" to any of these instrument is not a "security" and therefore not subject to federal securities law.  *Id*.

In order to determine whether a note bears a strong resemblance to one of the enumerated notes such that it may be considered a security, the Court set forth the following four factors: (1) "the motivations that would prompt a reasonable seller and buyer to enter

into" the instrument; (2) the "plan of distribution of the instrument;" (3) the reasonable expectations of the investing public;" and (4) "whether some factor such as the existence of another regulatory scheme significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." *Id*., at 66-67. Although some courts have treated this analysis as composed of separate elements, it is, in essence, a single inquiry. *See Robyn Meredith, Inc. v. Levy*, 440 F.Supp.2d 378, 384 (D.N.J. 2006) ("Failure to satisfy one of the factors is not dispositive since they are considered as a whole. However, if the note in question cannot satisfy any of the four factors, or if it is found on the list of the above enumerated "non-securities," then the note will not be classified a "security." (citations omitted)).

As described below, application of the *Reves* factors to the facts of this case reveals that the FPCM Notes are not "securities" and therefore not subject to federal securities laws.

### 2. The FPCM Notes Were Not Used to Fund Woodbridge's General Operations

The first *Reves* factor requires a court to "assess the motivations of the buyer and seller." Using a lender and a borrower as a proxy, if the borrower's purpose is to "[(i)] raise money for the general use of a business enterprise or to finance substantial investments *and* [(ii)] the [lender] is interested primarily in the profits the note is expected to generate, the instrument is likely to be a 'security.'" (emphasis supplied). On the other hand, "if the note is exchanged to . . . advance some . . . commercial or consumer purpose . . . the note is less sensibly described as a 'security.'" *Id.* at 66-67.

Woodbridge sold each FPCM Note to an FPCM Lender for the express purpose of financing a specific parcel of real property, and not for Woodbridge's general operations. Where, as here, the note is evidence of a loan between two parties, courts have refused to characterize the note as a "security." *See, e.g., Holloway v. Peat, Marwick, Mitchell & Co.,* 900 F.2d 1485, 1489, n.1 (10th Cir. 1990) (holding that the use of proceeds to finance specific assets or services rather than general financing indicates the instrument is not a security under the first *Reves* factor); *Eagle Trim, Inc. v. Eagle Pitcher Indus., Inc.*, 205 F.Supp.2d 746, 750-51 (E.D. Mich. 2002) (note executed to finance a specific asset advanced a commercial purpose and could not be considered a security).

Certainly, each FPCM Lender was likely motivated by interest that the FPCM Note would generate. However, the Supreme Court specifically described the two requirements of the first *Reves* factor in the conjunctive (using "and" instead of "or" with respect to buyers' and sellers' motivations) requiring both that the note be for a loan for general use *and* that the note be profit-oriented. Here, the first part is not met – Woodbridge's primary purpose in selling the FPCM Notes was not to fund its general, day-to-day operations. Accordingly, the first *Reves* factor supports a finding that the FPCM Notes are not "securities."

### 3. The Absence of a "Plan of Distribution" Demonstrates that the FPCM Notes are Not Securities

The second *Reves* factor examines the plan of distribution of the instrument "to determine whether it is an instrument in which there is common trading for speculation or investment.'" *Reves*, 494 U.S. at 67. This factor encompasses two distinct elements: (i) whether there is "common trading" of the FPCM Notes and, if so; (ii) whether such common trading is for "speculation of investment." Lack of transferability of the instruments undermines a finding that there is "common trading" of the notes. *See Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1539 (10th Cir. 1993); *see also Reves*, 494 U.S. at 68 (citing case law that found that "transferable" investments could be a "security"). Further, the number of buyers (lenders, in this case) of the instrument is not a significant factor in determining whether the instrument is "commonly traded." *See SEC v. Global Telecom Services, LLC*, 325 F. Supp. 2d 94 (D. Conn. 2004) (*Reves* plan of distribution factor met by sales of notes to five purchasers) *cf Glazer v. Abercrombie & Kent, Inc.*, 2009 WL 3060269, *8 (N.D. Ill. Sept. 22, 2009) (finding that even though defendant sold approximately 400 instruments, since the instruments could not be sold on the secondary market *Reves* factor favored defendant).

The FPCM Notes and collateral documents expressly prohibited the FPCM Lender from assigning or transferring the FPCM Notes and collateral documents. As such, there was absolutely *no trading* of the FPCM Notes. Additionally, each FPCM loan transaction was an independent transaction negotiated between Woodbridge and an FPCM Lender.[5] In

---

[5] The individualized, bespoke nature of the FPCM Notes also distinguishes them from secured notes that are definitively "securities." Consider, for example, the typical class of

view of the fact that *each* FPCM Note evidences a *single* transaction, it is not one of many security-like instruments that are offered to "a broad segment of the public." *See Reves*, 494 U.S. at 68; *see also Procter & Gamble*, 925 F. Supp. 1270, 1279 (S.D. Ohio 1996) (holding that notes that could not be sold or traded to another counterparty without the agreement of the defendant do not meet the second prong of the *Reves* test). This prong likewise supports a finding that the FPCM Notes are not securities.

### 4. The Public Could Not Have Reasonably Expected that the FPCM Notes Entitled them to a Portion of Woodbridge's Profits

The third *Reves* factor inquires whether the notes would be considered securities on the basis of the "reasonable expectations of the investing public," even when the economic realities of the particular instrument might suggest otherwise. In order to satisfy this factor, there must be some circumstance that would create a public perception that the FPCM Notes were investments akin to a sale of stock, rather than a note used in a borrower/lender setting. *See Eagle Trim*, 205 F.Supp.2d at 752 (finding that public could not reasonably perceive that promissory notes issued in a borrower/lender setting are "securities") ; *see also Procter & Gamble*, 925 F. Supp. at 1279 (noting that third prong of *Reves* test was not met because notes at issue were not traded on a national exchange and were not registered with a regulatory agency).

Here, there is no basis to conclude that the public would perceive the FPCM Notes as investment vehicles akin to stocks. In addition to the fact they were neither traded nor registered, the FPCM loan documents admonished the FPCM lenders that they have no right to any profit over the interest accruing on the note, including the excess interest earned

---

senior secured notes issued by a public operating company and listed on an exchange. For these notes, the issuer enters into a series of agreements (e.g., a pledge agreement, a collateral trust agreement, a security agreement) with a bank that serves as trustee or collateral agent on behalf of or for the benefit of the class of secured parties. These sets of arrangements – the trustee or agent acting on behalf of or for the benefit of the class of secured parties – enable and facilitate the distribution of the secured notes to the investing public and the trading on an exchange. Otherwise, if each purchaser had to perfect its security interest by having its name recorded on the land records in the jurisdiction in which the real property is located – such as is the case with the FPCM Notes and with the Borrower Loans – then the transaction costs would be such that the notes could not be listed on an exchange.

by Woodbridge from the Borrower.  The third *Reves* factor thus supports a finding that the FPCM Notes are not securities.

### 5. The FPCM Notes' Risk-Reducing Factors Neutralize the Need for Securities Protections

The fourth *Reves* factor inquires whether there is some security that significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary.  Courts have determined that risk-reducing factors such as the existence of collateral security supports a finding that the instrument in question is not a security.  *See, e.g.*. *Perrysburg Township v. City of Rossford, et al.*, 103 Ohio St. 3d 79, 84 (Ohio 2004) (finding that lack of collateral securing a promissory note weighted in favor of finding the note is a "security" under *Reves*).  The FPCM Notes are fully collateralized, and benefit from title insurance insuring the first position lien.  Additional protections that reduce the risk of the FPCM Notes include the protections afforded to secured lenders by the Uniform Commercial Code, the collateral assignment of the underlying Borrower Loan, and the right to pursue foreclosure, if necessary.  These protections to the FPCM Lenders compel the conclusion that the FPCM Notes are not securities.

### B. Alternatively, the Court Should Strike Allegations Relating to the Shapiro Counts as Immaterial, Impertinent, or Scandalous

Rule 12(f) permits the Court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter."  Fed.R.Civ.P. 12(f).  An "'immaterial' matter is that which has 'no essential or important relationship to the claim for relief . . .'" *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal citations omitted).  Relatedly, allegations are "impertinent" if they are neither "responsive nor relevant to the issues involved in the action and which could not be put in issue or be given in evidence between the parties." *Gilbert v. Eli Lilly & Co.*, 56 F.R.D. 116, 120 n.6 (D.P.R. 1972).  Scandalous material "'generally refers to any allegation that unnecessarily reflects on the moral character of an individual . . ." *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003).

The SEC's allegations relating to the FPCM Notes (the "**FPCM Allegations**") should be stricken they are immaterial, impertinent, and scandalous.  Underlying the various bases to strike the FPCM Allegations, is the fact that Court lacks subject matter jurisdiction to determine wrongdoing relating to the FPCM Notes because those notes are not "securities."  Thus, the SEC

cannot obtain relief relating to the FPCM Allegations.  The FPCM Allegations are "immaterial" because, as plead, the Court the Court cannot fashion relief for the alleged wrongdoing relating to the FPCM Notes.  The FPCM Allegations are "impertinent" because, as the alleged wrongdoing in connection with the FPCM Notes cannot form a basis for the relief in this action, the SEC cannot introduce evidence relating to the FPCM Notes at trial.  *See* Fed.R.Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action") and 402 ". . .Irrelevant evidence is not admissible.").  Finally, since the Court cannot fashion the SEC's sought relief relating to the FPCM Notes, the FPCM Allegations are "scandalous" because they serve no purpose other than to prejudice and poorly reflect on Mr. Shapiro's bad character.  For any of the foregoing reasons, the Court should strike the FPCM Allegations from the Complaint.

## CONCLUSION

The FPCM Notes are similar to the notes that the Supreme Court recognized as not being "securities," particularly promissory notes secured by a mortgage on a home. Applying the *Reves* test confirms this conclusion, as the motivations of the parties are commercial in nature; the FPCM Notes were negotiated one-on-one and there is no common trading or distribution of them; the public's reasonable perception of the Notes are that they are lending transactions secured by a first position lien that do not entitle them to any additional portion of Woodbridge's profits; and safeguards, including collateralization, title insurance, Uniform Commercial Code protections, and foreclosure rights, mitigate the risks for FPCM Lenders.  Because the FPCM Notes are not "securities," the Court lacks subject matter jurisdiction to adjudicate the claims asserted against Mr. Shapiro.

**WHEREFORE**, Mr. Shapiro respectfully requests an Order of the Court (i) dismissing the claims against him to the extent they rely on the FPCM Notes, or, alternatively, (ii) striking all allegations relating to FPCM Notes from the Complaint, and (iii) for all further relief that the Court deems just and equitable.

Dated:  February 20, 2018

Respectfully submitted:

By: */s/ Ryan D. O'Quinn*
Ryan D. O'Quinn (FBN: 513857)
ryan.oquinn@dlapiper.com
Ardith Bronson (FBN: 423025)
Ardith.bronson@dlapiper.com
Maia Sevilla-Sharon (FBN: 123929)
Maia.sevillasharon@dlapiper.com
Elan A. Gershoni (FBN: 95969)
DLA PIPER LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone:    305.423.8500
Facsimile:    305.437.8131

*Attorney for the Defendant Robert H. Shapiro*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on February 20, 2018, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                */s/ Ryan D. O'Quinn*
                Ryan D. O'Quinn