**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 17-24624-CIV-COOKE/GOODMAN**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ROBERT H. SHAPIRO, et al.,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

**PLAINTIFF'S RESPONSE TO ROBERT H. SHAPIRO'S MOTION TO STRIKE**
**PRAYER FOR DISGORGEMENT IN COMPLAINT [DE 103]**

### I.  INTRODUCTION

Defendant, Robert Shapiro's Motion to Strike the Prayer for Disgorgement ("Motion") is bereft of any merit and should be denied.[1]  Shapiro's argument seeks to further aggrieve the thousands of investors who stand to lose hundreds of millions of dollars at the hands of Shapiro, his trust, and web of limited liability companies.  Shapiro argues he should escape liability to disgorge the millions of dollars of investor money that he and his family misused while living in the lap of luxury.  While his argument is equal parts disingenuous and farcical, it should come as no surprise given Shapiro's evident lack of appreciation for the gravity of his actions here.  The Court has the unequivocal authority to, and absolutely should impose an award of disgorgement against Shapiro and his trust in this case.  Indeed, Shapiro's argument that *Kokesh v. SEC,* 137 S.

_____

[1] RS Trust has presumably attempted to file a Notice of Joinder to Shapiro's Motion.  [DE 116, 117], thus this Response addresses RS Trust's position as well.

Ct. 1635 (2017), somehow invalidates the Commission's claim for disgorgement is nonsensical and has been roundly rejected by each and every court which has faced a similar argument.[2]

## II. <u>ARGUMENT</u>

### A. The Court has Authority to Order Disgorgement

#### 1. The Court may Exercise its Equitable Authority to Order Disgorgement

Congress has authorized the Commission to bring civil injunctive actions, and courts have long understood that this authorization includes broad discretion to order a wide variety of ancillary relief, *SEC v. First Fin. Gr. of Texas*, 645 F.2d 429, 438 (5th Cir. 1981), including preventing unjust enrichment by requiring wrongdoers to disgorge profits made in violation of the securities laws. *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978).[3]   Courts have held that such legislative grants of equitable authority "to enjoin" statutory violations encompass the power to enter a decree compelling a defendant "to disgorge profits . . . acquired in violation" of the relevant statutory provisions. *Porter v. Warner Holding Co.*, 328 U.S. 395, 398-99 (1946); *see also FTC v. Bronson Partners, LLC*, 654 F.3d 359, 367 (2d Cir. 2011) ("'[T]he comprehensiveness of [a district court's] equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command'") (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291 (1960)).

In addition, courts have correctly recognized that Congress not only authorized disgorgement pursuant to the court's equitable injunctive authority, but also in Section 21(d)(5) of the Securities Exchange Act of 1934 ("Exchange Act"), which empowers courts to grant "any

---

[2] Shapiro's arguments regarding Kokesh mirror those in his Motion to Dissolve or Modify Asset Freeze [DE 92]. The Commission's response is at DE 107.  Shapiro did not file a reply.

[3] All decisions of the Fifth Circuit entered before October 1, 1981 have been adopted by the Eleventh Circuit as binding precedent. *Bonner v. City of Prichard*, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc).  The Fifth Circuit's *First Financial* decision was handed down on May 20, 1981. *SEC v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir. 1981).

equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C § 78u(d)(5); *see, e.g.*, *SEC v. Mantria Corp.*, 2012 WL 3778286 (D. Colo. Aug. 30, 2012).[4]

Consistent with these settled principles, long-standing and controlling Eleventh Circuit precedent establishes that "[d]isgorgement is an equitable remedy intended to prevent unjust enrichment." *SEC v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014) (citing *SEC v. Yun*, 327 F.3d 1263, 1269 n.10 (11th Cir. 2003)); *see also SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 n.6 (11th Cir. 2005) (finding disgorgement an equitable remedy available in Commission actions); *SEC v. Calvo*, 378 F.3d 1211, 1217-18 (11th Cir. 2004) (stating that "[t]he SEC is entitled to disgorgement . . ." to vindicate the public's rights and interests).[5]

Disgorgement's "emphasis on public protection, as opposed to simple compensatory relief" is what "illustrates the equitable nature of the remedy." *SEC v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006). Because disgorgement is not compensatory, it "might be [ordered] for an amount more *or less* than that required to make the victims whole"—either way, it is "an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs." *Huffman*, 996 F.2d at 802 (emphasis added); *see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods. LLC*, 137 S. Ct. 954, 964 (2017) (distinguishing between legal damages and "the equitable remedy of accounting" by noting that "[t]he remedy of damages seeks to

---

[4] *See also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1978 (2014) ("disgorgement of unjust gains" is "equitable relief"); *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998) ("[W]e have characterized as equitable … actions for disgorgement of improper profits"); *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 250 (2000) (holding that a statute's provision allowing "appropriate equitable relief" meant that plaintiffs could maintain an action for "disgorgement of proceeds"); *Tull v. United States*, 481 U.S. 412, 424 (1987) (noting that "disgorgement of improper profits" is "traditionally considered an equitable remedy").

[5] Every other circuit to address the issue has held the same. *See, e.g.*, *SEC v. Happ*, 392 F.3d 12, 31 (1st Cir. 2004); *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 102 (2d Cir. 1978); *SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997); *SEC v. Huffman*, 996 F.2d 800, 802-04 (5th Cir. 1993); *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985); *SEC v. Lipson*, 278 F.3d 656, 662-63 (7th Cir. 2002); *SEC v. Ridenour*, 913 F.2d 515, 517 (8th Cir. 1990); *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993); *SEC v. Maxxon, Inc.*, 465 F.3d 1174, 1179 (10th Cir. 2006); *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989).

compensate the victim for its loss, whereas the remedy of an accounting . . . sought *disgorgement* of ill-gotten profits") (emphasis added).  Indeed, courts' authority to order equitable relief is *enhanced*, not diminished, when the government is the plaintiff and thus the broader public interest is implicated.  *Cavanagh*, 445 F.3d at 118, n.29.  *See also Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 15 (1942) ("Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved").

### 2. Numerous Provisions of the Securities Laws Reflect Congress's Understanding and Expectation that Courts Award Disgorgement as an Equitable Remedy in Commission Actions

Shapiro's contention that disgorgement has no statutory support is entirely unfounded. (Motion at 4).  Disgorgement has not only "long been upheld as within the general equity powers granted to the district court," but "Congress has expressly endorsed that sanction." *SEC v. Palmisano*, 135 F.3d 860, 865 (2d Cir. 1998); *see also SEC v. DiBella*, 409 F. Supp. 2d 122, 132 (D. Conn. 2006).  In the 80 years since enacting the federal securities laws, Congress has spoken about the nature of the disgorgement remedy and has repeatedly amended the statutory scheme in ways that logically presuppose the existence of the disgorgement remedy.  *See, e.g.*, 15 U.S.C. §§ 7246(a), (c) (Sarbanes-Oxley Act of 2002 directing the Commission to study prior enforcement actions that have sought "disgorgements" as well as "methods to improve the collection rates for civil penalties and disgorgements"); 15 U.S.C. §§ 77t(f), 78u(d)(4) (prohibiting "funds disgorged" in SEC enforcement actions from being used to pay attorney's fees and expenses); 15 U.S.C. § 78t-1(b)(2) (providing defendants in insider trading cases the right to offset "damages" against "the amounts, if any, that such person may be required to disgorge" in Commission enforcement actions); 11 U.S.C. 523(a)(19) (excepting "disgorgement

payment[s]" ordered in securities enforcement actions from discharge in bankruptcy); *see also SEC v. Gemstar-TV Guide Int'l Inc.*, 401 F.3d 1031, 1047 (9th Cir. 2005) (en banc) (explaining that Congress has enacted legislation designed to effectuate the disgorgement remedy). This legislation, and Congress's retention of the language that courts have relied on in ordering disgorgement, is "convincing support for the conclusion that Congress accepted and ratified the unanimous holdings of the Courts of Appeals" endorsing the remedy. *Texas Dep't of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2520 (2015). Shapiro's position would have this Court render these enactments incoherent and meaningless, in derogation of the rule that a court's role is "to make sense rather than nonsense out of the *corpus juris*." *West Virginia Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 101 (1991).

Further, for example, when enacting the Remedies and Penny Stock Reform Act of 1990, Congress recognized that "[c]ourts in civil proceedings currently may order disgorgement under their equitable powers" and made clear that the newly authorized civil penalties in judicial proceedings would be imposed "*in addition to* the disgorgement of profits." S. Rep. 101-337 at 8 n.7, 10 (1990) (emphasis added); *see also generally* H.R. Rep. 101-616 (1990). This is one of numerous such statements Congress made in enacting various penalty provisions with the specific intent to *augment* available remedies beyond disgorgement by separately authorizing civil money penalties. *See e.g.* H.R. Rep. No. 355 at 8, 98th Cong., 1st Sess. 7 (1983) ("The new penalty may be used in addition to existing remedies" including "disgorgement of ill-gotten gains").[6]

---

[6] *See also* H.R. REP. 98-355, 1983 WL 25397 (amending Section 21(d) to allow for civil penalties of three-times ill-gotten gains for insider trading and recognizing that disgorgement "merely restores a defendant to his original position without extracting a real penalty for his illegal behavior."); S. REP. 101-337, 1990 WL 263550 (authorizing civil penalties in SEC actions and explaining that "[t]he SEC's primary statutory remedy for securities law violations has been the civil injunction, together with such ancillary relief (especially disgorgement of ill-gotten gains) as the

Even putting aside these repeated references in the legislative history, the structure of the securities laws confirms Congress's understanding that disgorgement and civil penalties are distinct. *See Tull v. United States*, 481 U.S. 412, 425 (1987) (remedies "separably authorized" in different "subsection[s]" are distinct). When Congress authorized civil penalties in the Remedies Act, it enacted a new subdivision separate from the Commission's injunctive authority and specified that seeking a civil penalty for a securities law violation is an independent basis for bringing an action in federal court. *Compare* Exchange Act Section 21(d)(1) (authorizing injunctive relief) with Exchange Act Section 21(d)(3) (authorizing civil penalties).

### 3. *Kokesh*'s Interpretation of the Statute of Limitations Provision Does not Undermine Decades of Disgorgement Precedent

In the face of unanimous precedent and statutory authority demonstrating that disgorgement is equitable relief available in Commission actions, Shapiro argues that courts lack authority after *Kokesh* to impose the remedy. But *Kokesh* made clear that it was addressing a narrow issue—whether disgorgement is a "penalty" "within the meaning" of the statute of limitations in 28 U.S.C. § 2462—and explicitly warned that "[n]othing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings." *Kokesh*, 137 S. Ct. at 1642 n.3.

Since *Kokesh*, every court to decide the issue has taken the Supreme Court at its word, refusing to read the Court's express limitation of the opinion's reach to mean the opposite of what it says. For instance, in rejecting the very argument Shapiro proposes here, Judge Altonaga in *SEC v. Brooks*, 2017 WL 3315137, at *6-8 (S.D. Fla. Aug. 3, 2017), stated that "*Kokesh*'s holding cannot be plucked from the statutory context that gives it force" and concluded that

---

courts find appropriate in a particular case. The Committee believes that injunctions against future violations, together with appropriate ancillary relief, continue to have an important deterrent effect").

disgorgement is "an equitable remedy" that is remedial for abatement purposes.  *See also Jammin Java*, 2017 WL 4286180, at *3, & n.3 (C.D. Cal. Sept. 14, 2017) (*Kokesh* does not disturb courts' authority to award disgorgement, correctly explaining that "*Kokesh* is best seen as a decision clarifying the statutory scope of § 2462, rather than one redefining the essential attributes of disgorgement"); *SEC v. Sample*, 2017 WL 5569873, at *2 (N.D. Tex. Nov. 20, 2017) (ordering disgorgement and holding that "*Kokesh* had no effect on how courts apply disgorgement principles"); *FTC v. J. Williams Enterprises, LLC*, 2017 WL 4776669 at * 1-2 (M.D. Fla. Oct. 23, 2017) ("The Defendants argue that the footnote in *Kokesh* could be read as an expression of doubt as to whether courts had [disgorgement] authority in SEC proceedings, but the Supreme Court's deliberate avoidance of this different, if potentially analogous, issue provides no basis for this Court to disregard decades of precedent").[7]

These decisions are consistent with courts' understanding that the word "penalty" is "a term of varying and uncertain meaning," *Life & Cas. Ins. Co. of Tenn. v. McCray*, 291 U.S. 566, 574-75 (1934), and thus a remedy may be punitive for some purposes, but not others. *See United States v. Ursery*, 518 U.S. 267, 279 (1996) (criticizing lower courts for interpreting Supreme Court decision holding that civil forfeiture is punishment for purposes of the Eighth Amendment as "accomplish[ing] [a] radical jurisprudential shift" regarding the nature of forfeiture for purposes of the Double Jeopardy clause).  And they are consistent with pre-*Kokesh* cases correctly recognizing that the characterization of a remedy for purposes of the statute of limitations in Section 2462 does not control how that remedy is characterized for other purposes. *See Krull v. SEC*, 248 F.3d 907, 914 & n.9 (9th Cir. 2001) (holding that earlier case that "only addressed whether the sanction imposed was a 'penalty'" under Section 2462 did not control

---

[7] *See also SEC v. Mapp*, 2017 WL 5230358, at *8 (E.D. Tex. Nov. 9, 2017); *FTC v. Directv, Inc.,* 2017 WL 3453376 (N.D. Cal. Aug 12, 2017).

whether equitable relief was substantively "punitive rather than remedial").[8]

Finally, Shapiro's request that the Court extend *Kokesh* beyond its terms is inconsistent with case law holding that the Eleventh Circuit will continue to follow its own precedent "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc." *In re Hubbard,* 803 F.3d 1298, 1306 (11th Cir. 2015) (quoting *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008)); *see also United States v. White*, 837 F.3d 1225, 1230-31 (11th Cir. 2016) (circuit precedent stands unless "the intervening Supreme Court decision . . . actually abrogate[s] or directly conflict[s] with, as opposed to merely weaken[s] the prior panel's holding.") (citation and quotation omitted).  District courts likewise should not anticipate that the Circuit will overrule its precedent.  *See Hubbard*, 803 F.3d at 1309 ("[C]ourts of this circuit are bound by the precedent of this circuit.); *see also Briscoe v. City of New Haven*, 654 F.3d 200, 205 (2d Cir. 2011) (holding that circuit precedent governing disparate-*impact* claims continued to govern notwithstanding Supreme Court dicta announced in a disparate-*treatment* suit); *Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910 (7th

---

[8] Indeed, the features that the *Kokesh* Court recognized as "hallmarks of a penalty" for limitations purposes are consistent with the features of equitable remedies like disgorgement and injunctions.  *Kokesh*, 137 S. Ct. at 1644 (describing the "hallmarks" as a sanction (1) imposed as a consequence of violating a public law, (2) which is intended to deter and (3) not necessarily intended to compensate).  First, it has been long established that equitable remedies such as disgorgement may be appropriately triggered by violations of public laws.  *See, e.g., Kansas v. Nebraska*, 135 S. Ct. 1042, 1053 (2015) ("[T]he Court may exercise its full [equitable] authority to remedy violations of and promote compliance with" a congressionally approved compact between states "so as to give complete effect to public law").  Second, it is well settled that equitable remedies operate to deter future violations.  *See, e.g., id.* at 1057 ("[A] disgorgement award appropriately reminds Nebraska of its legal obligations, deters future violations, and promotes the Compact's successful administration"); *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The historic injunctive process was designed to deter, not to punish").  Third, it is entirely consistent with the "equitable" nature of a remedy for it to be noncompensatory.  *See SCA Hygiene Prods.*, 137 S. Ct. at 964 ("The equitable remedy of an accounting, however, was not the same as damages.  The remedy of damages seeks to compensate … whereas the remedy of an accounting … sought disgorgement of ill-gotten profits").  In short, the Supreme Court has found each of the factors in *Kokesh* present when describing relief that it has characterized as equitable.  Therefore, nothing in *Kokesh* disturbs the case law applying those factors to hold disgorgement to be a proper equitable remedy.  *See, e.g., Cavanagh*, 445 F.3d at 118 (holding that disgorgement "prevent[s] wrongdoers from unjustly enriching themselves through violations, which has the effect of deterring subsequent fraud," and that "[t]he emphasis on public protection, as opposed to simple compensatory relief, illustrates the equitable nature of the remedy").

Cir. 1994) (district courts should not anticipate that courts of appeals will overrule their precedent). Therefore, because *Kokesh* expressly confined its decision to the meaning of Section 2462, the Court should continue to follow Eleventh Circuit precedent confirming the availability of disgorgement as an equitable remedy and ruling that asset freezes are "justified as a means of preserving funds" to be disgorged. *ETS Payphones*, 408 F.3d at 734.

### B. Shapiro's Argument that the Court Cannot Order Disgorgement is Unconvincing and Inconsistent With Precedent

Shapiro's own motion points out that *Kokesh* was addressing a narrow issue and that "[n]othing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings." (Motion at 5 citing *Kokesh*, 137 S. Ct. at 1642 n.3). The next sentence of that same footnote states that the "sole question" presented in *Kokesh* was "whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitations period." *Kokesh*, 137 S. Ct. at 1642 n.3. Shapiro's assertion that the Supreme Court's language somehow implied that disgorgement was not authorized is completely unfounded. In reality, as mentioned above, every court since *Kokesh* that has decided this issue has taken the Supreme Court at its word, and has refused to read footnote 3 to mean the opposite of what it says.

In an attempt to support his argument, Shapiro cites to *United States v. Parkinson*, 240 F.2d 918 (9th Cir. 1956). (Motion at 4). However, *Parkinson* did not address disgorgement under the federal securities laws, which the Ninth Circuit has repeatedly since recognized as valid. *See Gemstar*, 401 F.3d at 1047 ("Congress designed Section 1103 [of the Sarbanes-Oxley Act of 2002] to add necessary teeth to the Commission's ability to perform its mission. It ensures that recovery by way of disgorgement, etc., is effective rather than empty."). The court in *Gemstar* outlined the importance of disgorgement, stating that it "plays a central role in the

enforcement of the securities laws," and that "the deterrent effect of a Commission enforcement action would be *greatly undermined* if securities law violators were not required to disgorge illicit profits." *Id*. (citing to *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993)); *see also SEC v. Clark,* 915 F.2d 439, 453 (9th Cir. 1990); *SEC v. Randolph,* 736 F.2d 525, 529 (9th Cir. 1984).

Furthermore, the rationale in *Parkinson* was subsequently rejected by the Supreme Court. *See Mitchell v. Robert De Mario Jewelry, Inc.,*, 361 U.S. 288, 332 (1960) (holding that Fair Labor Standards Act ("FLSA") grant of authority to restrain violations also empowered courts to order reimbursement of wages lost by employees as a result of an FLSA violation). Several post-*Mitchell* cases have expressly recognized that *Parkinson* is no longer good law. *See United States v. Rx Depot, Inc.*, 438 F.3d 1052, 1062 (10th Cir. 2006); *United States v. Lane Labs-USA Inc.*, 427 F.3d 219, 233-36 (3d Cir. 2005); *United States v. Universal Mgmt. Servs., Inc.,* 191 F.3d 750, 764 (6th Cir. 1999); *ICC v. B&T Transportation Co.*, 613 F.2d 1182, 1184 (1st Cir. 1980).

Shapiro also attempts to bolster his argument by citing to the oral argument transcripts in *Kokesh.* (Motion at 5). Such a reference clearly has no precedential value and must be deemed irrelevant. *See FTC v. Credit Bureau Center, LLC*, 2018 WL 482076, *2 (N.D. Ill. Jan. 14, 2018) ("And although defendants point to questioning during oral argument of *Kokesh* before the Supreme Court that suggests some justices may question whether the securities laws confer authority for disgorgement and restitution, *it is rather reckless to contend that questions at oral argument render existing precedent infirm*") (emphasis added); *Fed. Trade Comm'n v. J. William Enterprises, LLC*, 2017 WL 4776669, at *2 (M.D. Fla. Oct. 23, 2017) (refusing to "deviate from Eleventh Circuit precedent and extend the logic of questions and comments made during oral argument in *Kokesh* to the facts at hand").

Shapiro's attempt to bolster his *Kokesh* argument by using *Parkinson* and referencing oral argument in *Kokesh* are unavailing, and his motion should therefore be denied.

## III.  CONCLUSION

Shapiro's motion is neither supported by law or fact.  His motion should be denied in its entirety.

Respectfully submitted,

Dated: March 6, 2018       By:       /s/ *Russell Koonin & Christine Nestor*
Russell Koonin & Christine Nestor
Senior Trial Counsel
kooninR@sec.gov; nestorc@sec.gov
FL Bar No.: 474479; FL Bar No. 597211
Telephone: (305) 982-6385; (305) 982-6367

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Ave., Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile:  (305) 536-4154

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM-ECF on all counsel or parties of record on the Service List below.

/s/ *Russell Koonin*
Russell Koonin, Esq.

11

## <u>SERVICE LIST</u>

Adam L. Schwartz, Esq.
aschwartz@homerbonner.com
Kevin P. Jacobs, Esq.
kjacobs@homerbonner.com
Homer Bonner Jacobs
1200 Four Seasons Tower, 1441 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 350-5116

Ryan Dwight O'Quinn, Esq.
Ryan.OQuinn@dlapiper.com
Elan Gershoni
Elan.gershoni@dlapiper.com
DLA Piper LLP (US)
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131
Telephone:  305.423.8500

Jeffrey E. Marcus, Esq.
jmarcus@mnrlawfirm.com
Michael A. Pineiro, Esq.
mpineiro@mnrlawfirm.com
Allison M. Green, Esq.
agreen@mnrlawfirm.com
Marcus Neiman & Rashbaum LLP
2 South Biscayne Boulevard, Suite 1750
Miami, Florida 33131
Telephone:  305.400.4262

Armando Rosquete, Esq.
Armando.rosquete@gmail.com
Armando Rosquete, P.A.
66 West Flagler Street, Suite 1000
Miami, Florida 33130
Telephone: 305.470.2060

Robert P. Charbonneau, Esq.
rpc@agentislaw.com
Matthew Petrie, Esq.
map@agentislaw.com
Agentis PLLC
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
Telephone: 305.722.2002