UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-24624-CIV-COOKE

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

vs.

ROBERT H. SHAPIRO,
WOODBRIDGE GROUP OF COMPANIES, LLC,
d/b/a WOODBRIDGE WEALTH,
RS PROTECTION TRUST,
WMF MANAGEMENT, LLC,
WOODBRIDGE STRUCTURED FUNDING, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 1, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 2, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 4, LLC,
WOODBRIDGE MORTGAGE COMMERCIAL BRIDGE LOAN FUND 1, LLC,
WOODBRIDGE MORTGAGE COMMERCIAL BRIDGE LOAN FUND 2, LLC,
144 WOODBRIDGE-AFFILIATED PROPERTY LIMITED
LIABILITY COMPANIES,
131 WOODBRIDGE-AFFILIATED HOLDING LIMITED
LIABILITY COMPANIES,

        Defendants, and

JERI SHAPIRO,
WOODBRIDGE REALTY OF COLORADO, LLC,
d/b/a WOODBRIDGE REALTY UNLIMITED,
WOODBRIDGE LUXURY HOMES OF CALIFORNIA, INC.,
d/b/a MERCER VINE, INC.,
RIVERDALE FUNDING, LLC,
SCHWARTZ MEDIA BUYING COMPANY, LLC,
WFS HOLDING CO., LLC

        Relief Defendants.

_____

**DEFENDANT ROBERT H. SHAPIRO'S REPLY IN FURTHER SUPPORT OF
MOTION TO STRIKE PRAYER FOR DISGORGEMENT IN COMPLAINT**

1

Rather than acknowledge the significance of the Supreme Court's decision in *Kokesh v. S.E.C.* and its implications vis-à-vis the continued viability of the disgorgement penalty, the SEC dismisses Shapiro's argument as untenable. Opposition Brief, at 1. The SEC's efforts to minimize the import of *Kokesh* and to limit its application to the narrow factual context in which it arose must fail. Not only is the SEC's position inconsistent with the Supreme Court's reasoning, but also with other recent federal case law, which follows *Kokesh*.

**I.    There is No Legal Basis To Order Disgorgement**

  **A.**  *Disgorgement Is a Penalty*

The SEC's continued mischaracterization of the disgorgement remedy as "equitable" in nature is unsupportable. Notwithstanding the Supreme Court's clear reasoning, the SEC's opposition brief is replete with references to disgorgement as an equitable remedy. The majority of the case law SEC cites in support of its position precedes *Kokesh*. *See, e.g.*, Opposition Brief at 3. Shapiro respectfully submits that the continued vitality of such case law is questionable. Contrary to the SEC's representations, the Supreme Court did not simply address whether disgorgement constitutes a penalty in a specific factual context. The Court's reasoning went much further, explaining the meaning of "penalty":

> A 'penalty' is a punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws. This definition gives rise to two principles. First, whether a sanction represents a penalty turns in part on whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual. Although statutes creating private causes of action against wrongdoers may appear—or even be labeled—penal, in many cases neither the liability imposed nor the remedy given is strictly penal. This is because penal laws, strictly and properly, are those imposing punishment for an offense committed against

> the State. Second, a pecuniary sanction operates as a penalty only if it is sought for the purpose of punishment, and to deter others from offending in like manner—as opposed to compensating a victim for his loss.

*Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1642 (2017) (citations omitted). The Supreme Court specifically rejected the SEC's argument, advanced here, that disgorgement is remedial because it restores the *status quo*, noting that "SEC disgorgement sometimes exceeds the profits gained as a result of the violation," thus leaving the defendant "worse off." *Id.* at 1645. The stated justification for this practice, the Court noted, has been "to deter others' violations of the securities laws" rather than to prevent unjust enrichment. *Id.* The very purpose of the sanction, the Supreme Court held, is to punish rather than to compensate. *See id.* ("A civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.").

### B. *Disgorgement Is Not a Statutorily-Authorized Remedy*

The Supreme Court in *Kokesh* recognized that its ruling disturbed the foundation for court awards of disgorgement in SEC enforcement actions. Although the Court was specifically called upon to decide the applicability of the statute of limitations for disgorgement, its reasoning was not so limited. The Court's concern about the absence of authority to order disgorgement became evident during oral argument. As the following exchanges from the oral argument transcript reveal, several justices questioned whether the SEC may obtain disgorgement at all:

> **Justice Kennedy**: Is it clear that the district court has statutory authority to do this? I understand that in cases where the aggrieved party is before the court, there can be equitable remedies under State and law and so forth to afford restitution, at least. Is there specific statutory authority that makes it clear that the district court can entertain this remedy? Transcript of Oral Argument ("Tr.") at 7-8.

3

>**Mr. Unikowsky**: There's no specific statutory authority. [. . .]. Tr. at 8.
>
>**Justice Sotomayor:** Can we go back to the authority? 78u, which is the only authority I can imagine, says [a] court may grant any equitable relief that may be appropriate or necessary for the benefit of investors. If they're not doing restitution, how could that be the basis for disgorgement? Tr. at 9.
>
>**Mr. Unikowsky**: . . . We do argue at some length in our brief that it doesn't genuinely count as an equitable form of relief. Tr. at 9.
>
>**Chief Justice John Roberts**: One reason we have this problem is that the SEC devised this remedy or relied on this remedy without any support from Congress. If Congress had provided, here's a disgorgement remedy, you would expect them, as they typically do, to say, here's a statute of limitation that goes with it…. Now, it was a concern – you know, Chief Justice Marshall said it was utterly repugnant to the genius of our laws to have a penalty remedy without limit. [. . . ] And . . . the concern, it seems to me, is multiplied when it's not only no limitation, but it's something that the government kind of devised on its own. Tr. at 31-32.

The Court's pointed questions reveal not only a focus on the applicability of the 5-year statute of limitations, but a more profound unease with the fact that both the SEC has for decades sought and secured disgorgement awards without any statutory authority.

Predictably, the SEC now seizes on Footnote 3 of the *Kokesh* decision, which states "[n]thing in this opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings or on whether courts have properly applied disgorgement principles in this context." Opposition Brief, at 6. Yet as observers have noted, "[in] the Supreme Court's vernacular, that is a strong signal that the court doubts whether the SEC may obtain disgorgement at all." Chad M. Clamage, Esq., Mayer Brown LLP, Supreme Court's SEC Decision Could Limit Other Federal Agencies, WESTLAW JOURNAL DERIVATIVES at 3 (Jun. 29, 2017). Contrary to the SEC's representations that courts have unanimously interpreted the *Kokesh* holding to be limited to statute of limitations context, in the brief time period

4

following the decision, courts have already begun to recognize the threat posed by *Kokesh* to disgorgement in *any* context. *See, e.g., United States v. Latorella*, No. 10-10388, 2017 WL 2785413, at *4, n.4 (D. Mass. Jun. 27, 2017) (declining to award disgorgement in a parallel SEC enforcement action on other grounds, but noting the degree that such a remedy is available in a civil enforcement action is an open question); *see also SEC v. Amerindo Inv. Advisors Inc.*, No. 05-5231, 2017 WL 3017504, at *8 (S.D.N.Y. July 14, 2017) (noting it relied on precedent which may have been abrogated by *Kokesh*).

The SEC's pronouncement that "Since *Kokesh*, every court to decide the issue [has refused] to read the Court's express limitation of the opinion's reach to mean the opposite of what it says" is simply wrong. *In Saad v. SEC*, 873 F.3d 297, 304 (2017), the Court of Appeals for the D.C. Circuit was called upon to determine whether a FINRA expulsion was "remedial" or "punitive" under *Kokesh*. The D.C. Circuit remanded the case to the SEC to address the relevance of the Supreme Court's decision in *Kokesh* on whether a FINRA lifetime ban is "impermissibly punitive." *Id.* at 304. In a concurring opinion, Judge Cavanaugh offered an opinion of *Kokesh* which directly contradicts the SEC's stated position in this case:

> As I see it, the *Kokesh* analysis matters here. The Supreme Court's reasoning in *Kokesh* was *not limited to the specific statute at issue there*. Like disgorgement paid to the Government, expulsion or suspension of a securities broker does not provide anything to the victims to make them whole or to remedy their losses. Therefore, in light of the Supreme Court's analysis in *Kokesh*, expulsion or suspension of a securities broker is a penalty, not a remedy.

*Id.*, 873 F.3d at 305 (emphasis added).  Other courts are likely to follow suit.

In a final effort to argue that *Kokesh* is irrelevant to the issues before this Court, the SEC argues that the term "penalty" has more than one meaning and that a remedy may be punitive for some purposes but not others. Opposition Brief, at 7.  The argument makes little sense in light of the Supreme Court's pronouncement that the fact that a remedy may serve compensatory goals does not diminish its character as a penalty. *Kokesh*, at 1645 ("True, disgorgement serves compensatory goals in some cases; however, we have emphasized the fact that sanctions frequently serve more than one purpose.  A civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment.") (citations omitted).  Indeed, it would defy logic to suggest that disgorgement is a penalty sufficient to warrant application of a statute of limitation, while not sufficiently a penalty to require statutory authority.

As noted in the opening brief, a penalty cannot be ordered without authority. Notwithstanding the SEC's efforts to discredit *United States v. Parkinson*, 240 F.2d 918, 922 (9th Cir. 1956), the principle for which it was cited – namely, that penalties should be imposed with utmost care – remains sound and consistent with Supreme Court precedent.  *See, e.g.*, *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2626–27 (2008) ("[A] penalty should be reasonably predictable in its severity, so that even Justice Holmes's 'bad man' can look ahead with some ability to know what the stakes are in choosing one course of action or another.  And when the bad man's counterparts turn up from time to time, the penalty scheme they face ought to threaten them with a fair probability of suffering in like degree when they wreak like damage. The common sense

6

of justice could surely bar penalties that reasonable people would think excessive for the harm caused in the circumstances.").[1]

Because disgorgement is a penalty, the SEC cannot appeal to the Court's inherent equity powers to order it. There is no legal basis for an order of disgorgement against Shapiro.

## II.  Conclusion

The legal issues which the Supreme Court considered in *Kokesh* are at the heart of this case. The SEC has offered no legitimate basis to disregard the Supreme Court's reasoning. Accordingly, Shapiro respectfully requests that the Court strike the SEC's prayer for disgorgement and enter any further relief that the Court deems just and equitable.

---

[1] Had Congress intended to make disgorgement available as a remedy for violations of securities laws, it certainly could have done so, as it has in other contexts. Disgorgement is available as a statutory remedy for trademark violations under the Lanham Act. 15 U.S.C. § 1117(a) ("plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover . . . defendant's profits"). Disgorgement is also available under 17 U.S.C. § 504(b) as a statutory remedy for victims of copyright infringement: a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).

Dated:  March 13, 2018                                     Respectfully submitted:

                                                    By: /s/ Ryan D. O'Quinn
Ryan D. O'Quinn (FBN: 513857)
ryan.oquinn@dlapiper.com
Ardith Bronson (FBN: 423025)
ardith.bronson@dlapiper.com
Maia Sevilla-Sharon (FBN: 123929)
maia.sevillasharon@dlapiper.com
Elan A. Gershoni (FBN: 95969)
elan.gershoni@dlapiper.com
DLA PIPER LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone:   305.423.8500
Facsimile:    305.437.8131

*Attorney for the Defendant Robert H. Shapiro*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 13, 2018, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                    /s/ Ryan D. O'Quinn
                                                    Ryan D. O'Quinn

EAST\152114241.2