UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-24624-CIV-COOKE

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

vs.

ROBERT H. SHAPIRO,
WOODBRIDGE GROUP OF COMPANIES, LLC,
d/b/a WOODBRIDGE WEALTH,
RS PROTECTION TRUST,
WMF MANAGEMENT, LLC,
WOODBRIDGE STRUCTURED FUNDING, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 1, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 2, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC,
WOODBRIDGE MORTGAGE INVESTMENT FUND 4, LLC,
WOODBRIDGE MORTGAGE COMMERCIAL BRIDGE LOAN FUND 1, LLC,
WOODBRIDGE MORTGAGE COMMERCIAL BRIDGE LOAN FUND 2, LLC,
144 WOODBRIDGE-AFFILIATED PROPERTY LIMITED
LIABILITY COMPANIES,
131 WOODBRIDGE-AFFILIATED HOLDING LIMITED
LIABILITY COMPANIES,

        Defendants, and

JERI SHAPIRO,
WOODBRIDGE REALTY OF COLORADO, LLC,
d/b/a WOODBRIDGE REALTY UNLIMITED,
WOODBRIDGE LUXURY HOMES OF CALIFORNIA, INC.,
d/b/a MERCER VINE, INC.,
RIVERDALE FUNDING, LLC,
SCHWARTZ MEDIA BUYING COMPANY, LLC,
WFS HOLDING CO., LLC

        Relief Defendants.

_____

**DEFENDANT ROBERT H. SHAPIRO'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS CAUSES OF ACTION BASED ON FIRST POSITION COMMERCIAL MORTGAGES FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, TO STRIKE ALLEGATIONS RELATING TO FIRST POSITION COMMERCIAL MORTGAGES**

Over half of the SEC's brief in opposition (the "Opposition") to Defendant Robert H. Shapiro's Motion to Dismiss Causes of Action Based on First Position Commercial Mortgages for Lack of Subject Matter Jurisdiction (the "Motion") is spent arguing that the Motion was improperly styled as subject to Fed. R. Civ. P. 12(b)(1) when it should have been styled as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The SEC's purpose is to bind the Court to the allegations of the Complaint. The argument has no merit, as courts have frequently considered similar challenges as jurisdictional challenges pursuant to Rule 12(b)(1). Since the First Position Commercial Notes ("FPCM Notes") at issue in this action are not "securities" within the meaning of the Securities Act of 1933 and Securities Exchange Act of 1934 (the "Securities Acts"), the Court lacks jurisdiction to adjudicate any liability relating to the FCPM Notes. For the reasons stated in the Motion and further addressed herein, Counts One through Eight of the Complaint (the "Shapiro Counts") should be dismissed or alternatively, stricken.

### I.      Rule 12(b)(1) Governs the Motion

The bulk of the SEC's opposition is devoted to arguing that Rule 12(b)(6), rather than 12(b)(1), governs the Motion. The SEC cites a single case – *U.S. C.F.T.C. v. Aliaga* – a case that has nothing to do with securities, the Securities Acts, or the SEC, to support this dubious position. By contrast, several courts who have considered the kind of challenge Shapiro has advanced here have analyzed them pursuant to Rule 12(b)(1) and were not bound by the allegations of the Complaint. Neither is this Court.

For instance, in *Meridian Software Funding, Inc. v. Pansophic Systems, Inc.*, No. 91 C 6055, 1992 WL 107310, at *1 (N.D. Ill. 1992), the defendant filed a motion to dismiss the complaint for lack of subject matter jurisdiction, contending that the letter agreement which formed the basis of the plaintiff's claim that the defendant violated the Exchange Act was not a "security" within the meaning of the Act. The Court, after reviewing the motion pursuant to Rule 12(b)(1) and applying the *Reves* test, dismissed the complaint for lack of subject matter jurisdiction. *See id.* at *4. Other courts have similarly evaluated this type of jurisdictional challenge pursuant to Rule 12(b)(1). *See, e.g.*, *Tannebaum v. Clark*, No. 88 C 7312, 1991 WL 39671, at *5 (N.D. Ill. Mar. 18, 1991); *Roer v. Oxbridge Inc.*, 198 F. Supp. 2d 212, 216 (E.D.N.Y. 2001); *BRS Assocs., L.P. v. Dansker*, 246 B.R. 755, 764 (S.D.N.Y. 2000).

The SEC has failed to cite *any* binding authority compelling the Court to consider the Motion pursuant to Rule 12(b)(6). Since the Motion was properly brought pursuant to Rule 12(b)(1), the Court is free to consider evidence outside the four corners of the Complaint in reaching its decision.

## II. The FCPM Notes Are Not "Securities"

Irrespective of the procedural rule employed by the Court to evaluate the Motion, the Shapiro Counts should be dismissed or stricken because their only possible jurisdictional "hook" – the purported status of the FPCM Notes as "securities" – is based on the SEC's misapplication of *Reves v. Ernst & Young*, 494 U.S. 56 (1990).

As discussed in the Motion, whether a note bears a strong resemblance to a note which qualifies as a "security under *Reves* depends on (1) "the motivations that would prompt a reasonable seller and buyer to enter" into the transaction; (2) "the 'plan of

distribution' of the instrument;" (3) "the reasonable expectations of the investing public;" and (4) "whether some factor . . . significantly reduces the risk of the instrument, thereby rendering application of the Securities Acts unnecessary." *Reves*, 494 U.S. at 66-67. Application of each factor supports a finding that the FPCM Notes were not securities.

Regarding the first element, which inquires as to the motivation of the parties, *Reves* states:

> If the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a "security." If the note is exchanged to . . . correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose ... the note is less sensibly described as a "security."

*Id.* at 66. Each FCPM Note was sold to a lender for the purpose of financing a specific parcel of property, not for the purpose of funding Woodbridge's business operations. Contrary to the SEC's contention, the fact that the buyers may have been motivated by a desire for profit does not render the note a security. *See, e.g.*, *Asset Prot. Plans, Inc. v. Oppenheimer & Co., Inc.*, No. 8:11-cv-440-T-23MAP, 2011 WL 2533839, at *3 (M.D. Fla. June 27, 2011) ("Even if APP was motivated by profit, the notes are not necessarily a security."); *see also Bass v. Janney Montgomery Scott, Inc.*, 210 F.3d 577, 585 (6th Cir. 2000) (holding that when motivation prompting the transaction on one end "is one typical in commercial loan transactions, that is, an effort to raise interim funds to launch a new enterprise," but from the other side "looks more like a transaction for profit," the first *Reves* factor favors neither side).

Nor were the Notes and Mortgage in this matter "instruments" in which there is "common trading for speculation or investment," as tested by the second factor. *Reves*,

494 U.S. at 68.  In the absence of common trading, the SEC's focus on the number of purchasers (*see* Opposition, at 11) misses the mark.  For example, in *Glazer v. Abercrombie & Kent, Inc.*, No. 07 C 2284, 2009 WL 3060269, at *8 (N.D. Ill. Sept. 22, 2009), the sale of 400 instruments was deemed insufficient to satisfy the second *Reves* element because the instruments "could not be sold on the secondary market." *Id.*; *see also Procter & Gamble Co. v. Bankers Trust Co.*, 925 F. Supp. 1270, 1279 (S.D. Ohio 1996) (noting that second *Reves* prong was not met because "[the] swaps were customized for Procter & Gamble [and] they could not be sold or traded to another counterparty without the agreement of [the seller].").  Here, the FPCM Notes by their own terms prohibited transfer or assignment of the Notes, eliminating any and all chance of trading or distribution.

With respect to the third factor, the SEC simply states that the analysis is "quite similar to that required by the first *Reves* factor" and that the Woodbridge characterization of the Notes as "conservative" and "secure" suggests they are securities. Opposition, at 12.  Courts, however, have concluded otherwise.  For example, referring to the Supreme Court's analysis distinguishing notes from common stocks in *Reves*, the court in *Eagle Trim, Inc. v. Eagle-Picher Industries, Inc.*, 205 F. Supp. 2d 746, 752 (E.D. Mich. 2002) was not persuaded by the plaintiffs' argument that a "note" was an investment similar to a sale of stock.  The court thus concluded that the third *Reves* prong did not favor the finding that the note at issue was a security.  *Id*.

The fourth and final prong of the *Reves* test inquires as to whether there are any risk-reducing factors indicating that the notes are not securities.  *Reves*, 494 U.S. at 69. Contrary to the SEC's contention that "Shapiro cannot possibly allege there are risk-

reducing factors," (Opposition, at 12), courts have frequently held that the existence of collateral is significant as a risk-reducing factor. *See, e.g.*, *Bass*, 210 F.3d at 585; *Eagle Trim*, 205 F. Supp. 2d at 753. In addition to other protections addressed in the Motion, the FCPM Notes are fully collateralized and secured by title insurance. Accordingly, the fourth *Reves* prong also supports the conclusion that the FPCM Notes are not securities.

**III.   The FPCM Notes Are Not "Investment Contracts"**

In another effort to persuade the Court that the FPCM Notes are securities, the SEC attempts to cast them as "investment contracts," as coined in the Supreme Court's decision in *SEC v. v. W.J. Howey Co.*, 328 U.S. 293 (1946). Even if the Court were to apply the *Howey* Test, which is unwarranted because the *Reves* test provides the more specific framework relevant to notes in particular, the outcome is unchanged.

The three elements of an investment contract are: (1) "an investment of money;" (2) "in a common enterprise;" (3) "with profits to come solely from the efforts of others." *Howey*, 328 U.S. at 298. Neither the second nor the third elements are met in this case. As discussed in the Motion, each FPCM loan was an independent transaction negotiated between Woodbridge and an FPCM Lender and not a "common enterprise." In addition, the Lender did not rely on the expertise or skill of Woodbridge. Rather, any profit would be the result of the appreciation of the real estate that was the subject of the note. *See, e.g.*, *Braniff Airways, Inc. v. LTV Corp.*, 479 F. Supp. 1279, 1286 (N.D. Tex. 1979) (holding that investment that was not premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others did not qualify as a security under *Howey*); *see also Noa v. Key Futures, Inc.*, 638 F.2d 77, 79 (9th Cir. 1980) (holding that profits to the investor depended upon the fluctuations of the silver market,

not the managerial efforts of the promotor, and therefore *Howey* test was not met); *Svets v. Osborne Precious Metals Co., Inc.*, No. C 92-0357 BAC, 1992 WL 281413, at *2 (N.D. Cal. June 8, 1992) ("[O]nce the plaintiffs made their investment, their profits depended upon the fluctuations of the market, not the managerial effort of defendants. Thus, plaintiffs have failed to meet both the second and third prongs of the *Howey* test, and the contracts at issue are not security investments for purposes of the Securities Acts.").

Since the FPCM Notes are not "investment contracts" under *Howey* and its progeny, the Shapiro Counts should be dismissed.

## IV. Conclusion

For these reasons, Shapiro respectfully requests that the Court dismiss Counts One through Eight of the Complaint and enter any further relief that the Court deems just and equitable.

Dated: March 19, 2018

Respectfully submitted:

By: */s/ Ryan D. O'Quinn*
Ryan D. O'Quinn (FBN: 513857)
ryan.oquinn@dlapiper.com
Ardith Bronson (FBN: 423025)
ardith.bronson@dlapiper.com
Maia Sevilla-Sharon (FBN: 123929)
maia.sevillasharon@dlapiper.com
Elan A. Gershoni (FBN: 95969)
elan.gershoni@dlapiper.com
DLA PIPER LLP (US)
200 S. Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone:   305.423.8500
Facsimile:   305.437.8131

*Attorney for the Defendant Robert H. Shapiro*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 19, 2018, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Ryan D. O'Quinn*
Ryan D. O'Quinn