UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-24624-CIV-COOKE/GOODMAN

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

v.

ROBERT H. SHAPIRO, et al.,

                Defendants.

**PLAINTIFF'S MOTION FOR CREATION OF FAIR FUND
AND FOR TRANSFER OF PAYMENTS TO THE
WOODBRIDGE BANKRUPTCY ESTATE'S LIQUIDATION TRUST**

**I.     INTRODUCTION**

Plaintiff Securities and Exchange Commission respectfully moves the Court for an Order creating a Fair Fund ("Fair Fund" or "Fund") pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley), as amended by the Dodd-Frank Act of 2010, 15 U.S.C. § 7246(a).  The Fair Fund will comprise the disgorgement, interest and civil penalty payments already made and any future payments made to the Commission by the Defendants and Relief Defendants in this matter, plus interest earned on those funds.  The Commission makes this Motion on the grounds that, by creating a Fair Fund with those Defendants' and Relief Defendants' payments, the Court will facilitate compensating harmed investors who purchased the securities of Woodbridge Group of Companies, LLC and its affiliates ("Woodbridge").

Second, the Commission moves for an Order authorizing the transfer of the Fair Fund to the Liquidation Trust ("Woodbridge Liquidation Trust") established under the First Amended Joint Chapter 11 Plan of Liquidation of Woodbridge Group of Companies, LLC and Its Affiliated Debtors ("Liquidation Plan") **(Exhibit A)**, for the benefit of creditors, most of whom are harmed investors, in accordance with the terms of the Liquidation Plan, in *In Re*

*Woodbridge Group of Companies, LLC, et al.,* Case No. 17-12560-KJC (D. DE) (Jointly Administered) ("Bankruptcy Case"). The transfer will be more cost-effective and efficient than having the Commission retain its own distribution agent for a separate distribution.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Commission filed the Complaint in this matter on December 21, 2017 (DE 1, 22). The Commission filed this action based upon allegations that Robert H. Shapiro ("Shapiro"), RS Protection Trust ("RS Trust") and Woodbridge (collectively "Defendants") defrauded at least 8,400 investors through a business model built on lies which operated as a Ponzi scheme. The Commission also alleged that Shapiro's wife, and various entities under either Shapiro's control or his wife's control ("Relief Defendants") received proceeds of the ill-gotten gains.

According to the Complaint, Woodbridge, at Shapiro's direction and under his control, advertised its primary business as issuing loans to supposed third-party commercial property owners paying Woodbridge 11-15 percent annual interest for "hard money," short-term financing. In return, Woodbridge promised to pay investors 5-10 percent interest annually. The Defendants raised $1.2 billion from investors, many of whom were elderly. Woodbridge and Shapiro sought to avoid investors cashing out at the end of their terms and boasted in marketing materials of extremely high client renewal rate. However, while Woodbridge claimed it made high-interest loans to third parties, the vast majority of the borrowers were Shapiro-owned companies that had no income and never made interest payments on the loans.

Hence, the Complaint alleged that, in reality, Shapiro and Woodbridge used investors' money to pay other investors, and in order to facilitate the fraud, paid $64.5 million in commissions to sales agents who pitched the investments as "low risk" and "conservative," so as to continue the stream of incoming revenue. Shapiro diverted at least $18 million for his own benefit, including to charter planes, pay country club fees, and buy luxury vehicles and jewelry. The scheme collapsed in typical Ponzi fashion in early December 2017 as Woodbridge stopped paying investors and filed for Chapter 11 bankruptcy protection.

The Commission reached settlement with the Defendants and the Relief Defendants, and on October 25, 2018, filed their corresponding Consents to Entry of Final Judgments with the Court (DE 158). On December 27, 2018, the Court entered the corresponding Final Judgments (DE 160-170). The Final Judgments imposed the following relief:

- **Defendant Shapiro:** Permanently enjoining him from violating Sections 5 and 17(a) of the Securities Act of 1933 ("Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder, Section 20(a) of the Exchange Act, and aiding and abetting violations of Section 15(a) of the Exchange Act; and ordering him to pay disgorgement of $18,546,643 plus $2,163,613.69 in prejudgment interest; and imposing a $100 million civil penalty (DE 160);

- **Defendant RS Trust:** Permanently enjoining it from violating Sections 17(a)(1) and (3) of the Securities Act, Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder, and Section 20(a) of the Exchange Act; and ordering it to pay disgorgement of $3,303,485.27 plus $368,165.50 in prejudgment interest, jointly and severally with Relief Defendants Woodbridge Realty of Colorado, LLC, d/b/a Woodbridge Realty Unlimited ("Woodbridge Realty"), Woodbridge Luxury Homes of California, Inc., d/b/a Mercer Vine Inc. ("Woodbridge Luxury Homes of CA"), Riverdale Funding, LLC ("Riverdale"); and WFS Holding Co. LLC ("WFS"), providing that each relief defendant is jointly and severally liable only up to the extent of its own ill-gotten gain (DE 161);[1]

- **Relief Defendant Jeri Shapiro:** Ordering her to pay disgorgement of $1,383,178 plus $164,906.05 in prejudgment interest, with these amounts deemed satisfied by her paying $100,000 to the Commission and by her executing quit claim deeds for Carbondale Glen Owners, LLC ("Glen Owners") and Carbondale Glen Lot 18, LLC ("Carbondale Glen") quit claiming specific parcels of real estate to a holding company created by the Board managing the Debtor Defendants to hold for the benefit of the creditors pending the appointment of a liquidation trustee (DE 162);

- **Relief Defendant Glen Lot 18**: Ordering it to pay disgorgement of $100,000 plus $18,836.60 in prejudgment interest, with these amounts deemed satisfied by Glen Lot 18 quit claiming a specific parcel of real estate to a holding company created by the Board managing the Debtor Defendants to hold for the benefit of creditors pending the appointment of a liquidation trustee (DE 163);

- **Relief Defendant Glen Owners:** Ordering it to pay disgorgement of $156,088.77 plus $18,208.99 in prejudgment interest, with these amounts deemed satisfied by Glen Owners quit claiming specific parcels of real estate to a holding company created by the Board managing the Debtor Defendants to hold for the benefit of the creditors pending the appointment of a liquidation trustee (DE 164);

- **Relief Defendant Carbondale Basalt Owners, LLC:** Ordering it to pay disgorgement of $781,287 plus $91,143.35 in prejudgment interest (DE 165);

- **Relief Defendant Schwartz Media:** Ordering it to pay for disgorgement of $382,761 plus $44,652.13 in prejudgment interest (DE 166);

---

[1] The Final Judgment against all the other defendants in this matter is against the Debtor Defendants (DE 159). The Debtor Defendants are not the subject of the relief sought herein.

3

- **Relief Defendant Woodbridge Realty:** Ordering it to pay disgorgement of $1,474,353.57 plus $171,995.09 in prejudgment interest, jointly and severally with RS Trust (DE 167);

- **Relief Defendant Woodbridge Luxury Homes of CA:** Ordering it to pay disgorgement of $151,991.70 plus $176,269.22 in prejudgment interest, jointly and severally with RS Trust; in partial satisfaction of which it relinquished rights to $37,500 in commissions held in escrow by the Bankruptcy Estate stemming from the sale of properties of Woodbridge Group of Companies, LLC and its affiliates (DE 168);

- **Relief Defendant Riverdale Funding:** Ordering it to pay disgorgement of $143,140 plus $16,698.41 in prejudgment interest, jointly and severally with RS Trust (DE 169); and

- **Relief Defendant WFS**: Ordering it to pay disgorgement of $175,000, plus $3,202.78 in prejudgment interest jointly and severally with RS Trust; in partial satisfaction of which it relinquished rights to $133,000 in its bank account frozen by Comerica Bank (DE 170).[2]

Meanwhile in the Bankruptcy Case, the Court held a hearing on October 24, 2018 for consideration of the Liquidation Plan. After a full hearing, on October 30, 2018, the Court confirmed the Liquidation Plan **(Exhibit A, DE 2903)**. The Liquidation Plan went effective February 15, 2019 **(Exhibit B, DE 3421).** It is the Commission's intent with this motion, that all funds recovered in this enforcement action be placed in the custody of the Liquidation Trustee for purposes of distribution to investors in accordance with the Liquidation Plan.

### III.   LEGAL ARGUMENT

The Final Judgments against the Defendants and Relief Defendants provide that the Commission "may propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. The Court shall retain jurisdiction over the administration of any distribution of the Fund" (DE 160-170). Section 308(a) of Sarbanes-Oxley, as amended provides that:

> *Civil Penalties to be used/or the Relief of Victims.* If, in any judicial or administrative action brought by the Commission under the securities laws, the Commission obtains a civil penalty against any person for a violation of such laws, or such person agrees, in settlement of any such action, to such civil penalty, the amount of *such civil penalty shall, on the motion or at the direction of the Commission, be added to and become part of a disgorgement fund or other fund*

---

[2] Due to a scrivener's error submitted by the Commission in the Proposed Final Judgment for WFS (DE 158-24), the Commission requested the Court enter an Amended Final Judgment for WFS (DE 173). This motion remains pending.

4

>  *established for the benefit of the victims of such violation.*

*See* 15 U.S.C. §7246(a) (emphasis added). By its terms, Section 308(a) mandates the creation of Fair Funds with penalty payments upon the Commission's motion to the Court. This statutory provision therefore reflects Congress' intent to provide a greater recovery for injured investors by allowing the Commission to distribute both disgorgement and civil penalty payments as part of a Fair Fund. *See S.E.C. v. J.P. Morgan Securities, LLC et al.,* 2017 WL 44209, *4 (D.D.C., Jan. 4, 2017) ("In securities law cases, the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204 'establishe[s] the ability of courts to create Fair Funds for monies from disgorgement and civil penalties[,] which are then to be distributed to investors.'" (quoting *Cont'l Cas.Co. v. Duckson,* 826 F. Supp. 2d 1086, 1097-98 (N.D. Ill. 2011)).

The use of a Fair Fund was contemplated in the Final Judgments as the alternative to having the Commission transfer all of the funds to the United States Treasury. Therefore, given the mandatory terms of Section 308(a), the Fair Fund should be created.

### IV. THE LIQUIDATION TRUST SHOULD DISTRIBUTE THE FAIR FUND TO INVESTORS

This Court has the broad equitable power to craft remedies for violations of the federal securities laws. *S.E.C. v. Huff,* 758 F.Supp.2d 1288, 1358 (S.D. Fla. 2010) (citing *S.E.C. v. Fishbach Corp.,* 133 F.3d 170, 175 (2d Cir. 1997)). In addition to ordering disgorgement and penalty from the Defendants and disgorgement from the Relief Defendants, the Court may also approve a plan for distributing disgorgement and penalty payments to injured investors. *S.E.C. v. Elliot,* 953 F.2d 1560, 1566 (11th Cir. 1992) (The district court has broad powers and wide discretion to determine relief in an equity receivership. This discretion derives from the inherent powers of an equity court to fashion relief): *S.E.C. v. Wang,* 944 F.2d 80, 85 (2d Cir. 1991); *S.E.C. v. Certain Unknown Purchasers of Common Stock,* 817 F.2d 1018, 1020-21 (2d Cir. 1987). The judicial standard for approving a distribution plan is very broad; once "the district court satisfies itself that the distribution of proceeds in a proposed SEC disgorgement plan is fair and reasonable, its review is at an end." *S.E.C. v. Amerindo Inv. Adivsors,* 639 Fed. Appx. 752, 755 (2d Cir. Feb. 26, 2016) (citing *S.E.C. v. Wang,* 944 F.2d at 85); *see also S.E.C. v. Certain Unknown Purchasers,* 817 F.2d at 1021 (approving insider trading distribution plan).

5

To distribute Defendants' and Relief Defendants' payments in a timely and cost-efficient manner, the Commission requests the Court's authorization to transfer the Fair Fund payments to the Woodbridge Liquidation Trust for distribution by the Liquidation Trustee in accordance with the Liquidation Plan. Before approving the Liquidation Plan, the Bankruptcy Court considered all pleadings, held a hearing on the matter **(Exhibit A at 1, 2)** and concluded, over the objection of certain unsecured creditors, the Liquidation Plan deserved approval **(*Id.* at 3)**. The Commission concurs with the Bankruptcy Court's approval of the Liquidation Plan. After the Woodbridge Liquidation Trust receives Defendants' and Relief Defendants' money from the Fair Fund, the Liquidation Trustee, Michael I. Goldberg, Esq., Partner at Akerman, LLP, can distribute those payments to Woodbridge investors in accordance with the Liquidation Plan.

Authorizing the Liquidation Trustee to distribute the Fair Fund payments will avoid the delay and expense of requiring a separate distribution of Defendants' and Relief Defendants' payments. Such a separate distribution would involve the retention of a tax administrator and distribution agent for this case, and the payment of the tax administrator's and distribution agent's fees and expenses from the Fair Fund payments. If the distribution agent were required to develop a separate distribution plan for this case, that could involve the time and expense associated with sending hundreds of notices and proofs of claims for this case to the Woodbridge investors and with reviewing and approving or rejecting the submitted claims. Additionally, there would be the costs (such as for stationary, postage, bookkeeping and check fees) associated with the process of mailing distribution checks to investors. This separate distribution process could take months and cost thousands of dollars in order to replicate a distribution that the Liquidation Trustee intends to undertake in the near future. Because a separate distribution in this case would not benefit Woodbridge investors, the Court should authorize the transfer of the Fair Fund payments to the Woodbridge Liquidation Trust for distribution to those investors in accordance with the Liquidation Plan.

**V. CONFERRAL**

The Commission staff has conferred with the Liquidation Trustee, Michael I. Goldberg, Esq., who concurs with the relief requested herein.

## VI. CONCLUSION

     To provide the maximum financial benefit to the defrauded Woodbridge investors, the Court should enter an Order (i) creating a Fair Fund and (ii) authorizing the transfer of Defendants' and Relief Defendants' payments pursuant to their respective Final Judgments in this matter to the Woodbridge Liquidation Trust for distribution to the Woodbridge investors in accordance with the terms of the Liquidation Plan.

Dated: February 25, 2019

Respectfully submitted,

By: **Russell Koonin & Christine Nestor**
Senior Trial Counsel
kooninr@sec.gov; nestorc@sec.gov
FL Bar No.: 474479; FL Bar No. 597211
Telephone: (305) 982-6385; (305) 982-6367

**Scott Lowry**
Senior Counsel
lowrys@sec.gov
Special Bar ID # A5502400
Telephone: (305) 982-6387
Attorneys for Plaintiff

**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300